# EXHIBIT 25

## VII. ABILITY TO CALCULATE DAMAGES ON A CLASS-WIDE BASIS

85. 78. As set forth in the Complaint, Plaintiffs allege that Defendants violated Section 10(b) of the Exchange Act.[99][100] As explained below, damages for ~~this claim~~these claims can be calculated on a class-wide basis using a common methodology ~~well-accepted by courts.[100]~~.[101]

A. ~~Description of the Common and Broadly Accepted "Out-Of-Pocket" Damages Methodology~~Summary

86. 79. The calculation of class-wide damages for a violation of Section 10(b) of the Exchange Act can be done using a common and broadly accepted methodology that is routinely applied and has become a virtual standard in federal securities litigation like this

---

85. [99][100] Complaint, Section ~~XI~~XII.

86. [100][101] As previously noted, I have not been asked to calculate or opine on the quantum of damages here.

~~one against Wells Fargo~~matter. This class-wide damages methodology is generally referred to as

Jane Rose Reporting

Hartzmark Ex. 7

11/30/22

the "out-of- pocket" methodology. Using the out-of-pocket methodology, damages suffered by Class members are measured based on the investors' inflation losses.

87. 80.To implement the out-of-pocket methodology, which is based on a relatively straightforward, standard, and commonly used formula, inputs are calculated. In the out- of-pocket methodology, the inputs are the daily levels of artificial inflation in the prices for Wells FargoRyder common stock caused by Defendants' alleged misrepresentations and/or omissions. Daily levels of artificial inflation are generally calculated either directly or as the difference between the actual prices paid on that day for Wells FargoRyder common stock and the true or "but- for" values of the security absent the alleged misrepresentations and omissions (*i.e.*, had the truth been disclosed the price would have been the true value). Inflation losses are then calculated based on the artificial inflation on the date the Class member acquired their common stock less the artificial inflation on the date the Class member sold their common stock (or if unsold, based on zero inflation following the Class Period).

88. 81.This common damages methodology and the related inputs are applied on a class-wide basis. In the end, the inputs (*i.e.*, the artificial inflation ribbon) along with the

38
41

actual trading activity of Class members are used to calculate individual damages in a mechanical and formulaic manner.[101][102]

89. 82.Basically, per share inflation losses would equal the difference between the per share artificial inflation when the Class member acquired shares ($A$) and the per share artificial inflation when the Class member sold shares ($S$). In other words, inflation losses for Class members would be based on a common formula whereby a Class member's number of damaged shares ($D$) would be multiplied by the difference in artificial inflation, or $D$ x ($A − S$). Thus, one can think of this out-of-pocket methodology as being represented by ain a similar manner as any straightforward, standard and commonly-used formula — for example, such asakin to the formula of the

---

[101][102] In addition, the 90-day period following the end of the Class Period would also need to be examined. Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), a plaintiff may not recover more than the difference between the purchase price and the mean trading price of the stock during the 90-day look-back period. *See* 15 U.S.C. § 78u-4(e)(1). This is also easily applied on a class-wide basis.

- 42 -

slope of a line taught in elementary school algebra; namely $Y = a + bX$. To solve this simple formula for $Y$, one uses information to calculate a and b, and then simply inputs $X$ into the formula to solve for $Y$.

B.      The Inputs Used in the Out-of-Pocket Methodology Are Common to All Class Members

90. ~~83.~~To calculate the inputs for the out-of-pocket methodology or formula, an expert often begins with the same type of event study I used above in Section VI to evaluate the price-related factors. Using the results of the event study along with the disclosures of firm-specific information, daily abnormal returns or price movements are calculated.

91. ~~84.~~The daily levels of artificial inflation or the inputs into the out-of-pocket formula are calculated and represented by what economists generally refer to as the "inflation ribbon." This ribbon represents an estimate of the daily level of artificial inflation in the prices of ~~Wells Fargo~~Ryder common stock caused by the Defendants' alleged misrepresentations and/or omissions, which are based on the price reactions to disclosures either related to or revealing the alleged misstatements and omissions.

Case 1:20-cv-22109-JEM Document 109-6 Entered on FLSD Docket 09/13/2023 Page 6 of 13

- 43 -

92. 85. The out-of-pocket methodology does not involve any individualized issues.[102][103] Thus, the above-described inputs (*i.e.*, the inflation ribbon) will be common to all Class members and applied class-wide. In other words, no matter which technique might be chosen at the merits stage of this litigation to construct the inflation ribbon, the techniques used to estimate the true price (and thus calculate artificial inflation) will be common to all putative Class members and will be applied on a class-wide basis.[103][104]

93. 86. Moreover, in the merits stage when an expert identifies the level of artificial inflation in ~~Wells Fargo~~Ryder common stock attributable to the specific misrepresentations

87. [102][103] This is also consistent with the recent *Signet* Court's conclusion that: "[Defendant's expert's] contention that Plaintiff's methodology did not adequately isolate the impact … is simply a loss causation argument in disguise, because it tests the causal relationship between the alleged misstatements and the price decline. Such an argument 'goes beyond the Rule 23 inquiry.'" *Signet* at *20.

88. [103][104] *See, e.g.*, Nicholas I. Crew, Kevin L. Gold and Marnie A. Moore, *Federal Securities Acts and Areas of Expert Analysis*, Litigation Services Handbook: The Role of the Financial Expert, (Wiley, 5th ed. 2012), 24.11-24.14.

and/or omissions ultimately established by Plaintiffs, this "but-for" price does not depend on, nor does one need to consider, an individual investor's risk tolerance or expected returns. Rather, it is common to all investors because it measures how the misrepresented information affected ~~Wells Fargo~~Ryder's common stock price, which is of course the essence of fraud- on-the-market.

94. ~~87.~~Calculating actual inputs into the out-of-pocket methodology by parsing (*i.e.,* disaggregating the abnormal stock price movement into portions related and unrelated to the allegations) and scaling over time the changes in the inputs (if these adjustments are even required) likewise are common issues that affect all class members equally. They also are quintessential elements of a loss causation analysis that the Supreme Court's *Halliburton I* Opinion determined is a common issue that need not be analyzed at the class certification stage.[~~104~~105]

---

89. [~~104~~105] *Erica P. John Fund, Inc. v. Halliburton Co, et al.*, 131 S. Ct. 2179 (2011) ("*Halliburton I*").

- 43 -

- 44 -

### C. Commonly Used and Widely Accepted Techniques Used to Account for Confounding Information and Potential Changes Over Time

95. 88. The I note that the issue of whether and how much a particular price reaction is caused by the revelation of the truth concerning a particular (as opposed to confounding) piece of information is a quintessential loss causation inquiry because it is focused on the causal relationship between the misstatements and/or omissions and the price decline. Should parsing or scaling be necessary when a loss causation or damages report is submitted in this matter, there are commonly used and widely accepted techniques to account for confounding information (*i.e.*, parsing) and potential changes in inflation over time (*i.e.*, scaling).

96. 89. Once discovery is complete and, eventually, a determination of liability made by the finder of fact, to the extent it is even appropriate, disaggregating confounding information would be based on a disclosure-specific inquiry that would occur, at the earliest, based on a full factual record.

- 44 -

97. 90. Again, assuming parsing or scaling were appropriate, there are many techniques that could be used to estimate the portion of the price reaction due to the revelation of the truth and how that price response might change over time. These include, among others: the analysis of intraday pricing (if disclosures are made at different times), analysis of market and media commentary, examination of the elements that cause changes in actual or estimated earnings-per share or EBITDA (by individual analysts, the company or a consensus of analysts), or analysis of detailed accounting and company information, such as a breakdown of revenues and earnings for different divisions, businesses, types of customers, facilities, geographic locations, etc. In addition, material produced in discovery could shed light on the underlying reasons for the disclosures (if such reasons were misstated or omitted), and other expert testimony related to liability issues could also provide a basis for disaggregation.

98. 91. Most critically, whatever the outcome as to the parsing and scaling, the inputs will be plugged into a common inflation ribbon, which will be applied class-wide to calculate individual damages as described in the common damages methodology.

## VIII. CONCLUSIONS

99. ~~92.~~Based on the foregoing, my conclusions are as follows:

> i. Throughout the Class Period, ~~Wells Fargo~~Ryder common stock traded in an efficient market.

> ii. The calculation of damages for violations of Section 10(b) (and SEC Rule 10b-5) of the Exchange Act ~~in this matter~~ may be computed on a class-wide basis using common methodologies.

85.

I declare under penalty of perjury that the foregoing is true and correct.

***RESPECTFULLY SUBMITTED THIS*** ~~***THIRD***~~***22ⁿᵈ*** ***DAY OF*** ~~***OCTOBER***~~***SEPTEMBER*** *2022*

Document comparison by Workshare Compare on Tuesday, November 22, 2022 10:21:04 PM

| Input: | |
|---|---|
| Document 1 ID | file://H:\WIN10\Desktop\11.22.2022\Beaye\2022.10.03_Wells Fargo Hartzmark Report.pdf |
| Description | 2022.10.03_Wells Fargo Hartzmark Report |
| Document 2 ID | file://H:\WIN10\Desktop\11.22.2022\Beaye\2022.09.23 - Dkt. 90.5 - Ex. D - Hartzmark Rpt._4396040_1.PDF |
| Description | 2022.09.23 - Dkt. 90.5 - Ex. D - Hartzmark Rpt._4396040_1 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 67 |
| Deletions | 57 |
| Moved from | 0 |
| Moved to | 0 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 124 |