# EXHIBIT 32

State of Alaska
v. Ryder System

[FINAL]

December 9, 2022
Fawad Razzaque

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
-----------------------------------------
STATE OF ALASKA, ALASKA PERMANENT FUND,
THE CITY OF FORT LAUDERDALE GENERAL
EMPLOYEES' RETIREMENT SYSTEM, and THE CITY
OF PLANTATION POLICE OFFICERS PENSION FUND,
on Behalf of Itself and All
Others Similarly Situated,
   Plaintiffs,
    v.
RYDER SYSTEM, INC.; ROBERT E.
SANCHEZ; ART A. GARCIA; and DENNIS C. COOKE,
   Defendants.

Civil Action No. 1:20-cv-22109-AMC
-----------------------------------------

REMOTE VIDEO DEPOSITION OF
Fawad Ahmed Razzaque, Corporate Designee of
the State of Alaska, Alaska Permanent Fund
December 9, 2022
Lead: Wilfred T. Beaye, Junior, Esquire
Firm: Wachtell Lipton Rosen & Katz

FINAL COPY
JANE ROSE REPORTING  1-800-825-3341

Page 2

A P P E A R A N C E S

ATTORNEYS FOR PLAINTIFFS AND THE CLASS
 John Rizio-Hamilton, Esquire
 Mathews R. de Carvalho, Esquire
 Bernstein Litowitz Berger & Grossmann, LLP
 1251 Avenue of the Americas
 New York, New York 10020
 (212) 554-1400

ATTORNEYS FOR DEFENDANTS
 Wilfred T. Beaye, Junior, Esquire
 Alison B. Brockman, Esquire
 Wachtell Lipton Rosen & Katz
 51 West 52nd Street
 New York, New York 10019
 (212) 403-1000

JANE ROSE REPORTING
 74 Fifth Avenue
 New York, New York 10011
 1-800-825-3341
 Joan V. Cain, Court Reporter
 Joseph Salinas, Legal Videographer

Page 3

TABLE OF CONTENTS

Witness:
Fawad Ahmed Razzaque

Examination
By Mr. Beaye...............................Page 5

Reporter Certificate.......................Page 306

Notice to Read and Sign....................Page 308

Index of Exhibits..........................Page 310

Page 4

P R O C E E D I N G S
- - -
10:57 a.m. EST
December 9, 2022
- - -
THE VIDEOGRAPHER:  This deposition is being taken via remote connection, and all participants are attending remotely, including the court reporter and the videographer.  The deposition video recording quality is relying on the witness's individual bandwidth.

Here begins Media No. 1, Volume 1, in the deposition of Fawad Razzaque in the matter of State of Alaska versus Ryder Systems.  Today's date is December 9th, 2022.  The time is now 10:57 a.m.

I am Joseph Salinas, the videographer, and the court reporter is Joan Cain, from Jane Rose Reporting, New York, New York.

Counsel, please identify yourselves and state whom you represent, beginning with the noticing party in this deposition.

MR. BEAYE:  Wilfred T. Beaye, Junior, from Wachtell Lipton representing the defendants.

MR. RIZIO-HAMILTON:  John Rizio-Hamilton, Bernstein Litowitz Berger & Grossmann representing

State of Alaska     [FINAL]     December 9, 2022
v. Ryder System             Fawad Razzaque

Page 173

roughly, how many shares of Ryder common stock was sold during that period?

A I -- you mean how many have sold? It says here, you know. It lists here. It's listed on the document. Whatever it says on the document. The managers would have sold it or bought it. So you want me to add it on calculator?

Q I just wanted you to give me a rough -- a rough estimate of what the total might be. Is it more than 130,000, more than 140,000, more than 150,000 shares?

A Oh, okay. So -- 4,800 and then 129,400, so about 134,000.

Q So -- so after Ms. Dugan's email in November of 2016, which identified the decline in the used truck market and Ryder's cautious commentary, Alaska did not purchase a single share of Ryder common stock leading into and including January 11th, 2016, right?

MR. RIZIO-HAMILTON: Objection to the form.

BY MR. BEAYE:

Q You may answer.

A I don't know -- I don't know what the managers did or didn't. You know, whatever it says -- whatever is on this page, I don't have any

Page 174

reason to refute it.

Q So based on --

A I'm just reading the document -- and I'm not saying the document is incorrect or correct. You know, I don't know, other than seeing this document, what the managers did or didn't do.

Q So this document is a certification to the United States District Court of the Southern District of Florida --

A Yeah.

Q -- about the purchases and sales of Ryder common stock that were made --

A Yes.

Q -- during the period that's being represented.

A Correct.

Q Do you have any reason to believe that there are purchases and sales that happened during this period that Alaska Permanent Fund Corporation did not disclose to the court?

A You mean there's anything else that was happened were not disclosed to the court?

Q Sales -- sales and purchases of Ryder common stock during this period as being represented in this document. Do you have any reason to believe

Page 175

that there are purchases and sales of Ryder common stock that happened during this period that Alaska Permanent Fund Corporation did not disclose to the court?

A I don't have any reason to believe so.

Q So I'll ask the question again.

So after Ms. Dugan's email in November of 2016 which identified the decline in the used truck matter and Ryder's cautious commentary, Alaska did not purchase a single share of Ryder common stock up to and including January 11, 2016, correct?

A That's what it says on the -- if that's what it shows, that's what it is.

Q Not only that, to the contrary, Alaska sold down its shares in Ryder common stock in one instance to the tune of a whopping 129,400 shares on January 11, 2016; is that right?

MR. RIZIO-HAMILTON: Objection to the form.

Go ahead, Fawad. You can answer.

THE WITNESS: That -- that says there -- you know, we provided that information, so it -- it should be accurate, yeah.

BY MR. BEAYE:

Q Do you know which investment manager sold over 125,000 shares in Ryder common stock on

Page 176

January 11th, 2016?

A I don't know which specific manager off- -- offhand. Right now, I don't know which manager would have sold it. Because we have a number of managers who held Ryder positions.

Q I'm going to -- I'm going to mark as Exhibit 11 what's been labeled Tab 18, and I'm going to load it to the Chat once I'm technologically able to.

Just loaded it to the Chat.

- - -

(Defendants' Exhibit 11 was marked for identification.)

- - -

BY MR. BEAYE:

Q Just let me know when you're able to see the document, Mr. Razzaque.

A It's here.

Q Do you -- do you recognize this document, Mr. Razzaque?

A Yes. I've seen it in the folder yesterday.

Q Could you describe what this document is?

A It's also the same document that we asked the analyst to forward to the legal team.

Yes. It's the Ryder transaction document

JANE ROSE REPORTING    National Court-Reporting Coverage
1-800-825-3341       janerose@janerosereporting.com

State of Alaska
v. Ryder System

[FINAL]

December 9, 2022
Fawad Razzaque

Page 233

the residual value, and they -- they just realized suddenly that that's -- the residual value estimates likely exceeded the expected future values that would be realizable upon the sale of power -- they just did it. In fact, they're saying they didn't know it.

But they were the expert. They were the insiders. The market -- if the market was weak, why didn't they know it? So it's -- to me, it doesn't hold any -- much ground just as -- as an investor.

BY MR. BEAYE:

Q   So are you saying that as an investor when you become aware of this disclosure, you feel defrauded because you don't believe what management is saying, that they didn't know about --

A   Yes. Managements in general are pretty good at knowing these things as they happen. You know, they're not clueless. That's not why they're part of their senior management. They are supposed to know. They're supposed to have a good pulse, and they have it. In almost all cases, they a good pulse on there. It's just they -- they determined when they should disclose it or not, you know.

Q   Do you have any basis to believe management knew in this case?

Page 234

A   Oh, no, not in a specific --

MR. RIZIO-HAMILTON: Objection to form.

THE WITNESS: In general, managements have a good handle on --

THE COURT REPORTER: I'm sorry. You need to repeat the answer. There was an objection.

MR. BEAYE: I'll ask the question again, Joan.

BY MR. BEAYE:

Q   And please allow Mr. Rizio-Hamilton a chance to object, and then you can answer, Mr. Razzaque.

Do you have any basis to believe management knew in this case, Mr. Razzaque?

MR. RIZIO-HAMILTON: Objection to the form and scope.

Fawad, you can answer.

THE WITNESS: Not in this specific case.

BY MR. BEAYE:

Q   After this announcement referenced in paragraph 138 on October 29th, 2019, did any of Alaska's investment managers contact you about fraud, Mr. Razzaque?

A   No. I don't recall it I mean.

Q   Did you ever discuss the events in

Page 235

paragraph 138 with any of Alaska's investment managers, Mr. Razzaque?

A   I'm sorry. I don't recall it.

Q   Do you know if you had an opportunity to discuss the events in paragraph 138 with any of Alaska's investment managers, Mr. Razzaque?

A   Opportunity? We -- we hold those quarter-end discussions every quarter. So there's always opportunity to discuss these things, but I don't recall having any substantive portfolio discussion on Ryder. I've said it several times.

Q   I want to -- I want to mark as Exhibit 15 what I'm going to drop into the Chat as Tab 13A, and then I'm going to mark as Exhibit 16 what I'm going to drop into the Chat as Tab 13B.

- - -

(Defendants' Exhibits 15 and 16 were marked for identification.)

- - -

BY MR. BEAYE:

Q   Just let me know when you see those documents.

A   Okay. I have those documents.

Q   Let's just focus on Tab 13A to -- for now, Mr. Razzaque.

Page 236

Do you -- do you recognize this document?

A   13A, is that -- is that the email? Let me see.

It's just -- it's just an invite to the -- to the quarter-end call. Yeah, it looks very familiar.

Q   And if you look at the line of Attendees, it's -- the first name is Fawad Razzaque. Is that you, Mr. Razzaque?

A   Yes.

Q   The subject is: "3Q19 Portfolio Review Call - Alaska Permanent Fund/Pzena Investment Management."

Is this the quarterly call with Pzena Investment Management, Mr. Razzaque?

A   Yes.

Q   And you were on this call, right?

A   Yes.

Q   The date says: "Tuesday, October 29, 2019."

Do you see that?

A   Yes, I see that.

Q   If you scroll down to page -- well, the call has an attachment of an Excel spreadsheet and a PDF file. If you scroll down, I'll represent to you

State of Alaska
v. Ryder System

[FINAL]

December 9, 2022
Fawad Razzaque

Page 237

that the first -- the second page of the document starts the PDF file.

Do you see that?

A    That Excel document is attribution 13B -- oh, so you're talking about the --

Q    The PDF.  If you scroll to the second page of the PDF.

A    Yes.  Yes.  Yes.  It's a presentation from Pzena.  Yes.

Q    Do you recall this presentation, Mr. Razzaque?

A    Yeah.  It's very familiar format.  It's -- yeah, I do.

Q    Do you -- do you recall reviewing this presentation, Mr. Razzaque?

A    I don't recall it, but I would have reviewed certain -- like, certain pages of it, but I don't recall the specific pages of that.

Q    I understand.

If you just scroll to page 3 of the document.  It's PDF page 4, but it's actually page 3 of the actual presentation.

Just let me know when you get there.

A    Is that where it says:  "Why Pzena"?

Q    I'm sorry.  What was that?

Page 238

A    Is this the title that says:  "Why Pzena."

Q    No.  It's page 3, the page right before that.

A    Okay.  "Portfolio Summary."  Okay.  Yeah.

Q    If you look -- there's four boxes.  If you look at the fourth box on the bottom right-hand corner, it says:  "Ten Largest Holdings."

Do you see that?

A    Yes.

Q    And do you see that Ryder is listed among the -- within this -- within this table?

A    Yes, I do.

Q    Is this table reflecting the ten largest holdings that Pzena has on behalf of Alaska at this time?

A    Yes.

Q    Do you know if Ryder was among Pzena's ten largest holdings at any point prior to this?

A    I don't recall.

Q    Did you ask Pzena why Alaska held such a large stake in Ryder on October 29th, 2019 of all days?

A    I don't remember holding any substantive discussion on -- on Ryder.

Q    Did you at this time discuss the events in

Page 239

paragraph 138 with them, which happened the same day?

A    No.

Q    Did they give any explanation as to why Ryder was in the top ten holdings as of this date?

A    Like I said, we didn't have -- or didn't hold any substantive discussion on Ryder.

Q    If you turn to -- sorry.  Please -- I'm sorry.

Please finish your answer.  Forgive me.

A    No.  No.  I said I don't recall having any substantive discussion of Ryder.

Q    If you'd turn to page 19 of the document.  It's PDF 20, but it's page 19 of the document.  Just let me know when you get there.

A    Okay.  Is it "dispersion in Valuation Remain Wide"?  Is that the one?

Q    The -- the previous page.

A    The previous one.  Okay.  "Ryder System."  Okay.  Yeah.

Q    We -- I think we -- we discussed a similar page earlier where Pzena lists out some of -- some of its belief about the particular stock on a page like this one, right?

A    Correct.

Page 240

Q    Has Pzena's beliefs about Ryder's stock changed at all based on this page?

MR. RIZIO-HAMILTON:  Objection to the form.

THE WITNESS:  Like I said, I didn't -- don't recall holding any substantive discussion on Ryder System's with Pzena or any of the managers.  So I can't comment on that.

BY MR. BEAYE:

Q    Fair enough.

Just looking at this page and just reviewing the bullets that are listed and the -- and the beliefs that are listed, do you see any change in what Pzena is believing about Ryder at this time versus the prior instance in which we looked at a similar page?

MR. RIZIO-HAMILTON:  Same objection to the form.

THE WITNESS:  I can't comment on that.  I don't even remember what the previous page was.  Yeah, I -- beyond what's listed on this page, I don't have any comments.

BY MR. BEAYE:

Q    Would it refresh -- refresh your recollection if we took a look at the prior --

A    Yeah.  It was temporary, you know, the

State of Alaska
v. Ryder System

[FINAL]

December 9, 2022
Fawad Razzaque

Page 241

issues with -- with the Ryder. At least to Pzena it seemed temporary, and so it was an opportunity, and I think this is pretty much the same. Again, they're saying it's -- it's temporary, you know --

THE COURT REPORTER: I can't hear you.

THE WITNESS: Yeah, I don't see any change. I don't recall any change between this slide and the previous slide.

BY MR. BEAYE:

Q Can you take -- can you pull up Tab 10 once more, Mr. Razzaque, just so we can -- so we're sure.

A Okay. Yeah. It's here.

Q If you go to page 16 of Tab 10 --

A Right. I'm there.

Q -- are you there?

A Mm-hmm.

Q Could you compare the -- the representations and beliefs given by Pzena on Tab -- on page 16 of Tab 10 to what is provided on page 19 of Tab 13A and tell me if you see any differences?

A Between Tab 10 and 13A?

Q Yeah. Page 16 of Tab 10 and page 19 of Tab 13A.

A I don't see any -- any change between the two.

Page 242

Q So Pzena still believed Ryder's circumstance was caused by the negative impacts of used truck prices and still viewed that as temporary?

MR. RIZIO-HAMILTON: Objection to the form.

THE WITNESS: I can't comment on that. They -- it seemed like you showed me it was the ninth largest holding, so -- which implies that they still liked the stock. Like I said, I never had any -- I don't recall having any substantive conversation with Pzena on, you know, how their view was and whether their view changed on their end. So no comment on anything else.

BY MR. BEAYE:

Q This is a presentation Pzena prepared to share with its -- one of its investors, right, which is Alaska, correct?

MR. RIZIO-HAMILTON: Objection to the form.

BY MR. BEAYE:

Q Is this -- you can answer the question.

A This is a presentation from -- from Pzena, yes.

Q Do you have any reason to believe that the representations in this presentation would be things that Pzena doesn't believe and is sharing with its

Page 243

investors?

A No. No. I don't have any reasons to believe that.

Q So when Pzena writes: "Recent negative impacts of weak used truck prices, higher maintenance costs and depreciation, and low commercial rental fleet utilization looks temporary," in connection with Ryder, do you have any reason to believe that Pzena doesn't believe that Ryder's circumstances caused by the negative impacts of used truck prices and still views that as temporary?

MR. RIZIO-HAMILTON: Objection to the form.

THE WITNESS: I don't have any reason to doubt what Pzena is telling the stock --

BY MR. BEAYE:

Q Do you have any reason to doubt that Pzena still believed that increased costs caused by certain truck vintages -- sorry.

Do you have any reason to believe that Pzena's statement that: "Increased costs" -- by -- "caused by certain truck vintages are set to moderate as these vintages roll off in the next 12 to 18 months..."?

MR. RIZIO-HAMILTON: Objection to the form.

Page 244

THE WITNESS: I don't have a reason to doubt.

BY MR. BEAYE:

Q But you just told me that you think that the events that happened on October 29th, 2019 revealed fraud on the part of Ryder, right?

A That's what I felt after reading the document yesterday.

Q So did you set Pzena straight about its beliefs?

MR. RIZIO-HAMILTON: Objection to the form.

THE WITNESS: Like I said, I didn't hold -- I didn't hold any substantial discussion with Pzena on -- on Ryder. So I have not questioned what they -- they probably believe what they -- what was the -- what information was disclosed at the time based on that. So, like most investors, they trusted the integrity of the financial disclosure by the company and the integrity of the stock price is reflecting all the publicly known information.

So -- but like I said, I never had any discussion -- I don't recall having any discussion with Pzena on what their thesis was and how their thesis changed on Ryder.

BY MR. BEAYE:

State of Alaska
v. Ryder System

[FINAL]

December 9, 2022
Fawad Razzaque

Page 245

Q   Do you know if anyone at Alaska reached out to Pzena and told them that these beliefs were misguided and that Alaska had been defrauded based on what was disclosed on October 29, 2019?
MR. RIZIO-HAMILTON: Objection to the form.
THE WITNESS: I don't know if anybody would have had that conversation with Pzena on Ryder.
BY MR. BEAYE:
Q   Has Pzena -- has Pzena come to you, either then or any time after, to tell you that it believes that the events on October 29th, twenty -- 2019 revealed fraud on the part of Ryder?
A   I don't recall Pzena coming back to me with -- with these concerns.
Q   Can you turn to page -- let's -- let's turn back to Tab -- Tab 11 if don't mind.  Just let me know when you're there.
A   Yeah, I'm here.
Q   Can we turn to page 51 of Tab 11, please?
A   Okay.
Okay.  I'm here.
Q   Just focusing on paragraph 143, have you reviewed this paragraph before?
A   I don't think so.
Q   Could you just review this paragraph and

Page 246

let me know when you're done?
A   Okay.
MR. RIZIO-HAMILTON: And, again, Fawad feel free to review the surrounding paragraphs if it's useful.
THE WITNESS: Yeah, I reviewed.
BY MR. BEAYE:
Q   Can you explain to me how the disclosure in paragraph 143 revealed any securities fraud on the part of Ryder?
MR. RIZIO-HAMILTON: Same objections as to form and scope.
THE WITNESS: It's the same thing that I said.  They -- they reduced -- significantly reduced the residual value of the fleet, you know, and -- and then planning to take -- or disclosed that they would be taking additional 35 million of depreciation expense.
Again, all the depreciation expense to me it seems like they could have taken much earlier. They certainly decided to take all of it and then recorded future earnings a little bit lower.  To me it's all, you know -- I will stand by my comments of how I felt, and it's still the same.
BY MR. BEAYE:

Page 247

Q   Okay.  So after this announcement, did any of Alaska's investment managers contact you about fraud on the part of Ryder?
A   I don't recall being contacted by any of my external managers on -- on fraud on Ryder.
Q   Did you ever discuss the events in paragraph 143 with any of Alaska's investment managers?
A   No.
Q   When was the first time you learned that a complaint was being filed against Ryder, Mr. Razzaque?
A   That was a few years ago.  I don't exactly recall what specific year it was, but through our in-house legal counsel, I was aware that we are -- there was a lawsuit against Ryder on that.  So that was -- you know, I don't exactly remember which year it was.
Q   Since you learned that, did you discuss the alleged fraud with any of Alaska's investment managers?
A   No.
Q   Did they discuss the alleged fraud with you?
A   Not that I recall.

Page 248

Q   Mr. Razzaque, Alaska's investment managers never contacted you about fraud with respect to Ryder, have they?
A   I don't recall, like I said, them contacting me on Ryder as fraud.
Q   And they haven't contacted you about fraud with respect to Ryder, even though they follow Ryder and Ryder news; isn't that right?
MR. RIZIO-HAMILTON: Objection to the form.
THE WITNESS: Yes, I don't remember being contacted by any of them on Ryder.
BY MR. BEAYE:
Q   And they haven't come to you and told you that Alaska was defrauded by Ryder, even though Alaska's investment managers are your fiduciary, right?
MR. RIZIO-HAMILTON: Objection to the form.
THE WITNESS: I can't speculate on what they determined.  I don't even know if they are qualified to investigate fraud.  So there's no reason for them to -- to approach me or Alaska with that allegation.  That's not within the bound of their competency.
I feel -- like, I felt it.  I feel it that it's a fraud, but I'm not competent enough to

State of Alaska                              [FINAL]                              December 9, 2022
v. Ryder System                                                                   Fawad Razzaque

Page 281

with a five-minute, maybe six-minute break, and come back on the record?

MR. RIZIO-HAMILTON:  It's up to Fawad.

THE WITNESS:  How much time do we have?

MR. BEAYE:  Let's go off the record for this conversation, please.

Joseph, can we go off the record for this conversation?

THE VIDEOGRAPHER:  Yes.

Going off the record at 5:55 p.m.

(Recess.)

THE VIDEOGRAPHER:  Going on the record at 6:06 p.m.

BY MR. BEAYE:

Q   During the period between 2015 and 2020, did any of Alaska's investment managers ever short or take a short position in Ryder common stock?

A   No.

Q   Do you know if any of Alaska's investment managers ever took a short position in any other Ryder security?

A   No.

Q   No, none of the investment managers took a short position in Ryder's -- in a Ryder security, or, no, you don't know?

Page 282

A   No.  No.  No short position in Ryder security.

Q   During the period between 2015 to 2020, did any of Alaska's investment managers transact in Ryder options or other derivatives tied to Ryder stock?

A   I'm not aware.  I don't think so.

Q   You don't recall or it never happened?

A   I don't recall.

Q   And during 2015 to 2020, did any of Alaska's investment managers invest in Ryder securities other than Ryder common stock on -- on Alaska's behalf?

A   I don't recall, like I said.

Q   During 2015 -- between 2015 and 2020, do you know if any of Alaska's investment managers invested in funds or any other type of investment vehicle that invested in Ryder securities?

A   I don't recall.

Q   Between 2015 and 2020, did any of Alaska's investment managers invest in funds or any other type of investment vehicle that shorted Ryder stock?

A   No.

Q   Between 2015 and 2020, did any of Alaska's investment managers invest in funds or any other

Page 283

type of investment vehicle that engaged in derivative transactions related to Ryder stock?

A   I don't recall.

Q   Between 2015 and 2020, were any of Alaska's assets invested in hedge funds?

A   Hedge fund is Alaska's assets.  Yes.  I would think so, yes.  Hedge fund is a separate class, a different team who oversees it.  So, in general, hedge fund as an asset class I would say yes.

Q   How much of Alaska's assets were invested in hedge funds during that period?

A   I don't recall.

Q   Were those investments done through investment managers?

A   Yes.

Q   Which ones?

A   I don't know.  It's not -- it's not what I do on a day-to-day basis.  I don't even know which ones.

MR. RIZIO-HAMILTON:  I would just interpose a scope objection to this line of questioning.

Please go ahead, guys.

BY MR. BEAYE:

Q   Who at Alaska supervised those investments?

Page 284

A   It's a separate team.  Right now it's a different individual who oversees it.  During the period that you mentioned, I think there was another separate individual who oversaw it.

Q   Did any of those hedge funds ever short Ryder common stock?

A   I have no idea.

Q   It is possible that those hedge funds shorted Ryder common stock?

MR. RIZIO-HAMILTON:  Objection.

THE WITNESS:  I have no idea.

BY MR. BEAYE:

Q   Did any of those hedge funds engage in options transactions?

A   I don't know.

MR. RIZIO-HAMILTON:  Objection.

BY MR. BEAYE:

Q   Did any of those hedge funds engage in options transactions of Ryder stock?

A   No idea.

Q   Is it possible that they did?

MR. RIZIO-HAMILTON:  Objection to form.

THE WITNESS:  I don't have any comment.

BY MR. BEAYE:

Q   Mr. Razzaque, you testified earlier that