# Exhibit D

State of Alaska        [FINAL]        November 30, 2022
v. Ryder System             Michael Hartzmark, Ph.D.

Page 1

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
--------------------------------------
STATE OF ALASKA, ALASKA PERMANENT
FUND, THE CITY OF FORT LAUDERDALE
GENERAL EMPLOYEES' RETIREMENT
SYSTEM, and THE CITY OF PLANTATION
POLICE OFFICERS PENSION FUND,
on Behalf of Itself and All
Others Similarly Situated,
                  Plaintiffs,
            v.
RYDER SYSTEM, INC.; ROBERT E.
SANCHEZ; ART A. GARCIA; and DENNIS
C. COOKE,
                  Defendants.

Civil Action No. 1:20-cv-22109-AMC
--------------------------------------


REMOTE VIDEO DEPOSITION OF
Michael L. Hartzmark, Ph.D.
November 30, 2022
Lead: Steven P. Winter, Esquire
Firm: Wachtell Lipton Rosen & Katz




FINAL COPY
JANE ROSE REPORTING  1-800-825-3341
```

State of Alaska                 [FINAL]              November 30, 2022
v. Ryder System                                   Michael Hartzmark, Ph.D.

Page 29

THE WITNESS:  Yes.  To the extent that the Cammer factors, which come out of the late 1980s, Krogman soon thereafter, and then the various other ones that have come haven't changed or there's no new -- you know, nothing new that I want to incorporate, I would -- would look at, again, a specific report and probably utilize similar language as a starting point.

BY MR. WINTER:

Q    And as a starting point, you'd also do the same with sections dealing with the calculation of damages on a classwide basis, the second opinion in the report?

MR. WIERZBOWSKI:  Objection to form.

THE WITNESS:  Well, clearly, as I state in -- in the report, if you turn to page -- page -- header page 45, paragraph 86:  "The calculation of class-wide damages for a violation of Section 10(b) of the Exchange Act can be done using a common and broadly accepted methodology that is routinely applied and has become a virtual standard in federal securities litigation like this matter."

Just -- you can see from that language that the fact that it is universal, consistent, a virtual standard and a routine, you know, I think you would

State of Alaska         [FINAL]        November 30, 2022
v. Ryder System                       Michael Hartzmark, Ph.D.

Page 30

==question as to why it would change substantially from one report to another.==

BY MR. WINTER:

    Q    Okay.  We'll get to that opinion a little later today.  But just so I make sure I understand, what you just read, I guess, comes from Section VII of your report, correct?

    A    Section VII of the report, paragraph 86.

    Q    Okay.  And -- but Section VII of the report would be another place where you'd look at another report, use that as a starting point for the report here, correct?

    A    Yes.

    Q    And you said that it may or may not change for the report here?

        MR. WIERZBOWSKI:  Objection to form.

        THE WITNESS:  Well, much like if I was to write a report on the equation of a slope of a line that you took in your basic algebra classes, and I had to do that in a prior report, it would be similar language, if not the same language.

BY MR. WINTER:

    Q    Because the issues there are the same issues here?

        MR. WIERZBOWSKI:  Objection to form.

State of Alaska                    [FINAL]                    November 30, 2022
v. Ryder System                                              Michael Hartzmark, Ph.D.

Page 184

fact says this is so difficult in this particular 10(b)(5) case and Dr. Hartzmark's calculation is so unreliable and unreasonable?  Again, I don't think any court is looking for perfection, but is unreliable, unreasonable, doesn't measure it, that still allows me to suggest that there's a common damages methodology because in that case, if it's unreliable, you put in zero, or possibly if the defendant is being at least somewhat honest, some value that they calculate it other than zero.

The fact is that all of these cases, as well as the others that I've done, this is the nature of the damages because the allegations relate to the stock price being inflated.  Okay?  If it's a different type of allegation, then, yeah, the out-of-pocket methodology is not -- wouldn't necessarily be applied.  Okay?

But this is a very clear-cut case, as I understand it.  The liability theory is that because of misstatements on financial metrics, stock was inflated.  Inflation came out, investors were harmed by buying at inflated levels, whatever those levels are.  Whatever that input is to create the inflation ribbon will be calculated, and when I do a loss -- or when someone does a loss causation analysis and

State of Alaska        [FINAL]        November 30, 2022
v. Ryder System                    Michael Hartzmark, Ph.D.

Page 185

it will be applied classwide and out-of-pocket damages methodology will do.

So that's a long-winded answer, but at least in the cases that I've been involved with, the fact-specific inquiry is done in the loss causation analysis. I mean, I don't have any internal documents to know what management knew and when they knew it. So how can I calculate the inputs --

Q   So --

A   -- at this stage?

Q   So just so I understand, you've mentioned a number of court decisions. For this opinion, are you relying on what other courts have said might be sufficient at the class certification stage --

MR. WIERZBOWSKI: Objection to form.

BY MR. WINTER:

Q   -- to establish that damages can be calculated on a classwide basis using a common methodology?

MR. WIERZBOWSKI: Objection to form.

THE WITNESS: No, I'm relying on economics. It's simple, basic principal economics, inflation at sale and inflation at purchase. And it just so happens that a number of courts -- and this is only my decisions alone, other securities 10(b)

JANE ROSE REPORTING        National Court-Reporting Coverage
1-800-825-3341           janerose@janerosereporting.com

State of Alaska            [FINAL]            November 30, 2022
v. Ryder System                         Michael Hartzmark, Ph.D.

Page 213

THE WITNESS:  Depends how much more we have on the inflation ribbon and techniques.

MR. WINTER:  Probably another -- I would say 15, 20 minutes.

THE WITNESS:  How's the court reporter?

THE COURT REPORTER:  I'm fine.

THE WITNESS:  Is that okay, Adam?  If you need to break --

MR. WIERZBOWSKI:  I'm good.  I'm good.

MR. WINTER:  Don't be shy.

MR. WIERZBOWSKI:  Collective good.

MR. WINTER:  So we'll go for a little bit more, 15 minutes, and then we'll break.

BY MR. WINTER:

Q   Okay.  You mentioned parsing.  What is parsing?

A   Parsing is a term -- term of art utilized to take an abnormal return and separate it into components, some potentially related to the fraud, some unrelated to the fraud, and then possibly even separate it out even more, depending on the nature of the specific allegations.

Q   Is parsing the same as -- is parsing a technique you would use to address confounding information that is disclosed along with an alleged

State of Alaska                  [FINAL]              November 30, 2022
v. Ryder System                              Michael Hartzmark, Ph.D.

Page 214

corrective disclosure?

A    Yes.

Q    Okay.  All right.  And I think you earlier referenced scaling.  If you could just help me a little bit more with that.

How would you describe what scaling means, and when you would need to do that?

A    Well, scaling is adjusting, generally, backwards over time.  So after you do your parsing, you then want to take that amount, dollar or percentage, and somehow adjust it based on what the internal documents say management knew at one point. Okay?

Q    So is the idea that if you assume that the entire stock -- just to simplify it:

Can -- you assume that the entire stock price reaction to the alleged corrective disclosure is corrected.  Scaling is a question of how you then take that stock price drop, go back in time, and do you put more of it at a certain point?  Do you start it at a certain point?

Is that -- is that the analysis you're doing?

MR. WIERZBOWSKI:  Objection to form. Compound.

JANE ROSE REPORTING              National Court-Reporting Coverage
1-800-825-3341                    janerose@janerosereporting.com