# Exhibit E

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| IN RE RH, INC. SECURITIES LITIGATION, | Case No. 4:17-00554-YGR |

REPORT ON MARKET EFFICIENCY

PROFESSOR STEVEN P. FEINSTEIN, PH.D., CFA

June 22, 2018

## IX.    COMMON PER SHARE DAMAGE METHODOLOGY

### A.    Section 10(b) Damage Methodology

182. Counsel for Plaintiffs also asked me to opine on whether per share damages could be measured for each Class member under Section 10(b) of the Exchange Act using a common methodology for all Class members.

183. It should be noted that I have not conducted a loss causation analysis at this time and reserve the right to address such issues at the appropriate stage. The loss causation analysis that will be necessary to actually calculate damages in the current case requires the full development of the record.

184. Nonetheless, the methodology discussed herein allows the calculation of individual and Classwide damages stemming from various alleged misrepresentations and omissions, and therefore will accommodate alternative potential determinations of liability. Economic analyses, including valuation and empirical event study analysis, can be used to estimate the relationship between specific statements or sets of statements and the subsequent effect on prices, in the case of affirmative statements, omissions, and/or corrective disclosures. As such, Classwide damages in response to the specific misrepresentations and omissions ultimately established by the Plaintiffs can be calculated in a straightforward manner common to all Class members. Out-of-pocket damages can be measured as the difference between the amount of stock price inflation at purchase and the amount of inflation in the stock price at sale taking into account formulaic prescriptions in relevant case law and statutes.

185. To the extent that there are specific issues or challenges complicating the quantification of artificial inflation and damages encountered due to the unique facts and circumstances of this case, the standard tools of valuation and attribution analysis can be applied to measure inflation and damages caused by the alleged misrepresentations and omissions according to Plaintiffs' theory of liability. Valuation analysis is undertaken continuously, every day, for virtually every publicly traded security, and these tools address the very complexities that could potentially be encountered in the course of computing inflation and damages. Among the commonly used valuation tools that are available to investors and analysts in real time, and to forensic analysts when computing damages, are for example: valuation multiple models, such as those based on earnings, EBITDA, revenue, book value, and cash flow;

discounted cash flow models (DCF); return attribution analysis; and the literature regarding valuation effects of factors such as reputation and quality of accounting. In addition, forensic analysts have the added benefit of event study analysis, which quantifies price effects when information did reach the market.

186. Assuming a verdict for the Plaintiffs on the allegations of fraud, Section 10(b) per share damages, respectively for each investor and security, can be measured as follows:

    i.    First, valuation tools, which would include event study analysis such as that described herein, and potentially other empirical analyses if necessary, would be used to establish that the disclosure(s), correcting the alleged misrepresentations and omissions, caused the price of RH stock to fall. This analysis, after controlling for potentially non-fraud-related information, would establish that the alleged misrepresentations and omissions had caused the stock price to be artificially inflated, and that the corrective disclosure(s) caused the inflation to dissipate, in turn causing investor losses. This analysis would apply on a Classwide basis.

    ii.    Second, an inflation ribbon would be constructed, using generally accepted empirical analysis and valuation tools, indicating how much artificial inflation caused by the alleged misrepresentations and omissions was in the price of RH stock on each day during the Class Period. An inflation ribbon is a time series of the difference between a stock's actual price observed in the marketplace, and the estimated price that the stock would have traded at each day had there been full disclosure from the outset of the Class Period. Construction of the inflation ribbon generally employs event study analysis, combined with widely used and generally accepted valuation tools and models. The inflation ribbon is often constructed by working chronologically backwards from the final corrective disclosure to the start of the Class Period, accounting for alleged fraud-related residual price declines as they occurred. Inflation prior to a corrective disclosure that dissipated inflation is greater than the inflation afterward by the amount of inflation that dissipated. Should it be determined that a disclosure(s) is not corrective, the methodology described herein can accommodate such a change and

calculate the but-for stock prices. This analysis would also apply on a Classwide basis.

iii. Third, the measure of per share damages generally applied in 10b-5 cases is the reduction in the inflation ribbon over an investor's holding period (the economic/inflation loss) that was caused by corrective disclosures. That is, for each Class member, per share damages would be calculated as the difference between the inflation on the date the shares were purchased and the inflation on the date those same shares were subsequently sold, excluding any inflation dissipation caused by factors other than corrective disclosure. Per share damages are also limited, however, to be no greater than the decline in share price over the holding period, which is the investment loss actually sustained. Pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") (15 U.S.C. § 78u-4(e)), for any shares sold during the 90-day period after the end of the Class Period, per share damages would be calculated as the lesser of the reduction in the dollar inflation over the investor's holding period (the economic/inflation loss), or the decline in the stock price (the investment loss), where the terminal stock price is deemed to be the average price from the final corrective disclosure date to the sale date. Also, pursuant to the PSLRA, for any shares held 90 days or more beyond the final corrective disclosure, damages would equal the lesser of the reduction in the dollar inflation over the investor's holding period (the economic/inflation loss) or the decline in the stock price (the investment loss), where the terminal stock price is deemed to be the average price over the 90 days following the final corrective disclosure. The calculation of each Class member's damages would be a mechanical arithmetical exercise, conducted the same way for all Class members, applying the results of the Classwide analyses described above to each Class member's trading data.

187. Consequently, each Class member's damages under Section 10(b) can be computed in the same way, common to all Class members, using readily available daily pricing information, in accordance with widely used and generally accepted methodologies and the PSLRA.

51

188. I have not yet been asked to calculate damages for any of the claims alleged on behalf of the Class, and such calculations will likely depend, in part, on the completion of discovery. However, the methodology described above is generally accepted and widely used for calculating damages under Section 10(b) consistently on a Classwide basis in securities class actions.

## X. LIMITING FACTORS AND OTHER ASSUMPTIONS

189. This report is furnished solely for the purpose of court proceedings in the above-referenced matter and may not be used or referred to for any other purpose. The analysis and opinions contained in this report are based on information available as of the date of this report. I reserve the right to supplement or amend this report, including in the event additional information becomes available.

Steven P. Feinstein, Ph.D., CFA