# Exhibit G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GARY KOOPMANN, TIMOTHY KIDD
and VICTOR PIRNIK, Individually and on
Behalf of All Others Similarly Situated,

      Plaintiffs,

   v.

FIAT CHRYSLER AUTOMOBILES N.V.,
FCA US LLC, SERGIO MARCHIONNE,
RICHARD K. PALMER, SCOTT
KUNSELMAN, MICHAEL DAHL,
STEVE MAZURE AND ROBERT E. LEE

      Defendants.

**Civ. Action No: 15-cv-07199-JMF**

**<u>CLASS ACTION</u>**

SUPPLEMENTAL EXPERT REPORT OF ZACHARY NYE, PH.D.

December 21, 2017

Fiat Chrysler and/or events caused by the materialization of previously concealed risks corrected the alleged misrepresentations described in the Fourth Amended Complaint.

**VII.    Damages for Purchasers of Fiat Chrysler Stock During the Class Period Can Be Calculated on a Class-Wide Basis**

72.    I have not, as of yet, been asked to provide an opinion on loss causation or to calculate Class-wide damages in this matter. I have been asked, however, to opine on whether damages for investors who purchased the stock during the Class Period can be calculated on a Class-wide basis. Although damages, if any, for each individual Class member may vary, the method of calculating damages is common to the Class. In what follows, I set forth the general economic framework for quantifying per-share damages on a Class-wide basis.

73.    An investor incurs damages when a security is acquired at a price that is inflated as a result of false or misleading statements or omissions, provided that a later corrective disclosure and/or materialization of a concealed risk causes the price of that security to decline. Price inflation in a security can be created by material misrepresentations and/or omissions on or before the date of purchase, which remain uncorrected in whole or in part at the time of purchase. Damages may be mitigated if the security is sold before the price inflation is fully dissipated, given that the investor receives the benefit of any inflation remaining at the date of sale.

74.    Price inflation may be measured on a Class-wide basis by analyzing the change in a security's price caused by a corrective disclosure and/or the materialization of a concealed risk. The decline in a security's price in response to such events reflects the dissipation of price inflation created by earlier misrepresentations and/or omissions. An event study can be used to isolate Company-specific price movement caused by the revelation of the alleged fraud from price movement caused by other factors. Other factors can include changes in market and

- 36 -

industry conditions or the dissemination of material non-fraud-related, Company-specific

information.  This event study analysis applies to all Class members, regardless of the extent to

which the price movement is due to corrective disclosures and/or the materialization of a

concealed risk.  After isolating the price impact of the alleged misstatements and omissions, one

can estimate the price inflation due to the alleged fraud for each day during the Class Period, and

on a Class-wide basis for each member of the Class.[104]

---

[104] *In re Pfizer, Inc. Sec. Litig.*, Case No. 14-2853-cv (2d Cir. Apr. 12, 2016), pp. 16, 17 (internal citations omitted):

> Performing an event study can thus help an expert to determine at least two things.  First, assuming that the defendant company fraudulently concealed information, the event study shows how much money the fraud caused shareholders to lose.  Identifying residual returns on days when allegedly concealed information reached the market indicates that the supposedly withheld information caused the company's stock price to change.  If the release of allegedly withheld information causes a stock price decrease, shareholders who purchased the defendant company's stock after the alleged fraud but before the revelation may have paid a higher price than they would have but for the defendant's fraudulent conduct — known as an "artificial[ly] inflat[ed]" price.
>
> Second, the event study helps the expert "calculat[e] what the price of [the defendant company's] security would have been had the alleged wrongful conduct not occurred," by estimating the amount of artificial inflation in the company's stock price over time.  Just as the existence of a residual return on a day when the market discovers allegedly concealed information shows that the company's stock price was artificially inflated, the *size* of the residual return on such a day provides evidence of the *amount* by which concealing that particular information inflated the defendant company's stock.  As a result, if concealed information reached the market through multiple corrective disclosures, the sum of the residual returns associated with those disclosures provides evidence about the amount of artificial inflation in the company's stock after the fraud but before those corrections.  Thus, an expert using an event study can estimate the amount of artificial inflation in the defendant company's stock price when shareholders purchased their shares, which is equivalent to estimating the difference between what those investors should have paid for the shares but-for the alleged fraud, and what they actually paid.

Case 1:15-cv-07199-JMF Document 151-1 Filed 12/26/17 Page 41 of 240

75.     Once the daily levels of price inflation have been calculated throughout the Class Period, a Class member's actual trading activity in the security can be used to mechanically calculate damages on an individual basis.  For each Class member, damages incurred on a security acquired during the Class Period and retained through the end of the Class Period are equal to the amount of inflation at purchase.  For a security acquired during the Class Period and sold later in the Class Period, damages are the price inflation at purchase minus the price inflation at sale. Given my understanding of the Supreme Court's ruling in *Dura*,[105] a security purchased during the Class Period and sold before the first corrective disclosure and/or materialization of a concealed risk is ineligible for damages.  Similarly, a security that is both purchased and sold between two sequential disclosures of corrective information is ineligible for damages.

76.     Finally, per-share damages should also incorporate the so-called "90-day lookback" provision of the Private Securities Litigation Reform Act of 1995.  This provision applies such that losses on securities purchased during the Class Period and sold after the 90-day lookback period cannot exceed the difference between the purchase price paid for the security and the average price of the security during the 90-day lookback period.  Losses on securities purchased during the Class Period and sold during the 90-day lookback period cannot exceed the difference between the purchase price paid for the security and the rolling average price of the security during the portion of the 90-day lookback period elapsed as of the date of sale.  Damages incurred by purchasers of Fiat Chrysler (FCAU) stock during the Class Period can be calculated on a Class-wide basis in this manner.

---

[105] *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) ("*Dura*").

## VIII.  Conclusion

77.    In summary, the market for Fiat Chrysler stock was efficient throughout the Fourth-Amended-Complaint Class Period (October 13, 2014 through May 22, 2017).  Damages for investors who purchased Fiat Chrysler (FCAU) stock during the Fourth-Amended-Complaint Class Period can be calculated using a method that is common to the Class.

78.    My work in this matter is ongoing.  My opinions in this report are subject to refinement or revision based on analysis of new information which may be provided to me, including the opinions of other experts and receipt of additional documents and data, and based on further analysis of the data and materials described herein.  Should additional relevant information be provided to me, my opinions may be supplemented at a later date.

Executed on December 21, 2017, at Redwood City, California.

Zachary Nye, Ph.D.

- 39 -