**UNITED STATES DISTRICT COURT**
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. 20-CV-22109-CANNON


**STATE of ALASKA**                          .
**ALASKA PERMANENT FUND**, et al,.


**Plaintiffs,**                              .

                                             .    Fort Pierce, FL
        vs.                                  .
                                             .    July 24, 2023
**RYDER SYSTEM, INC., et al**,    .


**Defendants.**                              .


PRELIMINARY APPROVAL of CLASS ACTION SETTLEMENT HEARING
BEFORE THE HONORABLE AILEEN M. CANNON
UNITED STATES DISTRICT JUDGE

APPEARANCES:
FOR THE PLAINTIFFS:    **JOHN RIZIO-HAMILTON, ESQ.**
                       Bernstein Litowitz Berger &
                       Grossman, LLP
                       **1251 Avenue of the Americas**
                       **44th Floor**
                       **New York, NY 10020**
                       212-554-1400

FOR THE DEFENDANTS:    **STEVEN P. WINTER, ESQ.**
                       Wachtell Lipton Rosen & Katz
                       **51 West 52nd Street**
                       New York, NY 10019
                       212-403-1000


**Official Court Reporter:    Pauline A. Stipes**
                       HON. ROBIN L. ROSENBERG
                       West Palm Beach/Ft. Pierce, FL
                       561-803-3434


**Pauline A. Stipes, Official Federal Reporter**

*THE COURT:* **Thank you.  Please call the case.**

*THE COURTROOM DEPUTY:* **State of Alaska, Alaska Permanent Fund, et al versus Ryder System, Incorporated, et al, case number 20-CV-22109.**

**All persons please make your appearances, starting with the Plaintiff.**

*MR. HAMILTON:* **My name is John Rizio-Hamilton with Bernstein Litowitz Berger & Grossman, counsel for the lead Plaintiffs.  With me today is my colleague, Mathews de Carvalho, also of the Bernstein Litowitz firm, as well as Mr. Stuart Kaufman of the Klauser Kaufman firm.**

*THE COURT:* **Excellent.  Nice to see you.  You may be seated unless you are addressing the Court.  Let me hear from defense counsel.**

*MR. WINTER:* **Good afternoon, your Honor, Steven Winter from Wachtell, Lipton, Rosen & Katz, with Jonathan Osborne from the Gunster firm for the Defendants.**

*THE COURT:* **Nice to see you, good afternoon.  You may be seated as well.**

**All right.  This is a hearing on the Plaintiffs' unopposed motion to approve the class action settlement.  I have reviewed the papers, along with the proposed order and the settlement and the class notice as proposed.  I have a few questions as we go along, but first I would like to turn it over to Plaintiffs to just get an overall view of the**

settlement from your perspective and why you think it is fair and reasonable.

*MR. HAMILTON:* Thank you, your Honor. So, we are very proud to present the settlement here today, and we do believe that it is fair and reasonable and warrants preliminary approval for several reasons, and I think from a big picture perspective, there were certain fundamental aspects of the case that were not going to change in discovery and that presented real challenges. That is one piece of our consideration.

And the second piece is that there is a spectrum of outcomes that we saw in light of the facts and the arguments that Defendants were making, and we believe that the proposed resolution is a really good result when considered in light of that spectrum of different outcomes.

And I will walk you through those today, and along the way, you know, I will mention the mediation process and the role of the mediator as well, which is another important piece of it.

So, stepping back, big picture, there were some fundamental aspects of the case that made it very interesting, but also very challenging.

The first is that at its core this was a case about predictions of future value in a really dynamic and changing market. So, we allege at bottom that Ryder misstated the amounts by which it would sell its used trucks approximately

five years into the future in a used vehicle market that goes up and goes down, and that fact is a difficult one to prove a fraud case on because not only is it an estimate, but it is a forward looking estimate, and Defendants indeed argued at the Motion to Dismiss that we were effectively requiring them to possess a crystal ball.

Big picture point two is that this is a case about accounting misstatements, complex accounting misstatements, but there is no restatement, and more than that, Ryder had a Big Four accounting firm, PWC, that signed off on its financial statements throughout the entire class period, and that was another challenge that discovery was not going to change that we faced.

The third kind of big picture fact that discovery was not going to move was that this is a case where there was no parallel Government investigation, certainly no parallel Government action.  This was a situation where the SEC was well aware of the disclosures that Ryder made at the end of our class period, but chose not to take any action here, so we didn't have that tail wind.  Some securities class actions have a tail wind of a Government investigation or a Government action.  We didn't have that.

So, those are kind of big picture aspects of the case that discovery wouldn't alter in any way, let alone a meaningful way, and that we were going to be faced with

throughout, all the way through trial.

*THE COURT:* I guess so far all I have heard are things that make your case pretty weak, and why would discovery not have potentially revealed any information on the part of the individual Defendants, for example?

*MR. HAMILTON:* I don't mean to present the case as a weak one because we like the case, and we believe we have responses to all of the arguments that Defendants would make, but we also weren't naive and we recognized risk. I don't present those arguments as necessarily winners, I am just presenting them as arguments that posed risk to us that we had to be cognizant of in assessing the case throughout the litigation and the mediation process.

*THE COURT:* Because obviously your original prayer for relief in the Complaint was how much?

*MR. HAMILTON:* We did not put a number on it. The damages were complicated and significant as well. Defendants made a number of liability arguments that, if accepted, would have taken us to zero damages, but assuming that we had overcome the liability arguments that they made, and that we knew they would continue to press through summary judgment, trial, and if we were victorious, on appeal.

They also made a number of damages arguments that would meaningfully shrink and potentially even eliminate damages. I am happy to summarize those if it would be useful

and what that potential effect would be.

THE COURT:  I saw a figure of, I think, 900 million somewhere in the paperwork.  Where is that number coming from?

MR. HAMILTON:  That is the highest possible theoretical damages that we may be able to get, but I do think it is quite unlikely, and I'll explain why, if we were to win every single contested liability issue and every single contested damages issue for the entire class period, and that was a highly unlikely outcome for a few reasons.

I would like to walk you through the reasons and the impact they have numerically on the potentially recoverable damages.  This is what I mean by the spectrum of possible outcomes that could happen.

First of all, we are required to disaggregate that damages figure, and that means we have to parse it, separate it into stock price declines that were definitively tied to the fraud, and then those portions of the stock price decline that might be caused by other information that was disclosed on the corrective disclosure days.  That is our burden to do that. This isn't even a Defense argument.  This is our loss causation burden that we would have to do as part of our case in chief.

Our damages expert undertook an initial disaggregation analysis and he determined that that would leave us with a maximum damages figure of about 630 million.  So, we get taken down from 900 to 630 even in our own case in chief.

Then Defendants made a number of arguments that, if accepted, would have meaningfully reduced damages much, much more.  So, one of the arguments they made is that the class period was too long, it started too early.  As your Honor may recall, at the Motion to Dismiss hearing, your Honor, you kind of put your finger on this a little bit and you said the class period start date may have been overly aggressive, and Defendants would surely press that in discovery.  They did have some supportive facts.  They claimed for the first year in the class period, for instance, they sold the used trucks for a significant gain over the residual values, and that was evidence of the class period beginning just way too early.

If the class period were to be cut by starting at a later date, say 2017 or 2018, max damages decline, if the class period begins in 2017, to 450 million, and they decline even further, to 340 million, if the class period begins in 2018, and those were possible risks for us that we had to weigh.

Then Defendants made another damages argument that was quite threatening and you saw a preview of it on the class cert motion.  They said that the last corrective disclosure, the February 2020 corrective disclosure should be removed from the case because there was essentially no new information disclosed that day in their words.  They said that there was just a small 8 million-dollar adjustment in the residual values and that wasn't material new information for the market.

Had that argument been successful, it would have reduced damages to between 110 and 170 million, and that is because the bulk of the damages in the case were concentrated in that disclosure. Depending on how you calculate damages, roughly 60, 65 percent of damages were concentrated in that one disclosure.

So, again, we believe we have responses to that argument, and you saw some of those responses in our class cert reply. Even if Defendants lost that argument at class cert, they were going to renew it at summary judgment as a loss causation argument, they were going to make it at trial.

And I have to acknowledge that there is some level of jury appeal to it because the 8 million that was disclosed that day, you could argue that that is small in the grand scheme of things for a company like Ryder and the size of the stock price decline, so we thought there was some jury risk on it. And even if we were successful, again, they would renew it on appeal.

So, we saw this spectrum of outcomes ranging from zero where we lose our liability, moving up through this range of 110 to 170, where we win some liability, but Defendants' damages arguments are successful. Then moving to what I would consider the likely max range of 340 to about 630, and we were considering this as we were engaging in the mediation process.

You know, your Honor, as you will recall, required us

to mediate back in June 2022, and we engaged Mr. Melnick of JAMS, who is a very experienced mediator and securities --

THE COURT:  That was prediscovery?

MR. HAMILTON:  We engaged him prediscovery, but the mediation process was going on during discovery, and he had the benefit of document discovery in our mediation submissions, and we had the benefit of that when preparing our second mediation submission.  We had had had some discovery for the first one, but really copious discovery for the second one.

Mr. Melnick, we had two sessions with him, both full day, both in person, and we negotiated back and forth on the facts and the law.  We negotiated vigorously, but we couldn't reach agreement at either session.  He continued discussions with us and made the mediator's recommendation that the action be settled for $45 million in cash.

And when we considered whether to accept that recommendation, we took a look at the entire spectrum of realistically possible outcomes, and felt that the $45 million in cash was a good result in light of what could very well be a challenging case to prove at trial, and then prevail upon in the appeals that would surely follow.

So, that is our rationale for why we respectfully submit the settlement is strong and certainly adequate within the meaning of the rule and warrants your Honor's preliminary approval, subject to further consideration at a final approval

hearing.

THE COURT: So, on the attorney's fees, I understand that it is not unusual, of course, to pay those fees out of the fund, but is there any way at this point to predict the amount of actual payment to eligible claimants?

I guess my concern is -- and I know the attorney fee issue has yet to be finalized obviously, and it requires the Court approval, but it is a very, very hefty sum. I have some concerns about the figure. I would say, yes, this case has been heavily litigated, but for a substantial period of time pending the Court's order on the Motion to Dismiss it was relatively dormant prediscovery.

So, while there were a lot of documents and there were lengthy mediations and the class cert briefing, it is not like the case reached the full-blown apex of what I would consider extensively, extensively litigated securities cases.

And so, all that being said, I'm concerned that potentially that payment to the fees -- sorry, payment of the fees to the lawyers, which I understand would be paid pretty much right away, will that realistically eat into eligible claimants because, of course, whatever is left over may not be enough to satisfy those claimants?

Is there any light that you can shed on that possible concern?

MR. HAMILTON: Well, I would say a few things. It is

true that in a common fund case such as this one the fees are paid out of the common fund, and that is a long-established process by Supreme Court law, Eleventh Circuit law.  Many Courts in this district and other districts within the Eleventh Circuit have so held.

There is no way to predict at this moment in time exactly how much each claimant would get because we need to receive all the claims, calculate them, and then figure out how much each claimant's pro rata share of the settlement would amount to.

With all that said, I would respectfully submit to you that a fee request of 25 percent is fair and reasonable, and I would like to take a moment to explain why.

At least notice of such a request should be given to the class so that they have the opportunity to consider it, look at our full fee submission before they have a reaction to the settlement, and then be given the opportunity to object if they think that the fee is too high.

So, first of all, I think 25 percent in a common fund case is a fairly typical benchmark in the Eleventh Circuit just legally speaking.  There is the Fought (phon) case out of the Eleventh Circuit which says that 25 percent is generally recognized as a fee award in a common fund case.  Within the securities class action context, in this district and in sister districts within the Eleventh Circuit fee awards of that

magnitude are often granted.

I have several examples that I could give you.  I don't know if that is the best use of your time right now.  I am happy to give them to you.  We have, of course, detailed it in great detail in our final fee submission, but suffice it to say that I am happy to be more specific.  There are many districts within the Eleventh Circuit that have awarded a fee of 25 percent and greater on security class action settlements, including of approximately this size, smaller, and larger.

The other piece that I want to put before you is exactly what work we did to bring it to this place, and what a 25 percent fee, if awarded, would result in in terms of a multiplier on our lodestar, because that is another important consideration for you.

So, this case has been litigated for three years.

*THE COURT:*  But three years light, let's just say.

*MR. HAMILTON:*  Okay.  I understand there was a period of dormancy, that is true.  Outside of that, after being appointed as lead counsel on behalf of our clients, the lead Plaintiffs, we researched and filed a really detailed 131-page amended Complaint.  We conducted an investigation entirely from our own firm where we reached out to dozens upon dozens of former Ryder employees, interviewed many of them, and many of those accounts were included in the consolidated amended Complaint.

Defendants then filed a really challenging, specific, and well-researched Motion to Dismiss.  We opposed that.  The briefing on that motion factually and legally was really extensive.  Your Honor held a detailed oral argument on that --

THE COURT:  I am familiar with all of this.  At this point, you are talking about close to $12 million, including expenses, cutting into a $45 million pot.  That just strikes me as very high.

MR. HAMILTON:  The 25 percent is completely in line with a traditional fee request.  There is nothing uniquely high about the fee request under the law and under the practice in the Eleventh Circuit and the District Courts that have considered fee awards in securities class actions within this circuit.

Furthermore, if awarded, it would result in a multiplier on our lodestar of approximately 1.3, and the lodestar multipliers that are typically awarded in these cases range much higher than that.  I think the typical range -- one Court in the Southern District of Florida, the Pinto Court, in a 2007 decision found that lodestar multipliers tend to range from 2.26 up to 4.5, and that 3 appears to be the average.

We are on the way low end, the far low end of the lodestar multipliers that are commonly awarded in securities class actions within the Eleventh Circuit.

THE COURT:  So, in terms of distributing whatever sum

is ultimately awarded in the form of fees, can you explain to the Court the number of Plaintiffs' counsel involved in this effort?

*MR. HAMILTON:*  Yes, it's my firm and the Klausner Kaufman firm, your Honor.

*THE COURT:*  So, divided by two, basically.

*MR. HAMILTON:*  Yes, and the division of the fee would not necessarily be split in half, but it would be those two firms that would share in the fee.

*THE COURT:*  Okay.

*MR. HAMILTON:*  And again, we are not asking your Honor -- I know your Honor has to look at all these things in connection with preliminary approval, and I am not suggesting that you don't.  But I do want to emphasize that we are not asking you to approve the fee right now; we are asking you to allow notice to go out to the class so we can make a full, much more detailed fee submission to your Honor, so when the time comes for you to consider the fee you have that before you.

*THE COURT:*  By the time we get to the final approval stage potentially will the Court know how many claimants we are talking about, how much that eats into the $45 million, and what realistically would be left over?  I am just concerned, again, that it would be dried up.

I saw a reference in I think the motion itself that said -- I was a bit unclear what it meant.  It was a reference

to no further redistributions if such redistributions were no longer "cost effective." I didn't know what that meant.

MR. HAMILTON: Oh, that just means once a settlement is approved and a fee is approved, the fee -- and an expense application is approved, the fee and expense amount come out of the common fund. The remainder, plus the interest that it has earned, is then distributed to the class.

We don't distribute a hundred percent right away, the first distribution. We normally hold back like five or ten percent. The reason for that is we have to pay claims administration fees to the claims administrator, and then a tax liabilities also on any interest that the fund earns, and sometimes claims come in late and we want to hold a little bit back in case there is a good reason to pay those claims, subject to Court approval. We ask Court permission before we pay late claims.

So, that reserve, that five to ten percent, if, after paying late claims and claims administration fees there is enough money to make another distribution to the class without incurring so much claims administration fees that it becomes economically unreasonable, then we make a redistribution, and we keep doing that process until there is either nothing left or the amount left is so small, like, you know, 2 or $3,000, that it doesn't make sense to distribute it to the universe of Ryder common shareholders who are in the class.

At that point, we would come to your Honor and say we have this amount of money left in the fund, it is so small that it doesn't make sense for us to distribute it to everyone. We would like to contribute it to a 501(c)(3) charity that your Honor approves, and that is how that process works. That reference that your Honor pointed to was just as to that process.

THE COURT: So, in terms of -- fast forwarding to that final approval stage, will there be a better sense of how much money is realistically going to be drawn from the net fund, or whatever it is called, again, to alleviate this potential concern that the attorney fee request, even though it falls generally in line percentage-wise, would eat so significantly into the pot that there wouldn't be enough money to actually pay the authorized claims?

MR. HAMILTON: We will have a better sense because some claim forms will have come in then. We won't know for sure until all the claim forms have come in and have been calculated, but we will have a better sense. And, you know, we expect that in all events the amount of claims that come in will be greater than the settlement amount because we are not getting a hundred percent of damages here, but we will have money to pay everyone who submits a valid claim something.

So, once we get closer to the finalization of the claims administration, we know that with much more certainty,

and by the time of the final approval hearing in —

THE COURT: It could be like pennies on the dollar —

MR. HAMILTON: We don't know exactly. You know, we allow for people to claim the largest amount of possible losses, and that amount that they claim doesn't necessarily reflect the amount of true damages that we likely would be able to prove at trial.

THE COURT: But that is where the allocation formula comes in, right?

MR. HAMILTON: That is right. And the allocation formula is designed to allow shareholders from the entire proposed class period to make claims and receive a pro rata share of the settlement fund, but we can't say exactly how much that pro rata share would be in relation to the claim they make.

What I can tell you, though, is that we like to pay shareholders, that is what we do. So, the plan of allocation allows for them to make an extremely large claim, but that doesn't necessarily mean, and in fact it does not mean the amount of all of the aggregate shareholder claims is what we would be able to prove in damages at trial.

The amount of shareholder aggregate claims could be substantially higher than what we would actually be able to prove at trial. The plan of allocation is just the mechanism, a formula for taking all the claims that are out there,

weighing them in size against one another to determine how to divide up the settlement among everyone who makes a claim.

THE COURT:  It may be helpful for the Court, assuming the preliminary approval goes through, to get a more current summary of number of submitted claims prior to that final approval hearing so that I can have a -- more context to evaluate the attorney fee issue in light of what actually can and will be paid with reasonable certainty to the claimants, which, I guess, leads me to another question.

As far as the overall timing that is proposed in the motion, it seems a little bit tight and -- can you -- can you run through some of those chunks of time?  I want to ensure there is adequate leeway there for people to submit their claims, and then, of course, for the Court to have enough time to review.

MR. HAMILTON:  Okay.

So, I have a schedule, it works off today.  It is not being presumptuous, it is just that I need a benchmark to map out dates.

So, if -- from the time that the Court enters a preliminary approval order there is 20 business days to mail the notice, and that date of mailing is what we call the notice date.

Benchmarking off today, again, not at all being presumptuous, but just to give us hard numbers to work with, if

a preliminary approval order were entered today, the notice would be mailed no later than August 21st.

Then there is another ten days to publish summary notice in Investors Business Daily and another medium, and that would take us to September 5th.

Then, the next step in the process occurs 35 days later and that is the filing of our submissions for final approval and our expense and fee application, and that would be on October 9th, but that date could be moved up if your Honor so chose.

THE COURT:  So you are filing that before we have any sense of how many people are actually filing claims.

MR. HAMILTON:  Yes, before the deadline for the claims.

Then, the next event is the deadline for class members to exclude themselves or object to either the fees or the expenses or the settlement, and that is October 23rd.  That is a couple of weeks later.

Then, seven days later would be the deadline for our reply papers, and then a week later would be the preliminary -- the final approval hearing, and that would take us to November 13th.

THE COURT:  Why wouldn't all of the briefing, the final approval motion and the reply, why wouldn't that all happen after we know how many -- after the deadline for

submitting claim forms?

*MR. HAMILTON:*  Well, the deadline for submitting claim forms, it takes an awful lot of time, and Courts typically have not felt it necessary to have the briefing -- have all of the briefing wait until then.  Sometimes what I have seen Courts do is let the briefing proceed as the claims submission process is proceeding, but then have a final approval hearing --

*THE COURT:*  It just seems premature.  It seems, frankly, not as helpful because really for me to evaluate the number of opt outs and any meritorious potential objections that are lodged, all of this is happening while you are briefing something before you even know the substance of any potential objections.

I don't know if it makes sense to receive so much comprehensive briefing prior to knowing more about how the actual settlement process unfolds.

*MR. HAMILTON:*  Well, we file our initial papers for final approval and our fee and expense application before the opt out and objection deadline, and then after that deadline, we file reply papers, and the thinking is that if there are any objections or opt outs we address them on reply.

And we think it is important to do it that way so that anyone who wants to object or opt out has a chance to see our final approval papers and our fee application before we make that decision.

*THE COURT:*  Realistically, that is going to be very similar to what has already been filed in the form of a preliminary motion.

*MR. HAMILTON:*  No, I think we will provide considerably more detail, particularly in light of this conversation.  There could be a deposition from a mediator as well, and there could be more specifics about everything that occurred in the litigation, why it was important and necessary.  There could be a more detailed description of the risks.

And, you know, in the Johnson decision from the Eleventh Circuit they did make a point to say that they wanted the fee application on file before the opt out and objection deadline, and the schedule that we propose is consistent with that and that is typically how it has been done.

Although I did note sometimes Courts want a claim submission deadline, you know, close in time to the final approval hearing.  They don't necessarily say before, but they say close in time just so you have more of a handle on how many claims have been submitted and what they look like.

*THE COURT:*  Okay.  As far as the notice, I think it is just U.S. Mail.  Is there any provision for email notice?

*MR. HAMILTON:*  It can certainly be emailed, too.  We are happy to do it either way.

A lot of the names that –– of potential class members come from brokers or nominees that hold the stock for

individuals and entities, and sometimes they have mailing addresses, sometimes they have email addresses, sometimes they have both.

THE COURT:  So, just realistically, if -- you are talking about a lot of defined benefit pension plans.  Who is actually submitting the claims?

MR. HAMILTON:  In the case of individual investors, they often submit them themselves.  In the case of larger funds, entities, they sometimes submit them themselves because they have the in-house people who do that.  Sometimes they hire what is called a claims filing service to do it for them.

THE COURT:  For them, meaning the pension plan?

MR. HAMILTON:  Yes.

THE COURT:  Okay.

MR. HAMILTON:  That is a third party.  And then sometimes their custodial bank handles it for them.  Let's say you have a pension fund and the pension fund's custodial bank is BNY Mellon, which is a frequent and large custodian.  BNY Mellon often, but not always, for many of its clients submits these claim forms on their behalf.

So, in the case of an individual, it is the person themselves.  In the case of an entity, sometimes they do it themselves, sometime their custodial bank does it, and sometimes they have a third-party claim filing service that does it.

Pauline A. Stipes, Official Federal Reporter

*THE COURT:*  Okay.  So, in terms of the email notice, how are you going to get that information?

*MR. HAMILTON:*  So, we can get it from the brokers.

The way the process typically works is, if there is preliminary approval, we then get a list of shareholders of record from the company, but the claims administrator -- but that is not everybody who is potentially in the class.

The claims administrator has a list.  In this case the proposed claims administrator is JND.  They have a list of about 4,000 of the largest brokers and nominees that there are out there, and they contact them and mail the notice to them along with the copy of the preliminary approval order that says:  When you receive this notice on behalf of all of your clients who may have bought Ryder common stock during the class period, you either have to request copies from us and send them all to your clients yourselves, or give us the list of the clients and we will send it to them.

Typically, they give us the list, the claims administrator the list that is, and they have an email address or mailing address, and sometimes both, and that is how we get the contact information for these people and entities.  And we can indeed send it by mail or send it by email, or both, whichever the Court prefers.

*THE COURT:*  Is there realistically enough time in the proposed timetable for you to get all of this information, send

it to those brokers, and then submit the notice if it turns out those brokers wish the claims administrator do the actual mailing?

MR. HAMILTON:  Yes.  So this is a 110-day timeline, and based on our experience, that is enough time.  And we are --

THE COURT:  I think six months is probably better.

MR. HAMILTON:  Okay, that is totally fine.  That gives more play because the one hangup that we have experienced is kind of what you are getting at, which is sometimes these brokers don't move as fast as we want them to.

THE COURT:  All right.  So then there is the email.  I think email, if there are emails, should be part of the notice.

MR. HAMILTON:  Okay.

THE COURT:  As far as the -- any objections that might be filed, what I want to avoid is receiving as the Court all these objections as separate filings.  It seems much more efficient at least for the claims administrator to do the work of compiling those objections and then filing maybe a composite set of those broken down by attachments.

I don't want to be the recipient of these potentially multiple objections, and it would be more organized to receive them in one submission.

MR. HAMILTON:  Okay.

THE COURT:  What if there is a pro se objector who is

just a regular person not represented by counsel and they want to come and be heard at the final hearing; why do they need to file a notice of appearance?

*MR. HAMILTON:*  Yes, I think I completely understand where you are coming from, and one thing that could be done -- I think we actually said this in the notice, but not in the preliminary approval order, which is, I think, the sticking point.

We could add a phrase like "unless the Court orders otherwise."  Like in paragraph 69 of the notice we have that, you know, we say unless the Court orders otherwise, a settlement class member, et cetera, but the preliminary approval order does not have that qualifying language.

I think if we added something to that effect to the preliminary approval order then your Honor has the discretion for anyone to speak, which your Honor always does anyway, I suppose, notwithstanding a preliminary approval order, but I think that would clarify it.

*THE COURT:*  Which paragraph did you say, 69 of the notice?

*MR. HAMILTON:*  Of the notice, yes.  It's the last paragraph in the section describing the procedures for objecting.

*THE COURT:*  But that provision is about forever waiving your right to object if you don't object.

I am talking about just coming to the hearing and having an opportunity to speak.

*MR. HAMILTON:* Yes. What I was suggesting is that it says: Unless the Court orders otherwise, any settlement class member who does not object in the manner described above. I think that manner described above includes the notice of appearance provision your Honor is talking about.

My view is that the unless the Court orders otherwise qualified that proceeding requirement of filing a notice of appearance, but we can certainly make that clear. The only reason that notice provision is in there is because if there is going to be an objector -- we are not envisioning a pro se objector with that. We are envisioning someone represented by counsel, maybe an institution, and we want to have notice of their desire to speak.

But I hear you loud and clear about that issue and we can either say it doesn't apply in the case of a pro se litigant or we could just say that the Court retains the authority to hear whoever the Court wants.

*THE COURT:* All right. So long as there is not an impediment that regular folks need to get an attorney simply to be here if they wish, which even if it is unlikely, I think they should not be afraid about that prerequisite, and so something should be amended so that is clear.

*MR. HAMILTON:* Okay.

*THE COURT:* I had another question. It concerns the -- I think it is called the distribution order. In the sequence of things, where does that come into play?

*MR. HAMILTON:* So, that is after final approval and after the effective date has occurred, which means that -- so in this world where this happens, the settlement has been approved and it has become final. Either there has been no objection, or there was an objection and your Honor overruled it, and there was an appeal and the appeal has been resolved, and the time for a cert petition has passed or the Supreme Court has taken over.

So, the settlement cannot be distributed until not just after you rule, but after any potential appeals are off the table. Once the settlement has become finally effected that way, then we are permitted to distribute the minimum in the class record. We can't distribute it before then because if an Appellate Court were to do something with the settlement, you can't get the money back if it has been distributed.

It is unfortunate that sometimes objections can really seriously delay distribution of settlements, but we have to wait until they are all resolved.

*THE COURT:* But you don't have to wait for the attorney's fees.

*MR. HAMILTON:* We want to get the money out to class members as quickly as possible, and we have been litigating the

case for years without any payment, and not just without any payment, we have gone out-of-pocket substantially on the expenses.  That is why we ask for payment of the fees when we do.  I promise you.

One of the things I do for the firm besides litigating cases is I oversee the settlement department.  One of the things that I am most focused on in overseeing the settlement department is getting money out to class members as quickly as possible.  I said earlier we like to pay class members.  That is our mission as a firm, so we take it extremely seriously.

The one time that we do experience delays is if there is an objection and it kicks around at the appellate level for a long time, but I don't know that there is a solution to that problem because we can't distribute the money until the Appellate Court says it is okay.

Once that moment occurs -- just to circle back to your Honor's original question, once that moment occurs the claims administrator will have processed all the claims and analyzed them and determined which claims are valid and should be paid and which claims are not valid and are not entitled to recover anything from the settlement.

The class members whose claims were rejected have an opportunity to contest that and request Court review.  Often times there aren't any, but sometimes there are.

In either event, we make a motion with the Court

called a distribution motion where we ask the Court for permission to distribute the money to the class and to approve the determinations of the claims administrator.  Once we get Court approval on that motion we distribute the money by check or wire, depending on how the claimant would prefer to receive it.

*THE COURT:*  One last question, and then I will turn to Defense counsel.

I know there was a footnote about a case in California referred to as Symantec.  Can you explain to me what happened there?

*MR. HAMILTON:*  Yes, your Honor.  So, in Symantec we were appointed lead counsel and a fund who we represent called SEB was appointed the lead Plaintiff.  This was in the Northern District of California before Judge Alsup.  We were litigating the case and a former executive from SEB joined our firm as counsel and when that -- and we made no secret of it, we were very proud to have him as a corporate adviser for our firm.

And when that happened, a competing law firm and their competing lead Plaintiff movant who we had defeated at the lead Plaintiffs stage made a motion before Judge Alsup and effectively said that could give rise to a conflict of interest between the lead Plaintiff and the lead counsel, and we want discovery to determine whether there is any such conflict.

And Judge Alsup, who is extremely, I would say,

focused on class issues and fastidious about how he goes about preliminary and final approval and the whole class action process actually, ordered that there could be discovery, and there was, in fact, copious discovery of our firm and SEB on this issue.

There was meaningful document discovery, there were depositions that we sat for, and then Judge Alsup asked for submissions on the issue for both sides.  And after reviewing those submissions, he determined that there was no quid pro quo between our firm and SEB, that our firm should continue as lead counsel, and SEB should continue as lead Plaintiff, and then we successfully resolved the case via settlement.

Judge Alsup awarded the requested fee and commented that we had done a good job, but he did say that in the future, I think it was for a period of three years, whenever we are seeking to be appointed class counsel we should bring the decision to the attention of the Court and the proposed lead Plaintiff representatives.

*THE COURT:*  Did he find there to be a conflict?

*MR. HAMILTON:*  No, no.

*THE COURT:*  All right.  Okay.

Let me turn it over to Defense counsel.  I know we have jumped around a bit, but you are welcome to address any points we have discussed or raise any additional issues.

*MR. WINTER:*  Nothing from my perspective, your Honor,

Pauline A. Stipes, Official Federal Reporter

unless you have any questions for the Defendants.

*THE COURT:*  Obviously, the Court has to run through a rigorous 23 analysis even if there is, you know, a proposed settlement.  From the perspective of Defense counsel, are there any components of the Rule 23 analysis that require additional explanation?

*MR. WINTER:*  I don't think so, your Honor, but if you have any questions about either the settlement negotiations we have had with the Plaintiffs or anything else, we would be happy to address those.  I think Plaintiffs' counsel adequately addressed all of the issues that are in front of you today.

*THE COURT:*  Okay.  All right.  I don't think I have any other questions.

Let me turn it back over to Plaintiffs' counsel for any parting thoughts.

I am going to take a closer look at some of the, you know, provisions in the papers and enter an order following this hearing that identifies at least a few areas to amend. The big picture, I think the settlement does appear to be reasonable.

Like I said, I do have some concerns about the fee amount given the procedural history of the case which, like I said, although did require important litigation and well done litigation, I don't know if it warrants that amount of fees given ultimately the discovery, which was relatively truncated

it appears, and given the dormancy of the case for approximately a year, perhaps a bit less than that.

In any case, I will give you one final chance to present any argument.  I will then recess court to prepare the order.

*MR. HAMILTON:*  Thank you so much, your Honor.  I will be extremely brief.

First of all, thank you for your consideration today, we really appreciate it.

Secondly, on the fee, I hear your concern, I hear you. The only thing I am asking you for today is the opportunity to present a really detailed fee petition that might change your mind.  I am just asking for that chance.

By allowing us to notice a fee of no more than what we put in the notice in no way are you passing on whether a particular request is reasonable or will be approved.  You are just giving the class members the opportunity to object to a number of that nature, and you are giving me a chance to put my best foot forward on a fee submission that may or may not at the end of the day change your mind.

*THE COURT:*  In terms of giving the Court that final summary prior to the final hearing, I think you said it would be in the form of a reply where you would actually itemize, look, this is the number of claim notices that were sent out, this is the number of claimants who responded, this is the

rough number of claimants who we believe to be eligible, and using the allocation method proposed, we think X, Y, Z amounts will actually be distributed. Those sorts of detailed figures, where am I going to see that?

MR. HAMILTON: All of that would be in the reply. There would be some of that, to the extent we know it, in the opening submission, but we will have more time and more information in the reply. And the other thing that the reply would address is, by that point we would know how many people have requested exclusion and what, if any, objections there are, and the reply would address those matters as well.

THE COURT: The reply date is key to a point after the deadline for submitting claims?

MR. HAMILTON: So, the reply date is before the claims deadline. That is typically how it is done because we want to give people lots of time to submit claims.

THE COURT: If it is lengthened to the sixth month then --

MR. HAMILTON: If we lengthen to the sixth month, then we could put the reply date after a claims submission date. Yes, we could put it after the claims. I am just doing a little quick math in my head. Yes.

THE COURT: Okay.

MR. HAMILTON: One other point I want to make clear if I didn't focus on it. This is not a claims made settlement,

and I know that was a problems in one of the cases your Honor cited, like the fee was going to be larger than the amount of money paid out to claimants, which is highly -- I don't even know the word for it -- objectionable, but this is not a claims made settlement.  All of the settlement money is going to be less fees and expenses approved by the Court and claims administration fees approved by the Court.

THE COURT:  Have you run any algorithms or have you run the allocation method in a hypothetical universe to try to see what the numbers actually pan out?

MR. HAMILTON:  We haven't.  We know that like, you know -- we haven't because some of these -- they are very complex, and reality can sometimes divert sharply from theory in terms of trading.  So, I can't give you a prediction.  I think we would have more information closer to the claims submission.

THE COURT:  All right.  Well, thank you all, it's nice to see you.  Safe travels home.  The Court is in recess.

(Thereupon, the hearing was concluded.)

* * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above matter.

Date: July 24, 2023
          /s/ Pauline A. Stipes, Official Federal Reporter

Pauline A. Stipes, Official Federal Reporter

MR. HAMILTON: [44]
MR. WINTER: [3]   2/14 30/24
 31/6
THE COURT: [48]
THE COURTROOM DEPUTY: [1]
 2/1

**$**

$12 [1]   13/6
$12 million [1]   13/6
$3,000 [1]   15/23
$45 [4]   9/15 9/18 13/7 14/21
$45 million [4]   9/15 9/18
 13/7 14/21

**/**

/s [1]   34/24

**1**

1.3 [1]   13/16
1000 [1]   1/21
10019 [1]   1/20
10020 [1]   1/17
110 [2]   8/2 8/21
110-day [1]   24/4
1251 [1]   1/16
131-page [1]   12/20
13th [1]   19/22
1400 [1]   1/18
170 [1]   8/21
170 million [1]   8/2

**2**

2.26 [1]   13/21
20 [1]   18/21
20-CV-22109 [1]   2/4
20-CV-22109-CANNON [1]   1/3
2007 [1]   13/20
2017 [2]   7/14 7/15
2018 [2]   7/14 7/16
2020 [1]   7/21
2022 [1]   9/1
2023 [2]   1/9 34/23
212-403-1000 [1]   1/21
212-554-1400 [1]   1/18
21st [1]   19/2
22109 [1]   2/4
23 [2]   31/3 31/5
23rd [1]   19/17
24 [2]   1/9 34/23
25 percent [6]   11/12 11/19
 11/22 12/8 12/12 13/9

**3**

340 [1]   8/23
340 million [1]   7/16
3434 [1]   1/24
35 [1]   19/6

**4**

4,000 [1]   23/10
4.5 [1]   13/21
44th [1]   1/17
450 million [1]   7/15

**5**

501 [1]   16/4
51 [1]   1/20
52nd [1]   1/20
561-803-3434 [1]   1/24
5th [1]   19/5

**6**

60 [1]   8/5
630 [2]   6/25 8/23
630 million [1]   6/24
65 percent [1]   8/5
69 [2]   25/10 25/19

**8**

8 million [1]   8/13
8 million-dollar [1]   7/24

**9**

900 [1]   6/25
900 million [1]   6/2
9th [1]   19/9

**A**

a hypothetical [1]   34/9
able [4]   6/5 17/6 17/21
 17/23
about [22]   3/22 4/7 6/24
 8/23 10/9 13/6 13/11 14/21
 20/15 21/7 22/5 23/10 25/24
 26/1 26/7 26/16 26/23 29/9
 30/1 30/1 31/8 31/21
above [3]   26/5 26/6 34/22
accept [1]   9/16
accepted [2]   5/18 7/2
accounting [3]   4/8 4/8 4/10
accounts [1]   12/24
acknowledge [1]   8/12
action [9]   1/12 2/21 4/17
 4/19 4/22 9/14 11/24 12/8
 30/2
actions [3]   4/20 13/13 13/24
actual [3]   10/5 20/16 24/2
actually [10]   16/14 17/23
 18/7 19/12 22/6 25/6 30/3
 32/23 33/3 34/10
add [1]   25/9
added [1]   25/14
additional [2]   30/24 31/5
address [7]   20/21 23/19
 23/20 30/23 31/10 33/9 33/11
addressed [1]   31/11
addresses [2]   22/2 22/2
addressing [1]   2/13
adequate [2]   9/23 18/13
adequately [1]   31/10
adjustment [1]   7/24
administration [5]   15/11
 15/18 15/20 16/25 34/7
administrator [9]   15/11 23/6
 23/8 23/9 23/19 24/2 24/18
 28/18 29/3
adviser [1]   29/18
afraid [1]   26/23
after [13]   12/18 15/17 19/25
 19/25 20/19 27/4 27/5 27/13
 27/13 30/8 33/12 33/20 33/21

afternoon [2]   2/15 2/18
again [6]   8/7 8/17 14/11
 14/23 16/11 18/24
against [1]   18/1
aggregate [2]   17/20 17/22
aggressive [1]   7/7
agreement [1]   9/13
AILEEN [1]   1/13
al [4]   1/5 1/9 2/3 2/3
ALASKA [4]   1/5 1/5 2/2 2/2
algorithms [1]   34/8
all [37]
allege [1]   3/24
alleviate [1]   16/11
allocation [6]   17/8 17/10
 17/17 17/24 33/2 34/9
allow [3]   14/16 17/4 17/11
allowing [1]   32/14
allows [1]   17/18
alone [1]   4/24
along [4]   2/22 2/24 3/15
 23/12
already [1]   21/2
also [5]   2/10 3/21 5/9 5/23
 15/12
Alsup [5]   29/15 29/21 29/25
 30/7 30/13
alter [1]   4/24
although [2]   21/15 31/23
always [2]   22/19 25/16
am [14]   5/10 5/25 12/4 12/6
 13/5 14/13 14/22 26/1 28/7
 31/16 32/11 32/13 33/4 33/21
amend [1]   31/18
amended [3]   12/21 12/24
 26/24
Americas [1]   1/16
among [1]   18/2
amount [15]   10/4 11/10 15/5
 15/23 16/2 16/20 16/21 17/4
 17/5 17/6 17/20 17/22 31/22
 31/24 34/2
amounts [2]   3/25 33/2
analysis [3]   6/23 31/3 31/5
analyzed [1]   28/18
another [10]   3/17 4/12 7/18
 12/13 15/19 18/1 18/9 19/3
 19/4 27/1
any [29]   4/19 4/24 5/4 10/4
 10/23 15/12 19/11 20/10
 20/12 20/20 21/21 24/15 26/4
 27/13 28/1 28/1 28/24 29/24
 30/23 30/24 31/1 31/5 31/8
 31/13 31/15 32/3 32/4 33/10
 34/8
anyone [2]   20/23 25/16
anything [2]   28/21 31/9
anyway [1]   25/16
apex [1]   10/15
appeal [5]   5/22 8/13 8/18
 27/9 27/9
appeals [2]   9/21 27/13
appear [1]   31/19
appearance [3]   25/3 26/7
 26/10
appearances [2]   1/14 2/5
appears [2]   13/21 32/1
appellate [3]   27/17 28/12

## A

**appellate... [1]**   28/15
**application [5]**   15/5 19/8 20/18 20/24 21/12
**apply [1]**   26/17
**appointed [4]**   12/19 29/13 29/14 30/16
**appreciate [1]**   32/9
**approval [30]**   1/12 3/6 9/25 9/25 10/8 14/13 14/19 15/15 16/9 17/1 18/4 18/6 18/21 19/1 19/8 19/21 19/24 20/7 20/18 20/24 21/17 23/5 23/12 25/7 25/13 25/15 25/17 27/4 29/4 30/2
**approve [3]**   2/21 14/15 29/2
**approved [7]**   15/4 15/4 15/5 27/7 32/16 34/6 34/7
**approves [1]**   16/5
**approximately [4]**   3/25 12/9 13/16 32/2
**are [51]**
**areas [1]**   31/18
**aren't [1]**   28/24
**argue [1]**   8/14
**argued [1]**   4/4
**argument [8]**   6/20 7/18 8/1 8/8 8/9 8/11 13/4 32/4
**arguments [10]**   3/11 5/8 5/10 5/11 5/18 5/20 5/23 7/1 7/3 8/22
**around [2]**   28/12 30/23
**as [45]**
**ask [3]**   15/15 28/3 29/1
**asked [1]**   30/7
**asking [5]**   14/11 14/15 14/15 32/11 32/13
**aspects [3]**   3/7 3/20 4/23
**assessing [1]**   5/12
**assuming [2]**   5/19 18/3
**attachments [1]**   24/20
**attention [1]**   30/17
**attorney [4]**   10/6 16/12 18/7 26/21
**attorney's [2]**   10/2 27/23
**August [1]**   19/2
**August 21st [1]**   19/2
**authority [1]**   26/19
**authorized [1]**   16/15
**Avenue [1]**   1/16
**average [1]**   13/21
**avoid [1]**   24/16
**award [1]**   11/23
**awarded [7]**   12/7 12/12 13/15 13/17 13/23 14/1 30/13
**awards [2]**   11/25 13/13
**aware [1]**   4/18
**away [2]**   10/20 15/8
**awful [1]**   20/3

## B

**back [8]**   3/19 9/1 9/11 15/9 15/14 27/18 28/16 31/14
**ball [1]**   4/6
**bank [3]**   22/16 22/17 22/23
**based [1]**   24/5
**basically [1]**   14/6

**be [71]**
**Beach [1]**   1/24
**Beach/Ft [1]**   1/24
**because [19]**   4/3 5/7 5/14 7/22 8/3 8/13 10/21 11/7 12/13 16/16 16/21 20/9 22/9 24/9 26/11 27/16 28/14 33/15 34/12
**become [2]**   27/7 27/14
**becomes [1]**   15/20
**been [13]**   7/7 8/1 10/10 12/15 16/18 21/2 21/14 21/19 27/6 27/7 27/9 27/18 27/25
**before [16]**   1/13 11/16 12/10 14/18 15/15 19/11 19/13 20/12 20/18 20/24 21/12 21/17 27/16 29/15 29/21 33/14
**beginning [1]**   7/12
**begins [2]**   7/15 7/16
**behalf [3]**   12/19 22/20 23/13
**being [4]**   10/17 12/18 18/18 18/24
**believe [5]**   3/4 3/12 5/7 8/7 33/1
**benchmark [2]**   11/20 18/18
**Benchmarking [1]**   18/24
**benefit [3]**   9/6 9/7 22/5
**Berger [2]**   1/15 2/8
**Bernstein [3]**   1/15 2/8 2/10
**besides [1]**   28/5
**best [2]**   12/3 32/19
**better [4]**   16/9 16/16 16/19 24/7
**between [3]**   8/2 29/23 30/10
**big [7]**   3/6 3/19 4/7 4/9 4/14 4/23 31/19
**bit [6]**   7/6 14/25 15/13 18/11 30/23 32/2
**blown [1]**   10/15
**BNY [2]**   22/18 22/18
**both [6]**   9/10 9/11 22/3 23/20 23/22 30/8
**bottom [1]**   3/24
**bought [1]**   23/14
**brief [1]**   32/7
**briefing [8]**   10/14 13/3 19/23 20/4 20/5 20/6 20/12 20/15
**bring [2]**   12/11 30/16
**broken [1]**   24/20
**brokers [6]**   21/25 23/3 23/10 24/1 24/2 24/11
**bulk [1]**   8/3
**burden [2]**   6/19 6/21
**business [2]**   18/21 19/4

## C

**calculate [2]**   8/4 11/8
**calculated [1]**   16/19
**California [2]**   29/9 29/15
**call [2]**   2/1 18/22
**called [5]**   16/11 22/11 27/2 29/1 29/13
**can [16]**   10/23 14/1 14/16 17/16 18/6 18/7 18/11 18/11 21/22 23/3 23/22 26/10 26/17 27/19 29/10 34/13

**can't [5]**   17/13 27/16 27/18 28/14 34/14
**CANNON [2]**   1/3 1/13
**cannot [1]**   27/12
**Carvalho [1]**   2/10
**case [40]**
**cases [4]**   10/16 13/17 28/6 34/1
**cash [2]**   9/15 9/19
**causation [2]**   6/20 8/11
**caused [1]**   6/18
**cert [5]**   7/19 8/8 8/9 10/14 27/10
**certain [1]**   3/7
**certainly [4]**   4/16 9/23 21/22 26/10
**certainty [2]**   16/25 18/8
**certify [1]**   34/21
**cetera [1]**   25/12
**challenge [1]**   4/12
**challenges [1]**   3/9
**challenging [3]**   3/21 9/20 13/1
**chance [4]**   20/23 32/3 32/13 32/18
**change [4]**   3/8 4/12 32/12 32/20
**changing [1]**   3/23
**charity [1]**   16/4
**check [1]**   29/4
**chief [2]**   6/21 6/25
**chose [2]**   4/19 19/10
**chunks [1]**   18/12
**circle [1]**   28/16
**circuit [10]**   11/3 11/5 11/20 11/22 11/25 12/7 13/12 13/14 13/24 21/11
**cited [1]**   34/2
**claim [14]**   16/17 16/18 16/23 17/4 17/5 17/14 17/18 18/2 20/1 20/2 21/15 22/20 22/24 32/24
**claimant [2]**   11/7 29/5
**claimant's [1]**   11/9
**claimants [8]**   10/5 10/21 10/22 14/20 18/8 32/25 33/1 34/3
**claimed [1]**   7/9
**claims [45]**
**clarify [1]**   25/18
**class [44]**
**clear [4]**   26/10 26/16 26/24 33/24
**clients [5]**   12/19 22/19 23/14 23/16 23/17
**close [3]**   13/6 21/16 21/18
**closer [3]**   16/24 31/16 34/15
**cognizant [1]**   5/12
**colleague [1]**   2/9
**come [9]**   15/5 15/13 16/1 16/17 16/18 16/20 21/25 25/2 27/3
**comes [2]**   14/18 17/9
**coming [3]**   6/3 25/5 26/1
**commented [1]**   30/13
**common [7]**   11/1 11/2 11/19 11/23 15/6 15/25 23/14
**commonly [1]**   13/23

**C**

company [2]  8/15 23/6
competing [2]  29/19 29/20
compiling [1]  24/19
Complaint [3]  5/15 12/21
 12/25
completely [2]  13/9 25/4
complex [2]  4/8 34/13
complicated [1]  5/17
components [1]  31/5
composite [1]  24/19
comprehensive [1]  20/15
concentrated [2]  8/3 8/5
concern [4]  10/6 10/24 16/12
 32/10
concerned [2]  10/17 14/22
concerns [3]  10/9 27/2 31/21
concerns the [1]  27/2
concluded [1]  34/19
conducted [1]  12/21
conflict [3]  29/22 29/24
 30/19
connection [1]  14/13
consider [4]  8/23 10/15
 11/15 14/18
considerably [1]  21/5
consideration [4]  3/9 9/25
 12/14 32/8
considered [3]  3/13 9/16
 13/13
considering [1]  8/24
consistent [1]  21/13
consolidated [1]  12/24
contact [2]  23/11 23/21
contest [1]  28/23
contested [2]  6/7 6/8
context [2]  11/24 18/6
continue [3]  5/21 30/10
 30/11
continued [1]  9/13
contribute [1]  16/4
conversation [1]  21/6
copies [1]  23/15
copious [2]  9/9 30/4
copy [1]  23/12
core [1]  3/22
corporate [1]  29/18
correct [1]  34/21
corrective [3]  6/19 7/20
 7/21
cost [1]  15/2
could [17]  6/13 8/14 9/19
 12/2 17/2 17/22 19/9 21/6
 21/7 21/9 25/5 25/9 26/18
 29/22 30/3 33/20 33/21
couldn't [1]  9/12
counsel [16]  2/8 2/14 12/19
 14/2 25/1 26/14 29/8 29/13
 29/17 29/23 30/11 30/16
 30/22 31/4 31/10 31/14
couple [1]  19/18
course [4]  10/3 10/21 12/4
 18/14
court [36]
Court's [1]  10/11
Courts [5]  11/4 13/12 20/3
 20/5 21/15

crystal [1]  4/6
current [1]  18/4
custodial [3]  22/16 22/17
 22/23
custodian [1]  22/18
cut [1]  7/13
cutting [1]  13/7
CV [2]  1/3 2/4

**D**

Daily [1]  19/4
damages [21]  5/17 5/19 5/23
 5/25 6/5 6/8 6/12 6/15 6/22
 6/24 7/2 7/14 7/18 8/2 8/3
 8/4 8/5 8/22 16/22 17/6
 17/21
date [11]  7/7 7/14 18/22
 18/23 19/9 27/5 33/12 33/14
 33/20 33/20 34/23
dates [1]  18/19
day [5]  7/23 8/14 9/11 24/4
 32/20
days [5]  6/19 18/21 19/3
 19/6 19/19
de [1]  2/9
deadline [11]  19/13 19/15
 19/19 19/25 20/2 20/19 20/19
 21/13 21/16 33/13 33/15
decision [4]  13/20 20/25
 21/10 30/17
decline [4]  6/17 7/14 7/15
 8/16
decline that [1]  6/17
declines [1]  6/16
defeated [1]  29/20
Defendants [14]  1/11 1/19
 2/17 3/12 4/4 5/5 5/8 5/17
 7/1 7/8 7/18 8/9 13/1 31/1
Defendants would [1]  7/8
Defendants' [1]  8/21
defense [5]  2/14 6/20 29/8
 30/22 31/4
defined [1]  22/5
definitively [1]  6/16
delay [1]  27/20
delays [1]  28/11
department [2]  28/6 28/8
depending [2]  8/4 29/5
deposition [1]  21/6
depositions [1]  30/7
described [2]  26/5 26/6
describing [1]  25/22
description [1]  21/9
designed [1]  17/11
desire [1]  26/15
detail [2]  12/5 21/5
detailed [7]  12/4 12/20 13/4
 14/17 21/9 32/12 33/3
determinations [1]  29/3
determine [2]  18/1 29/24
determined [3]  6/23 28/19
 30/9
did [9]  5/16 7/8 12/11 21/11
 21/15 25/19 30/14 30/19
 31/23
didn't [4]  4/20 4/22 15/2
 33/25
different [1]  3/14

difficult [1]  4/2
disaggregate [1]  6/14
disaggregation [1]  6/22
disclosed [3]  6/18 7/22 8/13
disclosure [5]  6/19 7/20
 7/21 8/4 8/6
disclosures [1]  4/18
discovery [15]  3/8 4/12 4/14
 4/24 5/3 7/8 9/5 9/6 9/8 9/9
 29/24 30/3 30/4 30/6 31/25
discretion [1]  25/15
discussed [1]  30/24
discussions [1]  9/13
Dismiss [4]  4/5 7/5 10/11
 13/2
distribute [8]  15/8 15/24
 16/3 27/15 27/16 28/14 29/2
 29/4
distributed [4]  15/7 27/12
 27/18 33/3
distributing [1]  13/25
distribution [5]  15/9 15/19
 27/2 27/20 29/1
district [8]  1/1 1/1 1/13
 11/4 11/24 13/12 13/19 29/15
districts [3]  11/4 11/25
 12/7
divert [1]  34/13
divide [1]  18/2
divided [1]  14/6
division [2]  1/2 14/7
do [20]  3/4 6/5 6/19 6/21
 14/14 17/17 20/5 20/22 21/23
 22/10 22/11 22/22 24/2 24/18
 25/2 27/17 28/4 28/5 28/11
 31/21
document [2]  9/6 30/6
documents [1]  10/13
does [8]  17/19 22/23 22/25
 25/13 25/16 26/5 27/3 31/19
doesn't [5]  15/24 16/3 17/5
 17/19 26/17
doing [2]  15/22 33/21
dollar [2]  7/24 17/2
don't [17]  5/6 5/9 12/3
 14/14 15/8 17/3 20/14 21/17
 24/11 24/21 25/25 27/22
 28/13 31/7 31/12 31/24 34/3
done [5]  21/14 25/5 30/14
 31/23 33/15
dormancy [2]  12/18 32/1
dormant [1]  10/12
down [3]  4/2 6/25 24/20
dozens [2]  12/22 12/22
drawn [1]  16/10
dried [1]  14/23
during [2]  9/5 23/14
dynamic [1]  3/23

**E**

each [2]  11/7 11/9
earlier [1]  28/9
early [2]  7/4 7/12
earned [1]  15/7
earns [1]  15/12
eat [2]  10/20 16/13
eats [1]  14/21
economically [1]  15/21

**E**

effect **[2]**   6/1 25/14
effected **[1]**   27/14
effective **[2]**   15/2 27/5
effectively **[2]**   4/5 29/22
efficient **[1]**   24/18
effort **[1]**   14/3
either **[9]**   9/13 15/22 19/16
 21/23 23/15 26/17 27/7 28/25
 31/8
Eleventh **[9]**   11/3 11/4 11/20
 11/22 11/25 12/7 13/12 13/24
 21/11
eligible **[3]**   10/5 10/20 33/1
eliminate **[1]**   5/24
else **[1]**   31/9
email **[7]**   21/21 22/2 23/1
 23/19 23/22 24/12 24/13
emailed **[1]**   21/22
emails **[1]**   24/13
emphasize **[1]**   14/14
employees **[1]**   12/23
end **[4]**   4/18 13/22 13/22
 32/20
engaged **[2]**   9/1 9/4
engaging **[1]**   8/24
enough **[6]**   10/22 15/19 16/14
 18/14 23/24 24/5
ensure **[1]**   18/12
enter **[1]**   31/17
entered **[1]**   19/1
enters **[1]**   18/20
entire **[4]**   4/11 6/8 9/17
 17/11
entirely **[1]**   12/21
entities **[3]**   22/1 22/9 23/21
entitled **[1]**   28/20
entity **[1]**   22/22
envisioning **[2]**   26/12 26/13
ESQ **[2]**   1/15 1/19
essentially **[1]**   7/22
established **[1]**   11/2
estimate **[2]**   4/3 4/4
et **[5]**   1/5 1/9 2/3 2/3 25/12
evaluate **[2]**   18/7 20/9
even **[11]**   5/24 6/20 6/25
 7/15 8/9 8/17 16/12 20/12
 26/22 31/3 34/3
event **[2]**   19/15 28/25
events **[1]**   16/20
every **[2]**   6/7 6/7
everybody **[1]**   23/7
everyone **[3]**   16/3 16/23 18/2
everything **[1]**   21/7
evidence **[1]**   7/12
exactly **[4]**   11/7 12/11 17/3
 17/13
example **[1]**   5/5
examples **[1]**   12/2
Excellent **[1]**   2/12
exclude **[1]**   19/16
exclusion **[1]**   33/10
executive **[1]**   29/16
expect **[1]**   16/20
expense **[4]**   15/4 15/5 19/8
 20/18
expenses **[4]**   13/7 19/17 28/3

34/6
experience **[2]**   24/5 28/11
experienced **[2]**   9/2 24/9
expert **[1]**   6/22
explain **[4]**   6/6 11/13 14/1
 29/10
explanation **[1]**   31/6
extensive **[1]**   13/4
extensively **[2]**   10/16 10/16
extent **[1]**   33/6
extremely **[4]**   17/18 28/10
 29/25 32/7

**F**

faced **[2]**   4/13 4/25
fact **[4]**   4/2 4/14 17/19 30/4
facts **[3]**   3/11 7/9 9/12
factually **[1]**   13/3
fair **[3]**   3/1 3/5 11/12
fairly **[1]**   11/20
falls **[1]**   16/12
familiar **[1]**   13/5
far **[5]**   5/2 13/22 18/10
 21/20 24/15
fast **[2]**   16/8 24/11
fastidious **[1]**   30/1
February **[1]**   7/21
Federal **[1]**   34/24
fee **[33]**   10/6 11/12 11/16
 11/18 11/23 11/25 12/5 12/7
 12/12 13/10 13/11 13/13 14/7
 14/9 14/15 14/17 14/18 15/4
 15/4 15/5 16/12 18/7 19/8
 20/18 20/24 21/12 30/13
 31/21 32/10 32/12 32/14
 32/19 34/2
fees **[15]**   10/2 10/3 10/18
 10/19 11/1 14/1 15/11 15/18
 15/20 19/16 27/23 28/3 31/24
 34/6 34/7
felt **[2]**   9/18 20/4
few **[4]**   2/23 6/9 10/25 31/18
figure **[5]**   6/2 6/15 6/24
 10/9 11/8
figures **[1]**   33/3
file **[4]**   20/17 20/20 21/12
 25/3
filed **[4]**   12/20 13/1 21/2
 24/16
filing **[7]**   19/7 19/11 19/12
 22/11 22/24 24/19 26/9
filings **[1]**   24/17
final **[20]**   9/25 12/5 14/19
 16/9 17/1 18/5 19/7 19/21
 19/24 20/7 20/18 20/24 21/16
 25/2 27/4 27/7 30/2 32/3
 32/21 32/22
finalization **[1]**   16/24
finalized **[1]**   10/7
finally **[1]**   27/14
financial **[1]**   4/10
find **[1]**   30/19
fine **[1]**   24/8
finger **[1]**   7/6
firm **[15]**   2/10 2/11 2/17
 4/10 12/22 14/4 14/5 28/5
 28/10 29/16 29/18 29/19 30/4
 30/10 30/10

firms **[1]**   14/9
first **[8]**   2/24 3/22 6/14 7/9
 9/8 11/19 15/9 32/8
five **[3]**   4/1 15/9 15/17
FL **[2]**   1/8 1/24
Floor **[1]**   1/17
FLORIDA **[2]**   1/1 13/19
focus **[1]**   33/25
focused **[2]**   28/7 30/1
folks **[1]**   26/21
follow **[1]**   9/21
following **[1]**   31/17
foot **[1]**   32/19
footnote **[1]**   29/9
foregoing **[1]**   34/21
forever **[1]**   25/24
form **[3]**   14/1 21/2 32/23
former **[2]**   12/23 29/16
forms **[5]**   16/17 16/18 20/1
 20/3 22/20
formula **[3]**   17/8 17/11 17/25
FORT **[2]**   1/2 1/8
forth **[1]**   9/11
forward **[2]**   4/4 32/19
forwarding **[1]**   16/8
Fought **[1]**   11/21
found **[1]**   13/20
Four **[1]**   4/10
frankly **[1]**   20/9
fraud **[2]**   4/3 6/17
frequent **[1]**   22/18
front **[1]**   31/11
Ft **[1]**   1/24
full **[4]**   9/10 10/15 11/16
 14/16
full-blown **[1]**   10/15
fund **[14]**   1/5 2/3 10/4 11/1
 11/2 11/19 11/23 15/6 15/12
 16/2 16/10 17/13 22/17 29/13
fund's **[1]**   22/17
fundamental **[2]**   3/7 3/20
funds **[1]**   22/9
further **[3]**   7/16 9/25 15/1
Furthermore **[1]**   13/15
future **[3]**   3/23 4/1 30/14

**G**

gain **[1]**   7/11
generally **[2]**   11/22 16/13
get **[16]**   2/25 6/5 6/24 11/7
 14/19 16/24 18/4 23/2 23/3
 23/5 23/20 23/25 26/21 27/18
 27/24 29/3
getting **[3]**   16/22 24/10 28/8
give **[9]**   12/2 12/4 18/25
 23/16 23/18 29/22 32/3 33/16
 34/14
given **[5]**   11/14 11/17 31/22
 31/25 32/1
gives **[1]**   24/8
giving **[3]**   32/17 32/18 32/21
go **[2]**   2/24 14/16
goes **[4]**   4/1 4/2 18/4 30/1
going **[15]**   3/8 4/12 4/15
 4/25 8/10 8/11 9/5 16/10
 21/1 23/2 26/12 31/16 33/4
 34/2 34/5
gone **[1]**   28/2

**G**

**good [6]**   2/15 2/18 3/13 9/19 15/14 30/14
**Government [4]**   4/16 4/17 4/21 4/21
**grand [1]**   8/14
**granted [1]**   12/1
**great [1]**   12/5
**greater [2]**   12/8 16/21
**Grossman [2]**   1/16 2/8
**guess [3]**   5/2 10/6 18/9
**Gunster [1]**   2/17

**H**

**had [15]**   4/9 5/11 5/19 7/17 8/1 9/5 9/7 9/8 9/8 9/8 9/10 27/1 29/20 30/14 31/9
**half [1]**   14/8
**HAMILTON [2]**   1/15 2/7
**handle [1]**   21/18
**handles [1]**   22/16
**hangup [1]**   24/9
**happen [2]**   6/13 19/25
**happened [2]**   29/10 29/19
**happening [1]**   20/11
**happens [1]**   27/6
**happy [5]**   5/25 12/4 12/6 21/23 31/10
**hard [1]**   18/25
**has [20]**   10/7 10/9 12/15 14/12 15/6 20/23 21/2 21/14 23/8 25/15 27/5 27/6 27/7 27/7 27/9 27/10 27/11 27/14 27/18 31/2
**have [79]**
**haven't [2]**   34/11 34/12
**having [1]**   26/2
**he [7]**   6/23 9/5 9/13 30/1 30/9 30/14 30/19
**head [1]**   33/22
**hear [5]**   2/13 26/16 26/19 32/10 32/10
**heard [2]**   5/2 25/2
**hearing [14]**   1/12 2/20 7/5 10/1 17/1 18/6 19/21 20/7 21/17 25/2 26/1 31/18 32/22 34/19
**hearing in [1]**   17/1
**heavily [1]**   10/10
**hefty [1]**   10/8
**held [2]**   11/5 13/4
**helpful [2]**   18/3 20/9
**here [4]**   3/4 4/19 16/22 26/22
**high [3]**   11/18 13/8 13/10
**higher [2]**   13/18 17/23
**highest [1]**   6/4
**highly [2]**   6/9 34/3
**him [3]**   9/4 9/10 29/18
**hire [1]**   22/10
**history [1]**   31/22
**hold [3]**   15/9 15/13 21/25
**home [1]**   34/18
**HON [1]**   1/23
**Honor [23]**   2/15 3/3 7/4 7/5 8/25 13/4 14/5 14/12 14/12 14/17 16/1 16/5 16/6 19/9

25/15 25/16 26/7 27/8 29/12 30/25 31/7 32/6 34/1
**Honor's [2]**   9/24 28/17
**HONORABLE [1]**   1/13
**house [1]**   22/10
**how [21]**   5/15 8/4 11/7 11/8 14/20 14/21 16/5 16/9 17/13 18/1 19/12 19/25 20/15 21/14 21/18 23/2 23/20 29/5 30/1 33/9 33/15
**hundred [2]**   15/8 16/22
**hypothetical [1]**   34/9

**I**

**I'll [1]**   6/6
**I'm [1]**   10/17
**identifies [1]**   31/18
**impact [1]**   6/11
**impediment [1]**   26/21
**important [5]**   3/17 12/13 20/22 21/8 31/23
**in-house [1]**   22/10
**INC [1]**   1/9
**included [1]**   12/24
**includes [1]**   26/6
**including [2]**   12/9 13/6
**Incorporated [1]**   2/3
**incurring [1]**   15/20
**indeed [2]**   4/4 23/22
**individual [3]**   5/5 22/7 22/21
**individuals [1]**   22/1
**information [9]**   5/4 6/18 7/22 7/25 23/2 23/21 23/25 33/8 34/15
**initial [2]**   6/22 20/17
**instance [1]**   7/10
**institution [1]**   26/14
**interest [3]**   15/6 15/12 29/22
**interesting [1]**   3/20
**interviewed [1]**   12/23
**investigation [3]**   4/16 4/21 12/21
**investors [2]**   19/4 22/7
**involved [1]**   14/2
**is [160]**
**isn't [1]**   6/20
**issue [7]**   6/7 6/8 10/7 18/7 26/16 30/5 30/8
**issues [3]**   30/1 30/24 31/11
**it [108]**
**it on [1]**   7/19
**it's [3]**   14/4 25/21 34/17
**itemize [1]**   32/23
**its [4]**   3/22 3/25 4/10 22/19
**itself [1]**   14/24

**J**

**JAMS [1]**   9/2
**JND [1]**   23/9
**job [1]**   30/14
**JOHN [2]**   1/15 2/7
**Johnson [1]**   21/10
**joined [1]**   29/16
**Jonathan [1]**   2/16
**JUDGE [6]**   1/13 29/15 29/21 29/25 30/7 30/13

**judgment [2]**   5/21 8/10
**July [2]**   1/9 34/23
**jumped [1]**   30/23
**June [1]**   9/1
**June 2022 [1]**   9/1
**jury [2]**   8/13 8/16
**just [26]**   2/25 5/10 7/12 7/23 11/20 12/16 13/7 14/22 15/3 16/6 17/24 18/18 18/25 20/8 21/18 21/21 22/4 25/1 26/1 26/18 27/13 28/1 28/16 32/13 32/17 33/21

**K**

**Katz [2]**   1/19 2/16
**Kaufman [3]**   2/11 2/11 14/5
**keep [1]**   15/22
**key [1]**   33/12
**kicks [1]**   28/12
**kind [4]**   4/14 4/23 7/5 24/10
**Klauser [1]**   2/11
**Klausner [1]**   14/4
**knew [1]**   5/21
**know [31]**   3/16 8/25 10/6 12/3 14/12 14/20 15/2 15/23 16/17 16/19 16/25 17/3 17/3 19/25 20/12 20/14 21/10 21/16 25/11 28/13 29/9 30/22 31/3 31/17 31/24 33/6 33/9 34/1 34/4 34/11 34/12
**knowing [1]**   20/15

**L**

**language [1]**   25/13
**large [2]**   17/18 22/18
**larger [3]**   12/9 22/8 34/2
**largest [2]**   17/4 23/10
**last [3]**   7/20 25/21 29/7
**late [3]**   15/13 15/16 15/18
**later [6]**   7/14 19/2 19/7 19/18 19/19 19/20
**law [5]**   9/12 11/3 11/3 13/11 29/19
**lawyers [1]**   10/19
**lead [12]**   2/8 12/19 12/19 29/13 29/14 29/20 29/20 29/23 29/23 30/10 30/11 30/17
**leads [1]**   18/9
**least [3]**   11/14 24/18 31/18
**leave [1]**   6/23
**leeway [1]**   18/13
**left [5]**   10/21 14/22 15/22 15/23 16/2
**legally [2]**   11/21 13/3
**lengthen [1]**   33/19
**lengthened [1]**   33/17
**lengthy [1]**   10/14
**less [2]**   32/2 34/6
**let [5]**   2/13 4/24 20/6 30/22 31/14
**let's [2]**   12/16 22/16
**level [2]**   8/12 28/12
**liabilities [1]**   15/12
**liability [5]**   5/18 5/20 6/7 8/20 8/21
**light [7]**   3/11 3/13 9/19 10/23 12/16 18/7 21/5

**L**

like [19]   2/24 5/7 6/10 8/15 10/14 11/13 15/9 15/23 16/4 17/2 17/16 21/19 25/9 25/10 28/9 31/21 31/22 34/2 34/11
likely [2]   8/23 17/6
line [2]   13/9 16/13
Lipton [2]   1/19 2/16
list [6]   23/5 23/8 23/9 23/16 23/18 23/19
litigant [1]   26/18
litigated [3]   10/10 10/16 12/15
litigating [3]   27/25 28/5 29/15
litigation [4]   5/13 21/8 31/23 31/24
Litowitz [3]   1/15 2/8 2/10
little [4]   7/6 15/13 18/11 33/22
LLP [1]   1/16
lodestar [5]   12/13 13/16 13/17 13/20 13/23
lodged [1]   20/11
long [4]   7/4 11/2 26/20 28/13
long-established [1]   11/2
longer [1]   15/2
look [6]   9/17 11/16 14/12 21/19 31/16 32/24
looking [1]   4/4
lose [1]   8/20
loss [2]   6/20 8/10
losses [1]   17/5
lost [1]   8/9
lot [4]   10/13 20/3 21/24 22/5
lots [1]   33/16
loud [1]   26/16
low [2]   13/22 13/22

**M**

made [13]   3/20 4/18 5/18 5/20 5/23 7/1 7/3 7/18 9/14 29/17 29/21 33/25 34/5
magnitude [1]   12/1
mail [4]   18/21 21/21 23/11 23/22
mailed [1]   19/2
mailing [4]   18/22 22/1 23/20 24/3
make [17]   2/5 5/3 5/8 8/11 14/16 15/19 15/21 15/24 16/3 17/12 17/15 17/18 20/24 21/11 26/10 28/25 33/24
makes [2]   18/2 20/14
making [1]   3/12
manner [2]   26/5 26/6
many [10]   11/3 12/6 12/23 12/23 14/20 19/12 19/25 21/18 22/19 33/9
map [1]   18/18
market [3]   3/24 4/1 7/25
material [1]   7/25
math [1]   33/22
Mathews [1]   2/9
matter [1]   34/22

matters [1]   33/11
max [2]   7/14 8/23
maximum [1]   6/24
may [10]   2/12 2/18 6/5 7/4 7/7 10/21 18/3 23/14 32/19 32/19
maybe [2]   24/19 26/14
me [9]   2/9 2/13 13/7 18/9 20/9 29/10 30/22 31/14 32/18
mean [4]   5/6 6/12 17/19 17/19
meaning [2]   9/24 22/12
meaningful [2]   4/25 30/6
meaningfully [2]   5/24 7/2
means [3]   6/15 15/3 27/5
meant [2]   14/25 15/2
mechanism [1]   17/24
mediate [1]   9/1
mediation [6]   3/16 5/13 8/24 9/5 9/6 9/7
mediations [1]   10/14
mediator [3]   3/17 9/2 21/6
mediator's [1]   9/14
medium [1]   19/4
Mellon [2]   22/18 22/19
Melnick [2]   9/1 9/10
member [2]   25/12 26/5
members [7]   19/15 21/24 27/25 28/8 28/9 28/22 32/17
mention [1]   3/16
meritorious [1]   20/10
method [2]   33/2 34/9
might [3]   6/18 24/15 32/12
million [12]   6/2 6/24 7/15 7/16 7/24 8/2 8/13 9/15 9/18 13/6 13/7 14/21
mind [2]   32/13 32/20
minimum [1]   27/15
mission [1]   28/10
misstated [1]   3/24
misstatements [2]   4/8 4/8
moment [4]   11/6 11/13 28/16 28/17
money [13]   15/19 16/2 16/10 16/14 16/23 27/18 27/24 28/8 28/14 29/2 29/4 34/3 34/5
month [2]   33/17 33/19
months [1]   24/7
more [19]   4/9 7/3 12/6 14/17 16/25 18/4 18/6 20/15 21/5 21/7 21/9 21/18 24/9 24/17 24/22 32/14 33/7 33/7 34/15
most [1]   28/7
motion [15]   2/21 4/5 7/5 7/20 10/11 13/2 13/3 14/24 18/11 19/24 21/3 28/25 29/1 29/4 29/21
movant [1]   29/20
move [2]   4/15 24/11
moved [1]   19/9
moving [2]   8/20 8/22
Mr [3]   2/10 9/1 9/10
much [16]   5/15 7/2 7/2 10/20 11/7 11/9 13/18 14/16 14/21 15/20 16/9 16/25 17/13 20/14 24/17 32/6
multiple [1]   24/22
multiplier [2]   12/13 13/16

multipliers [3]   13/17 13/20 13/23
my [8]   2/7 2/9 10/6 14/4 26/8 30/25 32/18 33/22

**N**

naive [1]   5/9
name [1]   2/7
names [1]   21/24
nature [1]   32/18
necessarily [5]   5/10 14/8 17/5 17/19 21/17
necessary [2]   20/4 21/8
need [4]   11/7 18/18 25/2 26/21
negotiated [2]   9/11 9/12
negotiations [1]   31/8
net [1]   16/10
new [4]   1/17 1/20 7/22 7/25
next [2]   19/6 19/15
nice [3]   2/12 2/18 34/17
no [17]   1/3 4/9 4/15 4/16 7/22 11/6 15/1 15/1 19/2 21/4 27/7 29/17 30/9 30/20 30/20 32/14 32/15
nominees [2]   21/25 23/10
normally [1]   15/9
Northern [1]   29/14
not [36]
note [1]   21/15
nothing [3]   13/10 15/22 30/25
notice [25]   2/23 11/14 14/16 18/22 18/22 19/1 19/4 21/20 21/21 23/1 23/11 23/13 24/1 24/13 25/3 25/6 25/10 25/20 25/21 26/6 26/9 26/11 26/14 32/14 32/15
notices [1]   32/24
notwithstanding [1]   25/17
November [1]   19/22
November 13th [1]   19/22
now [2]   12/3 14/15
number [13]   2/4 5/16 5/18 5/23 6/3 7/1 14/2 18/5 20/10 32/18 32/24 32/25 33/1
numbers [2]   18/25 34/10
numerically [1]   6/11
NY [2]   1/17 1/20

**O**

object [7]   11/17 19/16 20/23 25/25 25/25 26/5 32/17
objecting [1]   25/23
objection [5]   20/19 21/12 27/8 27/8 28/12
objectionable [1]   34/4
objections [9]   20/10 20/13 20/21 24/15 24/17 24/19 24/22 27/19 33/10
objector [3]   24/25 26/12 26/13
obviously [3]   5/14 10/7 31/2
occurred [2]   21/8 27/5
occurs [3]   19/6 28/16 28/17
October [2]   19/9 19/17
October 23rd [1]   19/17
October 9th [1]   19/9

| O | P | |
|---|---|---|
| **off [4]**   4/10 18/17 18/24 27/13 | **page [1]**   12/20 | **play [2]**   24/9 27/3 |
| **Official [2]**   1/23 34/24 | **paid [5]**   10/19 11/2 18/8 28/19 34/3 | **please [2]**   2/1 2/5 |
| **often [4]**   12/1 22/8 22/19 28/23 | **Palm [1]**   1/24 | **plus [1]**   15/6 |
| **Oh [1]**   15/3 | **pan [1]**   34/10 | **pocket [1]**   28/2 |
| **okay [14]**   12/17 14/10 18/16 21/20 22/14 23/1 24/8 24/14 24/24 26/25 28/15 30/21 31/12 33/23 | **papers [6]**   2/22 19/20 20/17 20/20 20/24 31/17 | **point [9]**   4/7 10/4 13/6 16/1 21/11 25/8 33/9 33/12 33/24 |
| **once [6]**   15/3 16/24 27/14 28/16 28/17 29/3 | **paperwork [1]**   6/3 | **pointed [1]**   16/6 |
| **one [20]**   3/9 4/2 5/7 7/3 8/5 9/8 9/9 11/1 13/18 18/1 24/9 24/23 25/5 28/5 28/6 28/11 29/7 32/3 33/24 34/1 | **paragraph [3]**   25/10 25/19 25/22 | **points [1]**   30/24 |
| **only [3]**   4/3 26/10 32/11 | **parallel [2]**   4/16 4/16 | **portions [1]**   6/17 |
| **opening [1]**   33/7 | **parse [1]**   6/15 | **posed [1]**   5/11 |
| **opportunity [6]**   11/15 11/17 26/2 28/23 32/11 32/17 | **part [3]**   5/4 6/21 24/13 | **possess [1]**   4/6 |
| **opposed [1]**   13/2 | **particular [1]**   32/16 | **possible [8]**   6/4 6/12 7/17 9/18 10/23 17/4 27/25 28/9 |
| **opt [5]**   20/10 20/19 20/21 20/23 21/12 | **particularly [1]**   21/5 | **pot [2]**   13/7 16/14 |
| **oral [1]**   13/4 | **parting [1]**   31/15 | **potential [6]**   6/1 16/11 20/10 20/13 21/24 27/13 |
| **order [12]**   2/22 10/11 18/21 19/1 23/12 25/7 25/13 25/15 25/17 27/2 31/17 32/5 | **party [2]**   22/15 22/24 | **potentially [7]**   5/4 5/24 6/11 10/18 14/20 23/7 24/21 |
| **ordered [1]**   30/3 | **passed [1]**   27/10 | **practice [1]**   13/11 |
| **orders [4]**   25/9 25/11 26/4 26/8 | **passing [1]**   32/15 | **prayer [1]**   5/14 |
| **organized [1]**   24/22 | **Pauline [2]**   1/23 34/24 | **predict [2]**   10/4 11/6 |
| **original [2]**   5/14 28/17 | **pay [8]**   10/3 15/10 15/14 15/16 16/15 16/23 17/16 28/9 | **prediction [1]**   34/14 |
| **Osborne [1]**   2/16 | **paying [1]**   15/18 | **predictions [1]**   3/23 |
| **other [6]**   6/18 11/4 12/10 31/13 33/8 33/24 | **payment [6]**   10/5 10/18 10/18 28/1 28/2 28/3 | **prediscovery [3]**   9/3 9/4 10/12 |
| **otherwise [4]**   25/10 25/11 26/4 26/8 | **pending [1]**   10/11 | **prefer [1]**   29/5 |
| **our [32]**   3/9 4/18 6/19 6/20 6/21 6/22 6/25 8/8 8/20 9/6 9/7 9/22 11/16 12/5 12/13 12/19 12/22 13/16 19/7 19/8 19/19 20/17 20/18 20/23 20/24 24/5 28/10 29/16 29/18 30/4 30/10 30/10 | **pennies [1]**   17/2 | **prefers [1]**   23/23 |
| | **pension [4]**   22/5 22/12 22/17 22/17 | **preliminary [16]**   1/12 3/5 9/24 14/13 18/4 18/21 19/1 19/20 21/3 23/5 23/12 25/7 25/12 25/15 25/17 30/2 |
| | **people [7]**   17/4 18/13 19/12 22/10 23/21 33/9 33/16 | **premature [1]**   20/8 |
| | **percent [11]**   8/5 11/12 11/19 11/22 12/8 12/12 13/9 15/8 15/10 15/17 16/22 | **prepare [1]**   32/4 |
| **out [20]**   10/3 11/2 11/8 11/21 12/22 14/16 15/5 17/25 18/19 20/19 20/23 21/12 23/11 24/1 27/24 28/2 28/8 32/24 34/3 34/10 | **percentage [1]**   16/13 | **preparing [1]**   9/7 |
| | **percentage-wise [1]**   16/13 | **prerequisite [1]**   26/23 |
| | **perhaps [1]**   32/2 | **present [5]**   3/4 5/6 5/10 32/4 32/12 |
| **out-of-pocket [1]**   28/2 | **period [15]**   4/11 4/19 6/8 7/4 7/7 7/10 7/12 7/13 7/15 7/16 10/10 12/17 17/12 23/15 30/15 | **presented [1]**   3/8 |
| **outcome [1]**   6/9 | | **presenting [1]**   5/11 |
| **outcomes [5]**   3/11 3/14 6/13 8/19 9/18 | **PERMANENT [2]**   1/5 2/3 | **press [2]**   5/21 7/8 |
| **outs [2]**   20/10 20/21 | **permission [2]**   15/15 29/2 | **presumptuous [2]**   18/18 18/25 |
| **Outside [1]**   12/18 | **permitted [1]**   27/15 | **pretty [2]**   5/3 10/19 |
| **over [7]**   2/25 7/11 10/21 14/22 27/11 30/22 31/14 | **person [3]**   9/11 22/21 25/1 | **prevail [1]**   9/20 |
| **overall [2]**   2/25 18/10 | **persons [1]**   2/5 | **preview [1]**   7/19 |
| **overcome [1]**   5/20 | **perspective [4]**   3/1 3/7 30/25 31/4 | **price [3]**   6/16 6/17 8/15 |
| **overly [1]**   7/7 | **petition [2]**   27/10 32/12 | **prior [3]**   18/5 20/15 32/22 |
| **overruled [1]**   27/8 | **phon [1]**   11/21 | **pro [7]**   11/9 17/12 17/14 24/25 26/12 26/17 30/9 |
| **oversee [1]**   28/6 | **phrase [1]**   25/9 | **probably [1]**   24/7 |
| **overseeing [1]**   28/7 | **picture [6]**   3/6 3/19 4/7 4/14 4/23 31/19 | **problem [1]**   28/14 |
| **own [2]**   6/25 12/22 | **piece [4]**   3/9 3/10 3/17 12/10 | **problems [1]**   34/1 |
| | **PIERCE [3]**   1/2 1/8 1/24 | **procedural [1]**   31/22 |
| | **Pinto [1]**   13/19 | **procedures [1]**   25/22 |
| | **place [1]**   12/11 | **proceed [1]**   20/6 |
| | **Plaintiff [6]**   2/6 29/14 29/20 29/23 30/11 30/18 | **proceeding [2]**   20/7 26/9 |
| | **Plaintiffs [7]**   1/7 1/15 2/9 2/25 12/20 29/21 31/9 | **proceedings [1]**   34/22 |
| | **Plaintiffs' [4]**   2/20 14/2 31/10 31/14 | **process [13]**   3/16 5/13 8/24 9/5 11/3 15/22 16/5 16/7 19/6 20/6 20/16 23/4 30/3 |
| | **plan [3]**   17/17 17/24 22/12 | **processed [1]**   28/18 |
| | **plans [1]**   22/5 | **promise [1]**   28/4 |
| | | **propose [1]**   21/13 |
| | | **proposed [10]**   2/22 2/23 3/12 17/12 18/10 23/9 23/25 30/17 31/3 33/2 |
| | | **proud [2]**   3/4 29/18 |
| | | **prove [5]**   4/2 9/20 17/7 17/21 17/24 |

**P**

**provide [1]**   21/4
**provision [4]**   21/21 25/24 26/7 26/11
**provisions [1]**   31/17
**publish [1]**   19/3
**put [7]**   5/16 7/6 12/10 32/15 32/18 33/20 33/21
**PWC [1]**   4/10

**Q**

**qualified [1]**   26/9
**qualifying [1]**   25/13
**question [4]**   18/9 27/1 28/17 29/7
**questions [4]**   2/24 31/1 31/8 31/13
**quick [1]**   33/22
**quickly [2]**   27/25 28/8
**quid [1]**   30/9
**quite [2]**   6/6 7/19
**quo [1]**   30/9

**R**

**raise [1]**   30/24
**range [5]**   8/20 8/23 13/18 13/18 13/20
**ranging [1]**   8/19
**rata [3]**   11/9 17/12 17/14
**rationale [1]**   9/22
**reach [1]**   9/13
**reached [2]**   10/15 12/22
**reaction [1]**   11/16
**real [1]**   3/9
**realistically [7]**   9/18 10/20 14/22 16/10 21/1 22/4 23/24
**reality [1]**   34/13
**really [10]**   3/13 3/23 9/9 12/20 13/1 13/3 20/9 27/19 32/9 32/12
**reason [3]**   15/10 15/14 26/11
**reasonable [6]**   3/2 3/5 11/12 18/8 31/20 32/16
**reasons [3]**   3/6 6/9 6/10
**recall [2]**   7/5 8/25
**receive [6]**   11/8 17/12 20/14 23/13 24/22 29/5
**receiving [1]**   24/16
**recess [2]**   32/4 34/18
**recipient [1]**   24/21
**recognized [2]**   5/9 11/23
**recommendation [2]**   9/14 9/17
**record [3]**   23/6 27/16 34/22
**recover [1]**   28/20
**recoverable [1]**   6/11
**redistribution [1]**   15/21
**redistributions [2]**   15/1 15/1
**reduced [2]**   7/2 8/2
**reference [3]**   14/24 14/25 16/6
**referred [1]**   29/10
**reflect [1]**   17/6
**regular [2]**   25/1 26/21
**rejected [1]**   28/22
**relation [1]**   17/14
**relatively [2]**   10/12 31/25

**relief [1]**   5/15
**remainder [1]**   15/6
**removed [1]**   7/21
**renew [2]**   8/10 8/17
**reply [13]**   8/9 19/20 19/24 20/20 20/21 32/23 33/5 33/8 33/8 33/11 33/12 33/14 33/20
**Reporter [2]**   1/23 34/24
**represent [1]**   29/13
**representatives [1]**   30/18
**represented [2]**   25/1 26/13
**request [8]**   11/12 11/14 13/10 13/11 16/12 23/15 28/23 32/16
**request under [1]**   13/11
**requested [2]**   30/13 33/10
**require [2]**   31/5 31/23
**required [2]**   6/14 8/25
**requirement [1]**   26/9
**requires [1]**   10/7
**requiring [1]**   4/5
**researched [2]**   12/20 13/2
**reserve [1]**   15/17
**residual [2]**   7/11 7/24
**resolution [1]**   3/13
**resolved [3]**   27/9 27/21 30/12
**respectfully [2]**   9/22 11/11
**responded [1]**   32/25
**responses [3]**   5/8 8/7 8/8
**restatement [1]**   4/9
**result [4]**   3/13 9/19 12/12 13/15
**retains [1]**   26/18
**revealed [1]**   5/4
**review [2]**   18/15 28/23
**reviewed [1]**   2/22
**reviewing [1]**   30/8
**right [13]**   2/20 10/20 12/3 14/15 15/8 17/9 17/10 24/12 25/25 26/20 30/21 31/12 34/17
**rigorous [1]**   31/3
**rise [1]**   29/22
**risk [3]**   5/9 5/11 8/16
**risks [2]**   7/17 21/9
**RIZIO [2]**   1/15 2/7
**RIZIO-HAMILTON [2]**   1/15 2/7
**ROBIN [1]**   1/23
**role [1]**   3/17
**Rosen [2]**   1/19 2/16
**ROSENBERG [1]**   1/23
**rough [1]**   33/1
**roughly [1]**   8/5
**rule [3]**   9/24 27/13 31/5
**run [4]**   18/12 31/2 34/8 34/9
**RYDER [9]**   1/9 2/3 3/24 4/9 4/18 8/15 12/23 15/25 23/14

**S**

**Safe [1]**   34/18
**said [12]**   7/6 7/20 7/23 10/17 11/11 14/25 25/6 28/9 29/22 31/21 31/23 32/22
**sat [1]**   30/7
**satisfy [1]**   10/22
**saw [6]**   3/11 6/2 7/19 8/8 8/19 14/24

**say [17]**   7/14 10/9 10/25 12/6 12/16 16/1 17/13 21/11 21/17 21/18 22/16 25/11 25/19 26/17 26/18 29/25 30/14
**says [4]**   11/22 23/13 26/4 28/15
**schedule [2]**   18/17 21/13
**scheme [1]**   8/14
**se [3]**   24/25 26/12 26/17
**seated [2]**   2/13 2/19
**SEB [5]**   29/14 29/16 30/4 30/10 30/11
**SEC [1]**   4/17
**second [3]**   3/10 9/7 9/9
**Secondly [1]**   32/10
**secret [1]**   29/17
**section [1]**   25/22
**securities [6]**   4/20 9/2 10/16 11/24 13/13 13/23
**security [1]**   12/8
**see [6]**   2/12 2/18 20/23 33/4 34/10 34/18
**seeking [1]**   30/16
**seems [4]**   18/11 20/8 20/8 24/17
**seen [1]**   20/5
**sell [1]**   3/25
**send [5]**   23/15 23/17 23/22 23/22 23/25
**sense [7]**   15/24 16/3 16/9 16/16 16/19 19/12 20/14
**sent [1]**   32/24
**separate [2]**   6/15 24/17
**September [1]**   19/5
**September 5th [1]**   19/5
**sequence [1]**   27/3
**seriously [2]**   27/20 28/10
**service [2]**   22/11 22/24
**session [1]**   9/13
**sessions [1]**   9/10
**set [1]**   24/20
**settled [1]**   9/15
**settlement [30]**   1/12 2/21 2/23 3/1 3/4 9/23 11/9 11/17 15/3 16/21 17/13 18/2 19/17 20/16 25/12 26/4 27/6 27/12 27/14 27/17 28/6 28/7 28/21 30/12 31/4 31/8 31/19 33/25 34/5 34/5
**settlements [2]**   12/8 27/20
**seven [1]**   19/19
**several [2]**   3/6 12/2
**share [4]**   11/9 14/9 17/13 17/14
**shareholder [2]**   17/20 17/22
**shareholders [4]**   15/25 17/11 17/17 23/5
**sharply [1]**   34/13
**shed [1]**   10/23
**should [9]**   7/21 11/14 24/13 26/23 26/24 28/19 30/10 30/11 30/16
**shrink [1]**   5/24
**sides [1]**   30/8
**signed [1]**   4/10
**significant [2]**   5/17 7/11
**significantly [1]**   16/13

**S**

**similar [1]**  21/2
**simply [1]**  26/21
**single [2]**  6/7 6/7
**sister [1]**  11/24
**situation [1]**  4/17
**six [1]**  24/7
**sixth [2]**  33/17 33/19
**size [3]**  8/15 12/9 18/1
**small [4]**  7/23 8/14 15/23
 16/2
**smaller [1]**  12/9
**so [57]**
**sold [1]**  7/10
**solution [1]**  28/13
**some [15]**  3/19 4/20 7/9 8/8
 8/12 8/16 8/21 9/8 10/8
 16/17 18/12 31/16 31/21 33/6
 34/12
**someone [1]**  26/13
**something [5]**  16/23 20/12
 25/14 26/24 27/17
**sometime [1]**  22/23
**sometimes [16]**  15/13 20/5
 21/15 22/1 22/2 22/2 22/9
 22/10 22/16 22/22 22/24
 23/20 24/10 27/19 28/24
 34/13
**somewhere [1]**  6/3
**sorry [1]**  10/18
**sorts [1]**  33/3
**SOUTHERN [2]**  1/1 13/19
**speak [3]**  25/16 26/2 26/15
**speaking [1]**  11/21
**specific [2]**  12/6 13/1
**specifics [1]**  21/7
**spectrum [5]**  3/10 3/14 6/12
 8/19 9/17
**split [1]**  14/8
**stage [3]**  14/20 16/9 29/21
**start [1]**  7/7
**started [1]**  7/4
**starting [2]**  2/5 7/13
**STATE [2]**  1/5 2/2
**statements [1]**  4/11
**STATES [2]**  1/1 1/13
**step [1]**  19/6
**stepping [1]**  3/19
**STEVEN [2]**  1/19 2/15
**sticking [1]**  25/7
**Stipes [2]**  1/23 34/24
**stock [5]**  6/16 6/17 8/15
 21/25 23/14
**Street [1]**  1/20
**strikes [1]**  13/7
**strong [1]**  9/23
**Stuart [1]**  2/11
**subject [2]**  9/25 15/15
**submission [11]**  9/8 11/16
 12/5 14/17 20/6 21/16 24/23
 32/19 33/7 33/20 34/16
**submissions [4]**  9/6 19/7
 30/8 30/9
**submit [7]**  9/23 11/11 18/13
 22/8 22/9 24/1 33/16
**submits [2]**  16/23 22/19
**submitted [2]**  18/5 21/19

**submitting [4]**  20/1 20/2
 22/6 33/13
**substance [1]**  20/12
**substantial [1]**  10/10
**substantially [2]**  17/23 28/2
**successful [3]**  8/1 8/17 8/22
**successfully [1]**  30/12
**such [4]**  11/1 11/14 15/1
 29/24
**suffice [1]**  12/5
**suggesting [2]**  14/13 26/3
**sum [2]**  10/8 13/25
**summarize [1]**  5/25
**summary [5]**  5/21 8/10 18/5
 19/3 32/22
**supportive [1]**  7/9
**suppose [1]**  25/17
**Supreme [2]**  11/3 27/10
**sure [1]**  16/18
**surely [2]**  7/8 9/21
**Symantec [2]**  29/10 29/12
**SYSTEM [2]**  1/9 2/3

**T**

**table [1]**  27/14
**tail [2]**  4/20 4/21
**take [6]**  4/19 11/13 19/5
 19/21 28/10 31/16
**taken [3]**  5/19 6/24 27/11
**takes [1]**  20/3
**taking [1]**  17/25
**talking [5]**  13/6 14/21 22/5
 26/1 26/7
**tax [1]**  15/11
**tell [1]**  17/16
**ten [3]**  15/9 15/17 19/3
**tend [1]**  13/20
**terms [6]**  12/12 13/25 16/8
 23/1 32/21 34/14
**than [8]**  4/9 13/18 16/21
 17/23 19/2 32/2 32/14 34/2
**thank [5]**  2/1 3/3 32/6 32/8
 34/17
**that [260]**
**their [7]**  7/23 18/13 22/16
 22/20 22/23 26/15 29/19
**them [20]**  4/5 5/11 11/8 12/4
 12/23 17/18 18/1 20/21 22/8
 22/9 22/11 22/12 22/16 23/11
 23/11 23/15 23/17 24/11
 24/23 28/19
**themselves [5]**  19/16 22/8
 22/9 22/22 22/23
**then [35]**
**theoretical [1]**  6/5
**theory [1]**  34/13
**there [63]**
**Thereupon [1]**  34/19
**these [8]**  13/17 14/12 22/20
 23/21 24/10 24/17 24/21
 34/12
**they [43]**
**thing [3]**  25/5 32/11 33/8
**things [7]**  5/2 8/15 10/25
 14/12 27/3 28/5 28/7
**think [29]**  3/1 3/6 6/2 6/5
 11/18 11/19 13/18 14/24
 20/22 21/4 21/20 24/7 24/13

 25/4 25/6 25/7 25/14 25/18
 26/6 26/22 27/2 30/15 31/7
 31/10 31/12 31/19 32/22 33/2
 34/15
**thinking [1]**  20/20
**third [3]**  4/14 22/15 22/24
**third-party [1]**  22/24
**this [44]**
**those [21]**  3/15 4/23 5/10
 5/25 6/17 7/17 8/8 10/3
 10/22 12/24 14/8 15/14 18/12
 24/1 24/2 24/19 24/20 30/9
 31/10 33/3 33/11
**though [2]**  16/12 17/16
**thought [1]**  8/16
**thoughts [1]**  31/15
**threatening [1]**  7/19
**three [3]**  12/15 12/16 30/15
**through [8]**  3/15 5/1 5/21
 6/10 8/20 18/4 18/12 31/2
**throughout [3]**  4/11 5/1 5/12
**tied [1]**  6/16
**tight [1]**  18/11
**time [19]**  10/10 11/6 12/3
 14/17 14/19 17/1 18/12 18/14
 18/20 20/3 21/16 21/18 23/24
 24/5 27/10 28/11 28/13 33/7
 33/16
**timeline [1]**  24/4
**times [1]**  28/24
**timetable [1]**  23/25
**timing [1]**  18/10
**today [9]**  2/9 3/4 3/15 18/17
 18/24 19/1 31/11 32/8 32/11
**too [5]**  7/4 7/4 7/12 11/18
 21/22
**took [1]**  9/17
**totally [1]**  24/8
**trading [1]**  34/14
**traditional [1]**  13/10
**transcript [1]**  34/21
**travels [1]**  34/18
**trial [7]**  5/1 5/22 8/11 9/20
 17/7 17/21 17/24
**trucks [2]**  3/25 7/10
**true [3]**  11/1 12/18 17/6
**truncated [1]**  31/25
**try [1]**  34/9
**turn [4]**  2/24 29/7 30/22
 31/14
**turns [1]**  24/1
**two [4]**  4/7 9/10 14/6 14/8
**typical [2]**  11/20 13/18
**typically [6]**  13/17 20/3
 21/14 23/4 23/18 33/15

**U**

**U.S [1]**  21/21
**ultimately [2]**  14/1 31/25
**unclear [1]**  14/25
**under [2]**  13/11 13/11
**understand [4]**  10/2 10/19
 12/17 25/4
**undertook [1]**  6/22
**unfolds [1]**  20/16
**unfortunate [1]**  27/19
**uniquely [1]**  13/10
**UNITED [2]**  1/1 1/13

**U**

**universe [2]**   15/24 34/9
**unless [6]**   2/13 25/9 25/11
  26/4 26/8 31/1
**unlikely [3]**   6/6 6/9 26/22
**unopposed [1]**   2/21
**unreasonable [1]**   15/21
**until [6]**   15/22 16/18 20/5
  27/12 27/21 28/14
**unusual [1]**   10/3
**up [6]**   4/2 8/20 13/21 14/23
  18/2 19/9
**upon [2]**   9/20 12/22
**us [14]**   5/11 5/19 6/23 7/17
  8/25 9/14 16/3 18/25 19/5
  19/21 23/15 23/16 23/18
  32/14
**use [1]**   12/3
**used [3]**   3/25 4/1 7/10
**useful [1]**   5/25
**using [1]**   33/2

**V**

**valid [3]**   16/23 28/19 28/20
**value [1]**   3/23
**values [2]**   7/11 7/24
**vehicle [1]**   4/1
**versus [1]**   2/3
**very [11]**   3/3 3/20 3/21 9/2
  9/19 10/8 10/8 13/8 21/1
  29/18 34/12
**via [1]**   30/12
**victorious [1]**   5/22
**view [2]**   2/25 26/8
**vigorously [1]**   9/12

**W**

**Wachtell [2]**   1/19 2/16
**wait [3]**   20/5 27/21 27/22
**waiving [1]**   25/25
**walk [2]**   3/15 6/10
**want [14]**   12/10 14/14 15/13
  18/12 21/15 24/11 24/16
  24/21 25/1 26/14 27/24 29/23
  33/15 33/24
**wanted [1]**   21/11
**wants [2]**   20/23 26/19
**warrants [3]**   3/5 9/24 31/24
**was [42]**
**wasn't [1]**   7/25
**way [13]**   3/16 4/24 4/25 5/1
  7/12 10/4 11/6 13/22 20/22
  21/23 23/4 27/15 32/15
**we [166]**
**weak [2]**   5/3 5/7
**week [1]**   19/20
**weeks [1]**   19/18
**weigh [1]**   7/17
**weighing [1]**   18/1
**welcome [1]**   30/23
**well [14]**   2/10 2/19 3/17
  4/17 5/17 9/19 10/25 13/2
  20/2 20/17 21/7 31/23 33/11
  34/17
**well-researched [1]**   13/2
**were [31]**   3/7 3/8 3/12 3/19
  4/5 4/25 5/17 5/22 6/6 6/16

  7/13 7/17 8/3 8/5 8/10 8/11
  8/17 8/23 8/24 10/13 10/13
  12/24 15/1 19/1 27/17 28/22
  29/13 29/15 29/17 30/6 32/24
**weren't [1]**   5/9
**West [2]**   1/20 1/24
**what [28]**   6/1 6/12 8/22 9/19
  10/15 12/11 12/11 14/22
  14/25 15/2 17/16 17/17 17/20
  17/23 18/7 18/22 20/5 21/2
  21/19 22/11 24/10 24/16
  24/25 26/3 29/10 32/14 33/10
  34/10
**whatever [3]**   10/21 13/25
  16/11
**when [8]**   3/13 9/7 9/16 14/17
  23/13 28/3 29/17 29/19
**when that [1]**   29/17
**whenever [1]**   30/15
**where [13]**   4/15 4/17 6/3
  8/20 8/21 12/22 17/8 25/5
  27/3 27/6 29/1 32/23 33/4
**whether [3]**   9/16 29/24 32/15
**which [17]**   3/17 3/25 10/19
  11/22 18/9 22/18 24/10 25/7
  25/16 25/19 26/22 27/5 28/19
  28/20 31/22 31/25 34/3
**whichever [1]**   23/23
**while [2]**   10/13 20/11
**who [16]**   9/2 15/25 16/23
  18/2 20/23 22/5 22/10 23/7
  23/14 24/25 26/5 29/13 29/20
  29/25 32/25 33/1
**whoever [1]**   26/19
**whole [1]**   30/2
**whose [1]**   28/22
**why [10]**   3/1 5/3 6/6 9/22
  11/13 19/23 19/24 21/8 25/2
  28/3
**will [22]**   3/15 3/16 8/25
  10/20 14/20 16/9 16/16 16/17
  16/19 16/21 16/22 18/8 21/4
  23/17 28/18 29/7 32/3 32/4
  32/6 32/16 33/3 33/7
**win [2]**   6/6 8/21
**wind [2]**   4/20 4/21
**winners [1]**   5/10
**WINTER [2]**   1/19 2/15
**wire [1]**   29/5
**wise [1]**   16/13
**wish [2]**   24/2 26/22
**within [7]**   9/23 11/4 11/23
  11/25 12/7 13/13 13/24
**without [3]**   15/19 28/1 28/1
**won't [1]**   16/17
**word [1]**   34/4
**words [1]**   7/23
**work [3]**   12/11 18/25 24/18
**works [3]**   16/5 18/17 23/4
**world [1]**   27/6
**would [59]**
**wouldn't [4]**   4/24 16/14
  19/23 19/24

**Y**

**year [2]**   7/9 32/2
**years [5]**   4/1 12/15 12/16
  28/1 30/15

**yes [12]**   10/9 14/4 14/7
  19/13 22/13 24/4 25/4 25/21
  26/3 29/12 33/21 33/22
**yet [1]**   10/7
**York [2]**   1/17 1/20
**you [84]**
**your [38]**
**yourselves [1]**   23/16

**Z**

**zero [2]**   5/19 8/19