# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 1:20-cv-22109-CANNON

| |
|---|
| STATE OF ALASKA, ALASKA PERMANENT FUND, THE CITY OF FORT LAUDERDALE GENERAL EMPLOYEES' RETIREMENT SYSTEM, AND THE CITY OF PLANTATION POLICE OFFICERS PENSION FUND, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, |
|      *Plaintiffs*, |
| V. |
| RYDER SYSTEM, INC., ROBERT E. SANCHEZ, ART A. GARCIA, AND DENNIS C. COOKE, |
|      *Defendants.* |

## LEAD PLAINTIFFS' RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND AUTHORIZATION TO DISSEMINATE NOTICE OF SETTLEMENT, AND INCORPORATED MEMORANDUM OF LAW

# **TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ................................................................ 4

II.   NATURE OF THE ACTION AND PROCEDURAL HISTORY..................................... 6

III.  THE PROPOSED SETTLEMENT .......................................................... 7

IV.  THE PROPOSED SETTLEMENT MERITS PRELIMINARY
     APPROVAL .................................................................................. 7

    A.    Standards Governing Approval of Class Action Settlements ................................ 7

    B.    The Court "Will Likely Be Able to" Approve the Proposed
        Settlement Under Rule 23(e)(2) ........................................................ 9

        1.    "Procedural" Aspects of the Settlement Satisfy Rule
            23(e)(2) ........................................................................... 9

        2.    The Settlement's Terms Are Adequate and Equitable........................... 11

            a)    The Settlement Provides Substantial Relief, Especially in Light of
                the Costs, Risks, and Delay of Further Litigation ......................... 11

            b)    The Settlement Treats All Settlement Class Members Fairly ........ 14

            c)    The Settlement Does Not Excessively Compensate Plaintiffs'
                Counsel .................................................................... 15

            d)    Lead Plaintiffs Have Identified All Agreements Made in
                Connection with the Settlement ...................................... 16

V.   THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23 ................................ 17

    A.    The Settlement Class Satisfies the Requirements of Rule 23(a)........................... 18

        1.    The Settlement Class is So Numerous that Joinder Is
            Impracticable.................................................................. 18

        2.    There Are Common Questions of Law and Fact ..................................... 18

        3.    Lead Plaintiffs' Claims Are Typical of Those of the
            Settlement Class................................................................. 18

        4.    Lead Plaintiffs Will Fairly and Adequately Protect the
            Interests of the Settlement Class ............................................ 19

    B.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3)..................... 20

        1.    Common Legal and Factual Questions Predominate............................... 21

-i-

      2.      A Class Action Is Superior to Other Methods of Adjudication................................................................................................. 21

VI.    THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS ..................................................................................... 22

VII.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS ............................................. 23

VIII.  CONCLUSION................................................................................................................ 24

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*AAL High Yield Bond Fund v. Ruttenberg*,
    229 F.R.D. 676 (N.D. Ala. 2005) ............................................................................18

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................., 17, 21, 22

*In re Amerifirst Sec. Litig.*,
    139 F.R.D. 423 (S.D. Fla. 1991) .............................................................................19

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013) ................................................................................................19

*Aranaz v. Catalyst Pharm. Partners Inc.*,
    2014 WL 11870214 (S.D. Fla. Dec. 3, 2014) .........................................................23

*In re BellSouth Corp. Sec. Litig.*,
    2006 WL 870362 (N.D. Ga. April 3, 2006) ............................................................22

*Bennett v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984) ..................................................................................9

*Borcea v. Carnival Corp.*,
    238 F.R.D. 664 (S.D. Fla. 2006) ......................................................................10, 17

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
    2008 WL 11336122 (N.D. Ga. Oct. 20, 2008) .......................................................12

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
    Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007)....................................................................................18

*In re Checking Account Overdraft Litig.*,
    275 F.R.D 654 (S.D. Fla. 2011) ..............................................................................17

*In re Checking Account Overdraft Litig.*,
    830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...................................................................11

*In re Drexel Burnham Lambert Grp., Inc.*,
    960 F.2d 285 (2d Cir. 1992).....................................................................................19

*Faught v. Am. Home Shield Corp.*,
661 F.3d 1040 (11th Cir. 2011) ................................................................9

*Faught v. Am. Home Shield Corp.*,
668 F.3d 1233 (11th Cir. 2011) ..............................................................16

*Fresco v. Auto Data Direct, Inc.*,
2007 WL 2330895 (S.D. Fla. May 14, 2007) ...........................................8

*Gutter v. E.I. Dupont De Nemours & Co.*,
2003 U.S. Dist. LEXIS 27238 (S.D. Fla. May 30, 2003) ........................11

*Hefler v. Wells Fargo & Co.*,
2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .........................................17

*Hicks v. Client Servs., Inc.*,
2008 WL 5479111 (S.D. Fla. Dec. 11, 2008) .........................................18

*Holman v. Student Loan Xpress, Inc.*,
2009 WL 4015573 (M.D. Fla. Nov. 19, 2009) ........................................10

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .........................................21

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
315 F.R.D. 226 (E.D. Mich. 2016), *aff'd*, 2017 WL 6398014 (6th Cir. Nov.
27, 2017) ..................................................................................................17

*Perez v. Asurion Corp.*,
501 F. Supp. 2d 1360 (S.D. Fla. 2007) ...................................................10

*In re Rayonier Inc. Sec. Litig.*,
2017 WL 4542852, at *2-3 (M.D. Fla. Oct. 5, 2017) )............................16

*Roach v. T.L. Cannon Corp.*,
778 F.3d 401 (2d Cir. 2015)....................................................................21

*SEB Inv. Mgmt. v. Symantec Corp.*,
2021 WL 1540996 (N.D. Cal. Apr. 20, 2021) ........................................20

*Shapiro v. JPMorgan Chase & Co.*,
2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ........................................19

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) .........................................15

*Strube v. Am. Equity Inv. Life Ins. Co.*,
226 F.R.D. 688 (M.D. Fla. 2005)............................................................11

*In re Theragenics Corp. Sec. Litig.*,
   205 F.R.D. 687 (N.D. Ga. 2002)........................................21

*Thorpe v. Walter Inv. Mgmt. Corp*,
   2016 WL 10518902 (S.D. Fla. Oct. 17, 2016).........................14

*In re U.S. Oil & Gas Litig.*,
   967 F.2d 489 (11th Cir. 1992) ......................................8

*In re Veeco Instruments Inc. Sec. Litig.*,
   2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)............................10

*In re Veeco Instruments, Inc. Sec. Litig.*,
   235 F.R.D. 220 (S.D.N.Y. 2006) ....................................19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005).........................................23

*Williams v. Bluestem Brands, Inc.*,
   2019 WL 1450090 (M.D. Fla. Apr. 2, 2019) ..........................8

*Williams v. Reckitt Benckiser LLC*,
   65 F.4th 1243 (11th Cir. 2023) ....................................14

**STATUTES & RULES**

Class Action Fairness Act, 28 U.S.C. § 1715 *et seq.* ...............4, 23

Fed. R. Civ. P. 23 ............................................... passim

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(a)(7) .....23

Securities Exchange Act of 1934
   § 10(b)...........................................................6
   § 20(a) ..........................................................6

**OTHER AUTHORITIES**

MANUAL FOR COMPLEX LITIGATION (4TH ED. 2004) § 10.221 ................20

Court-appointed Lead Plaintiffs State of Alaska, Alaska Permanent Fund; The City of Fort Lauderdale General Employees' Retirement System; and The City of Plantation Police Officers Pension Fund (collectively, "Lead Plaintiffs"), on behalf of themselves and the other members of the Settlement Class, respectfully submit this renewed unopposed motion, pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure, for entry of the Parties' agreed-upon [Proposed] Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement (the "Preliminary Approval Order"), which is attached hereto as Exhibit 2.[1]

Pursuant to the Court's Order dated August 10, 2023 (ECF No. 116) (the "August 10 Order"), the Parties have modified the proposed Preliminary Approval Order, the proposed Notice, and the proposed Summary Notice per the Court's instructions. Lead Plaintiffs are refiling the amended versions of the Preliminary Approval Order, Notice, and Summary Notice as Exhibits A, A-1, and A-3, respectively, to the Stipulation being filed as Exhibit 1 to this renewed motion. A standalone version of the modified Preliminary Approval Order, including the amended Notice and Summary Notice attached thereto as Exhibits 1 and 3, respectively, is also being refiled as Exhibit 2 to this motion. Other than updates to blank dates in the proposed Claim Form and Judgment to reflect that certain of the Settlement-related dates will now occur in 2024, rather than in 2023, the August 10 Order did not require any modifications to the other settlement documents being refiled with the Court. Also, for the Court's convenience, redlined versions of the Preliminary Approval Order, Notice, and Summary Notice, comparing the current versions of these documents with the prior versions filed with the Court on May 19, 2023 (ECF No. 111-2), are attached to this motion as Exhibits 3, 4, and 5, respectively.

---

[1] Capitalized terms not otherwise defined shall have the meanings provided in the Stipulation and Agreement of Settlement dated May 19, 2023 (the "Stipulation"), attached hereto as Exhibit 1.

The following is a summary of the Parties' modifications to the proposed Preliminary Approval Order and proposed Notice in response to the Court's August 10 Order.

(1)      Paragraphs 7(e), 11, 14, 17, 18, 20, and 29 of the proposed Preliminary Approval Order have been amended to reflect the Court's modification of the Proposed Schedule of Settlement Events based on a 180-day schedule starting from the deadline to initially mail and email the Notice and Claim Form to Settlement Class Members (the "Notice Date") through the deadline for submitting Claim Forms (the "Claim Filing Deadline"), and to provide a deadline for reply papers in support of Lead Counsel's motion for attorneys' fees and litigation expenses that comes sufficiently after the deadline for potential claimants to submit a Claim Form. *See* August 10 Order, ¶¶ 3.a. and 3.b.  Specifically:

(a)      Paragraph 7(e) of the Order has been amended to reflect that proof of the mailing and publication of the settlement notice is to be filed no later than 35 calendar days after the Claim-Filing Deadline;

(b)      Paragraph 11 of the Order has been amended to reflect that the Claim-Filing Deadline is 180 calendar days after the Notice Date;

(c)      Paragraph 14 of the Order has been amended to reflect that requests for exclusion from the Settlement Class are to be submitted no later than the Claim-Filing Deadline;

(d)      Paragraphs 17 and 20 of the Order have been amended to reflect that notices of appearance by counsel on behalf of any Settlement Class Members who have retained counsel to represent them in the Action are to be filed on the Court's docket no later than the Claim-Filing Deadline;

(e)       Paragraph 18 of the Order has been amended to reflect that any objections to the proposed Settlement, the proposed Plan of Allocation, and/or Lead Counsel's motion for attorneys' fees and litigation expenses are to be filed no later than the Claim-Filing Deadline; and

(f)       Paragraph 29 of the Order has been amended to reflect that the opening papers in support of final approval of the Settlement and Plan of Allocation and Lead Counsel's motion for attorneys' fees and litigation expenses are to be filed no later than 21 calendar days prior to the Claim-Filing Deadline, and reply papers are to be filed no later than 35 calendar days after the Claim-Filing Deadline.

(2)       Paragraph 7(b) of the proposed Preliminary Approval Order has been amended to require Settlement Class Members to be notified via email and U.S. mail in accordance with the records received by Defendant Ryder or otherwise identifiable with reasonable effort, and Paragraph 9 has been similarly amended to require brokers and other nominees to provide notice to beneficial owners via email and U.S. mail. *See* August 10 Order, ¶ 3.c.

(3)       Paragraphs 17 and 20 of the proposed Preliminary Approval Order and Pages 4 and Paragraph 31 of the Notice have been amended, and original Paragraph 66 of the Notice has been deleted entirely, to expressly eliminate the need for pro se litigants to file a Notice of Appearance on the Court's docket. *See* August 10 Order, ¶ 3.d.

(4)       Paragraph 18 of the Preliminary Approval Order, Paragraphs 62 and 65 of the Notice, and Page 3 of the Summary Notice have been amended to instruct potential objectors to mail any objections to the Claims Administrator, and all language instructing potential objectors to file any such objections electronically with the Court has been removed. *See* August 10 Order, ¶ 3.e.

3

(5)     A new Paragraph 21 has been added to the Preliminary Approval Order requiring the Claims Administrator to collect and compile any objections and file a single Notice of Objections on the CM/ECF docket, with relevant attachments, in an organized and labeled manner, no later than 35 calendar days after the Claim-Filing Deadline. *See* August 10 Order, ¶ 3.e.

(6)     The Parties have also modified Paragraph 10 of the Preliminary Approval Order to reference the declaration Defendants served on Lead Counsel and filed with the Court on July 17, 2023 regarding compliance with the notice requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, *et seq.* (*see* ECF Nos. 113 & 113-1).

(7)     Also, Paragraphs 14 and 18 of the Preliminary Approval Order and Paragraphs 55 and 62 of the Notice have been modified to include a new P.O. Box set up by the Claims Administrator specifically for receipt of any requests for exclusion or objections.

In response to the Court's August 10 Order, Lead Plaintiffs are also submitting with this renewed motion for preliminary approval a revised Proposed Schedule of Settlement Events, attached as Appendix A hereto. *See* Section VII. below.

## I.     PRELIMINARY STATEMENT

Lead Plaintiffs have reached a proposed Settlement with Defendants Ryder System, Inc. ("Ryder" or the "Company"), Robert E. Sanchez, Art A. Garcia, and Dennis C. Cooke that will resolve all claims in this Action in exchange for a cash payment of $45,000,000. The Settlement is an excellent result; if approved, the Settlement would be the sixth largest securities class action recovery in the history of this District. Lead Plaintiffs now seek the Court's preliminary approval of the Settlement under Rule 23(e)(1) so that: (i) Lead Counsel can disseminate notice of the Settlement to the Settlement Class, and (ii) the Court can schedule a hearing to consider final approval of the Settlement (the "Settlement Hearing").

The Settlement is the result of lengthy arm's-length settlement negotiations conducted with the assistance of an experienced and respected mediator, Jed D. Melnick, Esq. of JAMS. These settlement negotiations included the exchange of detailed mediation statements and participation in two full-day mediations sessions, which did not yield an agreement. Following the second mediation session, the Parties engaged in additional discussions facilitated by Mr. Melnick. This process ultimately culminated in Mr. Melnick issuing a mediator's recommendation that the Parties settle the Action for $45 million, which both sides accepted on a double-blind basis.

Lead Plaintiffs and Lead Counsel devoted significant time, effort, and resources to this Action, and thus possessed a well-developed understanding of the strengths and risks of the Action. Lead Counsel conducted an extensive investigation into the claims asserted in the Action, drafted a detailed amended complaint, and briefed and argued the opposition to defendants' motion to dismiss the complaint. Then, Lead Counsel engaged in substantial discovery, which included preparing and serving initial disclosures, requests for production of documents, interrogatories, and third-party subpoenas, and obtaining and analyzing more than one million pages of documents produced by Defendants. Lead Counsel also fully briefed a motion for class certification, which included the exchange of expert reports and the depositions of the Parties' experts. As detailed herein, Lead Plaintiffs respectfully submit that the Settlement appropriately balances Lead Plaintiffs' objective of securing the largest monetary recovery for the Settlement Class against the risk that the Settlement Class could receive a smaller recovery—or no recovery at all—if Defendants were to prevail at summary judgment, trial, or an appeal.

In this Motion, Lead Plaintiffs request only that the Court grant preliminary approval of the Settlement so that notice may be provided to the Settlement Class and the Settlement Hearing can be scheduled. At the Settlement Hearing, following additional briefing and addressing any

potential objections to the Settlement, the Court will make a final determination as to whether, in accordance with Rule 23(e)(2), the Settlement is fair, reasonable, and adequate.

Lead Plaintiffs submit that the Settlement warrants preliminary approval and respectfully request that the Court enter the proposed Preliminary Approval Order.

## II.    NATURE OF THE ACTION AND PROCEDURAL HISTORY

The Action was commenced on May 20, 2020. On August 3, 2020, the Court appointed the State of Alaska, Alaska Permanent Fund; the City of Fort Lauderdale General Employees' Retirement System; and the City of Plantation Police Officers Pension Fund as Lead Plaintiffs, and approved Lead Plaintiffs' selection of Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel. On October 5, 2020, Lead Plaintiffs filed and served their Amended Complaint for Violations of the Federal Securities Laws (the "Complaint") asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and against the Individual Defendants under Section 20(a) of the Exchange Act. As the Court is aware, Lead Plaintiffs allege that Defendants misstated the residual value and depreciation expense of Ryder's trucking fleet, and thereby overstated Ryder's income.

On December 4, 2020, Defendants filed a motion to dismiss the Complaint (the "Motion to Dismiss"), which was fully briefed on March 4, 2021. On April 7, the Court held oral argument on the Motion to Dismiss and, on May 12, 2022, the Court entered its Order denying the motion.

Discovery commenced in June 2022. Lead Plaintiffs prepared and served initial disclosures, requests for production of documents, and interrogatories on Defendants, exchanged correspondence with Defendants concerning discovery issues over several months, and served document subpoenas on third parties. In response to Lead Plaintiffs' discovery requests, Defendants produced, and Lead Plaintiffs analyzed, more than one million pages of documents.

On September 23, 2022, Lead Plaintiffs filed their motion for class certification, which was

fully briefed on February 17, 2023. Both sides submitted dueling expert reports, and both sides' experts were deposed. The Court scheduled a hearing on the motion for April 20, 2023, and vacated it after the Parties reached an agreement in principle to resolve the Action, explained below.

## III.   THE PROPOSED SETTLEMENT

In June 2022, the Court had ordered the Parties to engage in mediation to discuss the possibility of settlement, and the Parties subsequently retained Jed Melnick of JAMS to act as mediator (the "Mediator"). On January 26, 2023, counsel for the Parties participated in an in-person mediation session before the Mediator. In advance of that session, the Parties submitted detailed mediation statements and supporting exhibits. At the mediation session, the Parties engaged in vigorous settlement discussions but were not able to reach an agreement.

The Parties conducted a second mediation session on March 28, 2023. In advance of that session, Lead Plaintiffs submitted a supplemental mediation statement and Defendants prepared a responsive presentation. At the second mediation session, the Parties once again engaged in vigorous settlement discussions with Mr. Melnick's assistance but were not able to reach an agreement. Thereafter, the Mediator continued to engage in discussion with the Parties. Following those discussions, Mr. Melnick issued a Mediator's recommendation that the Parties settle the Action for $45 million, which both sides accepted on a double-blind basis. On May 19, 2023, the Parties entered into the Stipulation and Agreement of Settlement, which sets forth the terms and conditions of the Settlement.

## IV.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.   Standards Governing Approval of Class Action Settlements

Federal Rule of Civil Procedure 23(e) provides that the Court should approve a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In conducting this

analysis, courts have long recognized that "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).

Judicial approval of a class action settlement is a two-step process. First, in the stage currently before the Court on this Motion, the Court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class. *See* Fed. R. Civ. P. 23(e)(1). Second, after notice has been provided and a hearing has been held, the Court determines whether to actually approve the settlement. *See* Fed. R. Civ. P. 23(e)(2).

A court should grant preliminary approval upon a finding that it "will likely be able" to finally approve the settlement under Rule 23(e)(2) and certify the proposed Settlement Class. *See* Fed. R. Civ. P. 23(e)(1)(B); *Williams v. Bluestem Brands, Inc.*, 2019 WL 1450090, at *1 (M.D. Fla. Apr. 2, 2019). The amendments to Rule 23(e) that became effective on December 1, 2018 established this standard. Previously, courts had developed a standard for preliminary approval through case law that was substantively similar. A common formulation was that the court should grant preliminary approval to a proposed settlement "if it is within the range of possible approval or, in other words, [if] there is 'probable cause' to notify the class of the proposed settlement." *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007).

In considering *final* approval of the Settlement, Rule 23(e)(2) provides that the Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[2]

The proposed Settlement satisfies these factors, and preliminary approval is appropriate.

**B.      The Court "Will Likely Be Able to" Approve the Proposed Settlement Under Rule 23(e)(2)**

**1.      "Procedural" Aspects of the Settlement Satisfy Rule 23(e)(2)**

Rule 23(e)(2)(A) requires that the Court consider whether the class representative and counsel have adequately represented the class, and Rule 23(e)(2)(B) requires the Court to consider whether the settlement is the result of arm's-length negotiations. Together, these factors constitute the "procedural" aspect to the settlement fairness inquiry. *See* Fed. R. Civ. P. 23(e)(2), Advisory Committee Note to 2018 Amendment.

The proposed Settlement has the hallmarks of a procedurally fair resolution. First, as discussed further below, Lead Plaintiffs are adequate representatives of the Settlement Class because they have standing to assert all claims that are being released under the Settlement, have claims that are typical of other Settlement Class Members, have no interests antagonistic to other Settlement Class Members, and have an interest in obtaining the largest possible recovery.

Moreover, the Parties reached the Settlement only after extensive arm's-length settlement discussions conducted with the assistance of an experienced mediator. The mediation process included the exchange of multiple, detailed mediation statements; two full-day mediation sessions under the auspices of the Mediator; and further discussions with the Mediator which ultimately

---

[2] At final approval, the Court will also consider the Eleventh Circuit's traditional factors set forth in *Bennett v. Behring Corp.,* 737 F.2d 982 (11th Cir. 1984):  "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved." *Bennett,* 737 F.2d at 986; *see also Faught v. Am. Home Shield Corp.*, 661 F.3d 1040, 1047 (11th Cir. 2011). These factors largely overlap with the factors set forth in Rule 23(e)(2). The fifth *Bennett* factor, which concerns the reaction of the class, cannot yet be ascertained because notice of the Settlement has not yet been sent to class members.

culminated in the Mediator issuing a proposal that the Parties settle the Action for $45 million, which both sides accepted on a double-blind basis. These facts strongly support the conclusion that the Settlement is fair. *See Holman v. Student Loan Xpress, Inc.*, 2009 WL 4015573, at *5 (M.D. Fla. Nov. 19, 2009) (no fraud or collusion on reaching settlement because the settlement was the product of arm's-length negotiations before a mediator); *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 675 (S.D. Fla. 2006) (same).

In addition, Lead Plaintiffs and Lead Counsel have been intensely litigating this Action for nearly three years. Lead Counsel's settlement posture was informed by its work on all aspects of this hard-fought case, including conducting an extensive investigation into the alleged facts; preparing the detailed Complaint; briefing and successfully opposing Defendants' Motion to Dismiss; preparing Lead Plaintiffs' class certification motion; deposing Defendants' expert and defending the deposition of Lead Plaintiffs' expert in connection with that motion; conducting significant discovery, which included the analysis of more than one million pages of documents produced by Defendants; engaging in extensive settlement discussions with Defendants noted above; and consulting extensively with experts in accounting and damages.

Finally, the Court should give some weight to Lead Plaintiffs' and Lead Counsel's judgment that the Settlement is in the best interests of the Settlement Class. The Court may consider Lead Counsel's substantial experience in cases of this nature in affording weight to its judgment that the Settlement is fair and reasonable. *See, e.g., Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) ("[a] district court properly considers the judgment of experienced counsel when asked to approve a class action settlement."). The fact that Lead Plaintiffs are sophisticated institutional investors of the type favored by Congress when it passed the PSLRA strengthens the force of their recommendation that the Settlement be approved. *See In re Veeco*

*Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) ("a settlement reached . . . under the supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness….'").

### 2.     The Settlement's Terms Are Adequate and Equitable

Rules 23(e)(2)(C) and 23(e)(2)(D) direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C)-(D). Here, the Settlement represents a very favorable result for the Settlement Class. Further, Lead Counsel, with the assistance of Lead Plaintiffs' damages expert, has proposed a Plan of Allocation that treats Settlement Class Members equitably.

### a)     The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation

A key factor in assessing the approval of a class action settlement is plaintiff's likelihood of success on the merits, balanced against the relief offered in settlement. In making this assessment, "the Court can limit its inquiry to determining whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of settlement." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697-98 (M.D. Fla. 2005); *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1345 (S.D. Fla. 2011) (the court need not determine whether the settlement "is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial").

The proposed Settlement provides for a cash payment of $45 million. As noted above, the Settlement represents the sixth largest securities class action recovery in the Southern District of Florida. As discussed in detail at the hearing on July 24, 2023, the Settlement is an excellent result for Class Members, especially considering the significant risks of continued litigation. *See Gutter v. E.I. Dupont De Nemours & Co.*, 2003 U.S. Dist. LEXIS 27238, at *5 (S.D. Fla. May 30, 2003)

("[T]he risks associated with proceeding to trial in . . . complex securities litigation, particularly the risks associated with establishing materiality, causation and damages favor approval of the [s]ettlement."); *see also Carpenters Health & Welfare Fund v. Coca-Cola Co.,* 2008 WL 11336122, at *9 (N.D. Ga. Oct. 20, 2008) ("Courts have repeatedly noted that [s]tockholder litigation is notably difficult and notoriously uncertain.") (quotation marks and citations omitted).

Although Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendants have merit, they recognize the expense and length of litigation through trial and appeals, as well as the risks they would face in establishing liability and damages. First, Lead Plaintiffs faced significant risks that, at either summary-judgment or at trial, they may not be able to establish that Defendants' statements about the residual value and depreciation expense of Ryder's trucking fleet were false. For example, Defendants would have continued to argue that their statements concerning Ryder's residual value estimates and related financial disclosures were factual and transparent. On this point, Defendants contended that Ryder accurately disclosed its methodology for calculating residual value. In addition, Defendants asserted that they made contemporaneous disclosures of negative adjustments in residual values and depreciation expense during the Class Period that accurately reflected the decline in value of Ryder's used vehicles, which undermines the notion that they misled investors about the worsening market and its impact on Ryder. Moreover, Defendants likely would have argued that neither the SEC nor any other regulatory body investigated the falsity of Defendants' public statements. Defendants also would have argued that Ryder did not restate its financial results, and its auditor—PwC, one of the "Big Four" accounting firms—signed off on its financial statements every single quarter.

Lead Plaintiffs would have also faced challenges in proving that Defendants made the alleged false statements with scienter, i.e., that they acted with intent or severe recklessness. For

example, Defendants would have continued to argue that, at bottom, the claims concerned their failure to predict how much Ryder would be able to sell its used vehicles for at the end of their useful lives, which was at least 5 years in the future. They would have argued that any failure on their part to predict residual values years forward, and in the face of a changing market, was accidental and not fraudulent. They also would have contended that any inference of scienter was undermined by the fact that they accurately disclosed Ryder's accounting methodology; repeatedly adjusted residual values and depreciation expense negatively during the Class Period; PwC uniformly signed off on Ryder's financial statements; and no regulator has even investigated them.

Even if Lead Plaintiffs established liability, they would have faced hurdles in proving loss causation—that the alleged misstatements were the cause of investors' losses—and in proving damages with respect to some of the alleged corrective disclosures. Had Defendants' arguments been accepted on these points, they would have severely reduced damages. For example, Defendants would have continued to argue that the Class Period should start years later than its current start date, which would have materially reduced damages. Specifically, Defendants would have continued to argue that the used vehicle market did not begin to decline significantly until almost a year into the Class Period, and that the decline did not appear to be lasting (as opposed to cyclical) until long after it materialized. As the Court may recall, at oral argument on Defendants' Motion to Dismiss, the Court questioned whether the Class Period starting date was too early.

Defendants also contended that the Class Period should end earlier, i.e., on October 29, 2019, the date that Ryder disclosed that it was decreasing residual value estimates by more than $840 million. Defendants argued that the final alleged corrective disclosure on February 13, 2020, should be excluded from the Class Period because, on that date, the only new information released

to the market was a modest $8 million adjustment to residual values. Had this corrective disclosure been excluded, the negative impact on potential damages would have been highly material.

Moreover, Defendants would have argued that Lead Plaintiffs could not disentangle the effect of information unrelated to the alleged fraud that accompanied the alleged corrective disclosures. For example, with respect to the first corrective disclosure on July 30, 2019, Ryder disclosed higher overhead and increased debt, and with respect to the February 13, 2020 corrective disclosure, Ryder disclosed costs related to strategic investments. Defendants would likely argue that these non-fraud related factors caused some or all of the stock price declines at issue.

The Settlement is also reasonable when considered in relation to the range of potential recoveries if Lead Plaintiffs prevailed at trial, which was far from certain for the reasons noted above. While Lead Plaintiffs would have sought to prove damages of approximately $900 million, this figure assumes that they (i) would have prevailed completely on every single contested liability, loss causation, and damages issue noted above, and (ii) would have prevailed on all those issues for the full Class Period of almost five years. Had Defendants prevailed on their loss causation and damages arguments noted above, the maximum potential damages at trial would be approximately $110-$170 million—and that is even if Lead Plaintiffs established liability.

On all of these issues, Lead Plaintiffs would have to prevail at several stages—at summary judgment and at trial, and if they prevailed on those, on the appeals that would follow—which would take multiple years and involve the risk of no recovery at each step. The Settlement avoids all these risks and provides a prompt and certain benefit to the Settlement Class.

> **b)  The Settlement Treats All Settlement Class Members Fairly**

The Court also will assess the "effectiveness" of the Settlement's "proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii); *see also Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1250 (11th Cir. 2023). The proposed Plan of Allocation (the "Plan,"

which is set forth in the Notice) treats Settlement Class Members "equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

The Plan provides for distribution of the Net Settlement Fund to Settlement Class Members demonstrating a loss on their transactions in publicly traded Ryder common stock. The formula to apportion the Net Settlement Fund among Settlement Class Members is based on the estimated amount of artificial price inflation in Ryder stock during the Class Period allegedly caused by Defendants' misconduct. Once the Claims Administrator has processed all submitted claims it will make distributions to eligible Settlement Class Members, until additional re-distributions are no longer cost effective. Any remaining balance will then be contributed to a non-sectarian, not-for-profit, 501(c)(3) organization approved by the Court. The Plan is consistent with those regularly approved by courts in securities class actions. *See, e.g.*, *Thorpe v. Walter Inv. Mgmt. Corp*, 2016 WL 10518902, at * 5 (S.D. Fla. Oct. 17, 2016) (approving similar plan of allocation); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *14 (S.D.N.Y. July 21, 2020) (same).

### c) The Settlement Does Not Excessively Compensate Plaintiffs' Counsel

The proposed Settlement does not grant excessive compensation to Plaintiffs' Counsel.[3] The Settlement does not contemplate any specific award to Plaintiffs' Counsel. Plaintiffs' Counsel will be compensated solely out of the Settlement Fund in an amount to be approved by the Court.

As set forth in the Notice, when the motion for final approval of the Settlement is filed, Lead Counsel will also file a motion for attorneys' fees and payment of Litigation Expenses in which Lead Counsel will seek fees for Plaintiffs' Counsel in an amount not to exceed 25% of the Settlement Fund, net of Litigation Expenses, or $11,126,521.40 plus interest earned at the same

---

[3] "Plaintiffs' Counsel" consist of Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") and Liaison Counsel Klausner, Kaufman, Jensen & Levinson ("KKJ&L").

rate as the Settlement Fund. A fee award of no more than 25% is reasonable and supported by case law in this Circuit. *See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2011) ("25% is generally recognized as a reasonable fee award in common fund cases."); *In re Rayonier Inc. Sec. Litig.*, 2017 WL 4542852, at *2-4 (M.D. Fla. Oct. 5, 2017) (awarding 30% of $73 million settlement achieved after two and a half years of litigation and before a ruling on class certification motion). Lead Counsel will also seek payment of Litigation Expenses incurred by Plaintiffs' Counsel in connection with the institution, prosecution, and resolution of the Action in the amount of $493,914.39.

By granting preliminary approval, the Court does not in any way pass upon the reasonableness of any subsequent fee or expense application, which will be decided at the Settlement Hearing. Lead Counsel's fee and expense application will be fully briefed and justified upon filing of a formal motion pursuant to the schedule set by the Preliminary Approval Order. Copies of Lead Counsel's fee and expense motion will be posted to the website established for this Settlement. Settlement Class Members will have an opportunity to review Lead Counsel's fee and expense motion posted to the Settlement website and file any objections to the fee or expense request before the Settlement Hearing.

### d)   Lead Plaintiffs Have Identified All Agreements Made in Connection with the Settlement

In addition to the Stipulation, Lead Plaintiffs and Defendants have entered into a confidential Supplemental Agreement regarding requests for exclusion from the Settlement Class (opt-outs). *See* Stipulation ¶ 42. This agreement sets forth the conditions under which Defendants may terminate the Settlement if the opt-outs exceed an agreed-upon threshold. As is standard in securities class actions, such agreements are not made public to avoid incentivizing the formation of a group of opt-outs for the purpose of leveraging the opt-out threshold to exact an individual

settlement. *See Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, *7 (N.D. Cal. Sept. 4, 2018) ("There are compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts."); *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 240 (E.D. Mich. 2016) (same), *aff'd*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

In sum, the proposed Settlement satisfies all the requirements of Rule 23(e)(2).

## V.   THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23

As part of the Settlement, the Parties have stipulated to the certification of the Settlement Class, for purposes of the Settlement only. *See* Stipulation ¶ 2. The Settlement Class consists of all persons or entities who purchased or otherwise acquired publicly traded Ryder common stock during the period from July 23, 2015 through February 13, 2020, inclusive (the "Class Period"), and were damaged thereby, subject to enumerated exclusions. *See* Stipulation ¶ 1(tt).

In determining whether to grant preliminary approval, the Court should also determine whether it "will likely be able to" grant certification to the proposed Settlement Class, for purposes of the Settlement, at final approval. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii). It is well established that this Court may certify a class "solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *In re Checking Account Overdraft Litig.*, 275 F.R.D 654, 659 (S.D. Fla. 2011). A settlement class, like other certified classes, must satisfy the requirements of Rule 23, *see Borcea*, 238 F.R.D. at 672, but the manageability concerns of Rule 23(b)(3) are not applicable, *see Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).[4]

---

[4] The Settlement Class definition is consistent with the class proposed in Lead Plaintiffs' motion for class certification. *See generally* ECF Nos. 90, 105. The discussion herein concerning satisfaction of the requirements of Rule 23 provides a brief summary of the arguments set forth in full in the class certification motion, which is incorporated by reference herein.

### A.      The Settlement Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### 1.      The Settlement Class is So Numerous that Joinder Is Impracticable

As of January 31, 2020, Ryder had over 53 million shares of common stock outstanding. While the exact number of Settlement Class Members is unknown to Lead Plaintiffs, Lead Plaintiffs believe that there are hundreds or thousands of Settlement Class Members. Accordingly, the members of the Settlement Class are so numerous that their joinder would be impracticable. *See AAL High Yield Bond Fund v. Ruttenberg*, 229 F.R.D. 676, 684 (N.D. Ala. 2005) (finding that class of at least eighty bondholders met numerosity requirement).

### 2.      There Are Common Questions of Law and Fact

The commonality requirement is satisfied where the proposed class members share at least one common question of law or fact. *See Hicks v. Client Servs., Inc.*, 2008 WL 5479111, at *5 (S.D. Fla. Dec. 11, 2008). At core, this case alleges that Defendants issued a series of public misstatements to all investors, which allegedly artificially inflated or maintained the price of Ryder common stock. Commonality is satisfied where, as here, a plaintiff alleges that "[d]efendants have engaged in a standardized course of conduct that affects all class members." *Id*.

### 3.      Lead Plaintiffs' Claims Are Typical of Those of the Settlement Class

Typicality is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504

F.3d 229, 245 (2d Cir. 2007). Here, the alleged injuries to Lead Plaintiffs and the other members of the Settlement Class are attributable to the same alleged course of conduct by Defendants, and liability is predicated on the same legal theories. Lead Plaintiffs allege that they, like the rest of the Settlement Class, paid artificially inflated prices for Ryder common stock during the Class Period as a result of Defendants' material misrepresentations and omissions. As such, Lead Plaintiffs "have the incentive to prove all elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006); *see In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 429 (S.D. Fla. 1991) ("As long as Plaintiffs assert, as they do here, that Defendants committed the same wrongful acts in the same manner against all members of the class, they establish the necessary typicality.").

### 4.  Lead Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class

Adequacy of representation is measured by two standards: (i) whether the claims of the proposed class representatives conflict with those of the class; and (ii) whether their counsel are qualified, experienced, and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *15 (S.D.N.Y. Mar. 24, 2014). Both prongs of the adequacy test are met here.

First, there is no antagonism or conflict between Lead Plaintiffs and the proposed Settlement Class. Lead Plaintiffs and Settlement Class Members were injured by the same alleged misrepresentations and omissions. If Lead Plaintiffs were to prove their claims at trial, they would also prove the Settlement Class's claims. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013) (the investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions).

19

Second, Lead Plaintiffs have demonstrated their commitment to this litigation by retaining qualified counsel and vigorously litigating the Action. Lead Counsel is highly experienced in securities litigation and has successfully prosecuted many complex class actions. *See* ECF No. 90-6 (BLB&G firm resume). Moreover, KKJ&L has also worked with BLB&G to successfully prosecute this litigation and should be appointed as Liaison Class Counsel. *See* MANUAL FOR COMPLEX LITIGATION (4TH ED. 2004) § 10.221 ("Liaison counsel will usually have offices in the same locality as the court."). Accordingly, Rule 23(a)(4) is satisfied.[5]

**B.      The Settlement Class Satisfies the Requirements of Rule 23(b)(3)**

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Settlement Class satisfies these requirements.

---

[5] In connection with Lead Plaintiffs' motion for class certification, Lead Counsel BLB&G filed a copy of an order issued in April 2021 in an unrelated action in the Northern District of California where BLB&G served as lead counsel for a different lead plaintiff, SEB Investment Management, and as class counsel for a certified class. *See SEB Inv. Mgmt. v. Symantec Corp.*, 2021 WL 1540996 (N.D. Cal. Apr. 20, 2021) ("*Symantec* Order"). *See* ECF No. 90-7. As reflected in the *Symantec* Order, counsel for a competing lead plaintiff movant (that was not appointed) raised questions about BLB&G's hiring of a former employee of the lead plaintiff in that case. Following discovery and extensive briefing, the court there (Judge Alsup) found that the evidence did not establish a *quid pro quo*, and allowed BLB&G to continue as class counsel. *See Symantec* Order at *1-2. The *Symantec* action was subsequently resolved with a $70 million settlement, and the settlement was approved by the court. The court nevertheless ordered BLB&G to bring the order to the attention of any court in which BLB&G seeks appointment as class counsel. *See id.* at *2. The *Symantec* Order was provided to each of the Lead Plaintiffs, and none had any objections. *See* ECF No. 90-2 ¶ 6 (Declaration of Benjamin Hofmeister); ECF No. 90-3 ¶ 6 (Declaration of Nick Schiess); ECF No. 90-4 ¶ 6 (Declaration of Brian Kendall). Because BLB&G seeks appointment as class counsel for the Settlement Class, BLB&G is again bringing the *Symantec* Order to the Court's attention in connection with this Motion.

### 1.    Common Legal and Factual Questions Predominate

Class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015); *Amchem*, 521 U.S. at 625. "[I]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 687, 697 (N.D. Ga. 2002). Lead Plaintiffs submit that there are no significant—let alone predominant—individual issues in this case.

Here, "the critical issues for establishing Defendants' liability include whether the Defendants (1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which Plaintiffs relied; and (5) that Plaintiffs' reliance was the proximate cause of their injury. Each of these issues is susceptible of generalized proof and, accordingly, the predominance requirement . . . is satisfied." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *11 (S.D.N.Y. Dec. 23, 2009).

### 2.    A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation:  "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Here, the benefits of presenting the claims of Settlement Class Members through a class action is substantial, as Settlement Class Members are geographically dispersed and likely number

in the hundreds or thousands, but many have not been damaged to a degree that would make bringing individual lawsuits economically feasible. *See In re BellSouth Corp. Sec. Litig.*, 2006 WL 870362, *4 (N.D. Ga. April 3, 2006) (finding a class action to be the superior method for litigating a federal securities action because "prosecution by individual shareholders would be prohibitive from both the individual Plaintiffs' and the court's perspectives"). Further, a class action will avoid duplicative litigation and save substantial judicial resources. Finally, since this is a request for class certification for purposes of settlement only, the Court need not inquire as to whether the case, if tried, would present management problems. *See Amchem*, 521 U.S. at 620.

## VI.   THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator will mail and email the Notice and Claim Form (Exhibits 1 and 2 to the Preliminary Approval Order) to all Settlement Class Members who can be identified with reasonable effort, as well as post the Notice and the Claim Form on a website to be developed for the Settlement. The Notice will advise Settlement Class Members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for attorneys' fees and expenses. The Notice also will provide specifics on the date, time, and place of the Settlement Hearing and set forth the procedures for objecting to the Settlement, the proposed Plan of Allocation, and/or the motion for attorneys' fees and expenses, and the procedure for requesting exclusion from the Settlement Class. In addition to the

mailing of the Notice and Claim Form, a Summary Notice will be published in *Investor's Business Daily* and transmitted over the *PR Newswire*.[6]

The form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice contains the specific information required by Rule 23(c)(2)(B) and the PSLRA, and will "fairly apprise the prospective members of the class of the terms of the proposed settlement[s] and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). The manner of providing notice, which includes individual notice by first-class mail to all class members who can be reasonably identified, supplemented by additional publication and internet notice, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See Aranaz v. Catalyst Pharm. Partners Inc.*, 2014 WL 11870214, at *2-3 (S.D. Fla. Dec. 3, 2014) (notice distributed by first class mail to all class members "who can be identified with reasonable effort . . . constitute[s] the best notice practicable under the circumstances").

Lead Plaintiffs propose that JND Legal Administration ("JND") administer the notice and claims process. JND is an experienced, independent settlement and claims administrator that Lead Counsel selected after a competitive bidding process.

## VII.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS

The Parties propose a schedule for Settlement-related events as set forth in Appendix A. Consistent with the Court's August 10 Order, the timing of events is now based on a 180-day schedule starting from the deadline to initially mail and email the Notice and Claim Form to

---

[6] The Parties have also agreed that, no later than ten calendar days following the filing of the Stipulation with the Court, Defendants shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 *et seq.* ("CAFA"). *See* Stipulation ¶ 25.

Settlement Class Members (i.e., the Notice Date) through the deadline for submitting Claim Forms (i.e., the Claim-Filing Deadline). If the Court grants preliminary approval as requested, the only date the Court need schedule is the date for the Settlement Hearing. *See* Preliminary Approval Order ¶ 5. The remaining dates will be based off the date that the Preliminary Approval Order is entered, as set forth in the proposed order.

Under the proposed schedule, Lead Plaintiffs request that the Court schedule the Settlement Hearing either 42 calendar days after the Claim-Filing Deadline, or as soon as possible thereafter. Thus, if the Court enters the Preliminary Approval Order by August 24, 2023, Lead Plaintiffs request that the Settlement Hearing be scheduled either for May 1, 2024, or as soon as possible thereafter.

## VIII.   CONCLUSION

Lead Plaintiffs respectfully request that the Court enter the Parties' agreed-upon proposed Preliminary Approval Order, which will provide for: (i) preliminary approval of the Settlement; (ii) approval of the form and manner of giving notice of the Settlement to the Class; and (iii) a hearing date and time to consider final approval of the Settlement and related matters.

Dated: August 17, 2023                    Respectfully submitted,

                                          /s/ Robert D. Klausner
                                          Robert D. Klausner
                                          **KLAUSNER KAUFMAN JENSEN**
                                          **  & LEVINSON**
                                          Florida Bar No. 244082
                                          Stuart A. Kaufman
                                          Florida Bar No. 979211
                                          7080 NW 4th Street
                                          Plantation, FL 33317
                                          Tel: (954) 916-1202
                                          Fax: (954) 916-1232
                                          Email: bob@robertdklausner.com
                                          Email: stu@robertdklausner.com

                                          *Liaison Counsel for Lead Plaintiffs the State of*
                                          *Alaska, Alaska Permanent Fund; the City of Fort*
                                          *Lauderdale General Employees' Retirement*
                                          *System; and the City of Plantation Police Officers*
                                          *Pension Fund*

                                          **BERNSTEIN LITOWITZ BERGER**
                                          **  & GROSSMANN LLP**
                                          John Rizio-Hamilton (admitted pro hac vice)
                                          Adam Wierzbowski (admitted pro hac vice)
                                          John Esmay (admitted pro hac vice)
                                          Mathews R. de Carvalho (admitted pro hac vice)
                                          Emily A. Tu (admitted pro hac vice)
                                          1251 Avenue of the Americas
                                          New York, NY 10020
                                          Tel: (212) 554-1400
                                          Fax: (212) 554-1444
                                          Email: johnr@blbglaw.com
                                          Email: adam@blbglaw.com
                                          Email: john.esmay@blbglaw.com
                                          Email: mathews.decarvalho@blbglaw.com
                                          Email: emily.tu@blbglaw.com

                                          *Lead Counsel for Lead Plaintiffs and the*
                                          *Settlement Class*

## Appendix A

## Proposed Schedule of Settlement Events

| Event | Proposed Timing |
|---|---|
| Deadline for initial mailing of the Notice and Claim Form to Settlement Class Members (which date shall be the "Notice Date") (Preliminary Approval Order ¶ 7(b)) | 20 business days after entry of the Preliminary Approval Order |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶ 7(d)) | 10 business days after the Notice Date |
| Deadline for submitting Claim Forms (which date shall be the "Claim-Filing Deadline") (Preliminary Approval Order ¶ 11) | 180 calendar days after the Notice Date |
| Deadline for receipt of requests for exclusion, notices of appearance by counsel, or objections (Preliminary Approval Order ¶¶ 14, 17, 18, and 20) | 180 calendar days after the Notice Date |
| Deadline for filing of opening papers in support of final approval of the Settlement and Plan of Allocation, and Lead Counsel's motion for attorneys' fees and Litigation Expenses (Preliminary Approval Order ¶ 29) | 21 calendar days before the Claim-Filing Deadline |
| Deadline for filing reply papers (Preliminary Approval Order ¶ 29) | 35 calendar days after the Claim-Filing Deadline |
| Settlement Hearing (Preliminary Approval Order ¶ 5) | To be selected by the Court, either 42 calendar days after the Claim-Filing Deadline or as soon as possible thereafter |

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 17, 2023, a copy of Lead Plaintiffs' Renewed Unopposed Motion for Preliminary Approval of Settlement and Authorization to Disseminate Notice of Settlement, and Incorporated Memorandum of Law, and accompanying materials was served by electronic mail on all counsel of record.

*/s/ Robert D. Klausner*
Robert D. Klausner
