# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

STATE OF ALASKA, ALASKA
PERMANENT FUND, THE CITY OF FORT
LAUDERDALE GENERAL EMPLOYEES'
RETIREMENT SYSTEM, and THE CITY
OF PLANTATION POLICE OFFICERS
PENSION FUND, On Behalf of Themselves
and All Others Similarly Situated,

Civil Action No. 1:20-cv-22109-JB

     *Plaintiffs*,

       v.

RYDER SYSTEM, INC., ROBERT E.
SANCHEZ, ART A. GARCIA, and DENNIS
C. COOKE,

     *Defendants*.

## LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES, AND INCORPORATED MEMORANDUM OF LAW

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. iii

I.    PRELIMINARY STATEMENT ........................................................................... 1

II.   ARGUMENT ........................................................................................................ 4

    A.    Under Eleventh Circuit Law, A Reasonable Percentage of the Recovery is the Appropriate Method for Awarding Attorneys' Fees ........................................ 4

    B.    The Requested Fee of 25% is Fair and Reasonable ............................................... 4

    C.    Lead Plaintiffs' Endorsement of the Requested Fee Supports Its Approval .......... 6

    D.    The Relevant Factors Confirm That the Requested Fee is Fair and Reasonable .................................................................................................... 7

        1.    The Time and Labor Required ................................................................... 8

        2.    The Novelty and Difficulty of the Issues .................................................. 9

        3.    The Skill, Experience, Reputation and Ability of the Attorneys .............. 12

        4.    The Preclusion of Other Employment ...................................................... 13

        5.    The Customary and Contingent Nature of the Fee ................................... 13

        6.    The Amount Involved and Results Achieved ........................................... 15

        7.    The Undesirability of the Case ................................................................. 15

        8.    Awards in Similar Cases ........................................................................... 15

        9.    The Time Required to Reach Settlement .................................................. 16

        10.   The Reaction of the Settlement Class ....................................................... 16

    E.    Lead Counsel's Request for Payment of Litigation Expenses is Fair and Reasonable ........................................................................................... 16

III.  CONCLUSION ................................................................................................... 18

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
    2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ..........................................................................14

*Behrens v. Wometco Enterprises, Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) .............................13, 14

*In re BellSouth Corp. Sec. Litig.*,
    2007 WL 9676400 (N.D. Ga. Apr. 9, 2007) ...........................................................................6

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ................................................................................................................4

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) ............................................................................4, 7, 12, 16

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
    587 F. Supp. 2d 1266 (N.D. Ga. 2008) .................................................................................17

*In re Carter's, Inc. Sec. Litig.*,
    2012 WL 12877943 (N.D. Ga. May 31, 2012) .................................................................6, 7

*In re Centurylink Sales Pracs. & Sec. Litig.*,
    2021 WL 3080960 (D. Minn. July 21, 2021) .........................................................................6

*In re Checking Acct. Overdraft Litig.*,
    830 F. Supp. 2d 1330 (S.D. Fla. 2011) .................................................................................13

*City of St. Clair Shores Gen. Emps.' Ret. Sys. v. Lender Processing Servs., Inc.*,
    2014 WL 12621611 (M.D. Fla. Mar. 4, 2014) .......................................................................7

*City of Sunrise Gen. Emps.' Ret. Plan v. Fleetcor Techs. Inc.*,
    No. 1:17-cv-02207-LMM (N.D. Ga. Apr. 15, 2020) ..............................................................5

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
    2012 WL 12540344 (N.D. Ga. Oct. 26, 2016) ............................................................5, 9, 12

*David v. Am. Suzuki Motor Corp.*,
    2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) .......................................................................12

*In re Domestic Air Transp. Antitrust Litig.*,
    148 F.R.D. 297 (N.D. Ga. 1993) .....................................................................................4, 15

*In re Equifax Inc. Customer Data Breach Litig.*,
    2020 WL 256132 (N.D. Ga. Jan. 13, 2020) ................................................................9, 14, 17

*Faught v. Am. Home Shield Corp.*,
    668 F.3d 1233 (11th Cir. 2012) ..................................................................4, 7, 16

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
    2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ..........................................................15

*Flournoy v. Honeywell Int'l, Inc.*,
    2007 WL 1087279 (S.D. Ga. Apr. 6, 2007)..............................................................5

*In re Friedman's, Inc. Sec. Litig.*,
    2009 WL 1456698 (N.D. Ga May 22, 2009) ..................................................13, 15

*In re Groupon, Inc. Sec. Litig.*,
    2016 WL 3896839 (N.D. Ill. July 13, 2016) ..............................................................6

*Ingram v. Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001)..............................................................................9

*Jones v. Diamond*,
    636 F.2d 1364 (5th Cir. 1981) ..............................................................................14

*Klein v. Altria Grp., Inc.*,
    2022 WL 16946243 (E.D. Va. Mar. 31, 2022) ..........................................................6

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
    2015 WL 5626414 (N.D. Ala. Sept. 14, 2015) ..........................................................5

*In re NetBank, Inc. Sec. Litig.*,
    2011 WL 13353222 (N.D. Ga. Nov. 9, 2011) ....................................................9, 17

*Pinto v. Princess Cruise Lines, Ltd.*,
    513 F. Supp. 2d 1334 (S.D. Fla. 2007) ..............................................................9, 13

*In re Rayonier Inc. Sec. Litig.*,
    2017 WL 4542852 (M.D. Fla. Oct. 5, 2017) ............................................................5

*Ressler v. Jacobson*,
    149 F.R.D. 651 (M.D. Fla. 1992)......................................................................9, 13

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ............................................................................14

*In re Silver Wheaton Corp. Sec. Litig.*,
    2020 WL 4581642 (C.D. Cal. Aug. 6, 2020)............................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..............................................................................................14

*In re Terazosin Hydrochloride Antitrust Litig.*,
  2005 WL 2451958 (S.D. Fla. July 8, 2005)..................................................................6

*Thorpe v. Walter Inv. Mgmt. Corp.*,
  2016 WL 10518902 (S.D. Fla. Oct. 14, 2016)............................................................5

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  2019 WL 2077847 (N.D. Cal. May 10, 2019)............................................................6

*In re Walter Energy, Inc. Sec. Litig.*,
  2016 WL 7230505 (N.D. Ala. May. 3, 2016)............................................................5

*Waters v. Int'l Precious Metals Corp.*,
  190 F.3d 1291 (11th Cir. 1999) ......................................................................4, 5, 8

Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") respectfully moves for an award of attorneys' fees in the amount of 25% of the Settlement Fund, net of Litigation Expenses awarded, and for payment of $493,914.39 in Litigation Expenses incurred by Lead Counsel.[1]

## MEMORANDUM OF LAW

## I.   PRELIMINARY STATEMENT

The proposed Settlement, which provides for a cash payment of $45,000,000 in exchange for the resolution of all claims in the Action, represents an excellent result for the Settlement Class. The significant recovery was achieved only after an extensive investigation, hard-fought litigation, substantial discovery, and lengthy negotiations by experienced attorneys that specialize in securities litigation.  In undertaking this litigation on a fully contingent basis, counsel faced numerous challenges to proving both liability and damages that raised serious risks of no recovery, or a significantly lesser recovery than the Settlement.

The successful prosecution and settlement of this litigation required skilled and diligent efforts on the part of counsel.  As detailed in the accompanying Rizio-Hamilton Declaration, Lead Counsel and Liaison Counsel Klausner, Kaufman, Jensen & Levinson ("Klausner Kaufman" and together with Lead Counsel, "Plaintiffs' Counsel") vigorously pursued this litigation from its outset by, among other things: (i) conducting a comprehensive investigation into the claims

---

[1] Unless otherwise defined in this memorandum, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement dated May 19, 2023 (ECF No. 117-1) (the "Stipulation") or in the Declaration of John Rizio-Hamilton in Support of (I) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses (the "Rizio-Hamilton Declaration" or "Rizio-Hamilton Decl."), filed herewith.  In this memorandum, citations to "¶ __" refer to paragraphs in the Rizio-Hamilton Declaration and citations to "Ex. __" refer to exhibits to the Rizio-Hamilton Declaration.

asserted in the Action, which included a thorough review of SEC filings, analyst reports and other public information; consultation with experts; and interviews with dozens of former Ryder employees (¶¶5, 18-20, 111); (ii) researching, drafting, and filing the detailed Complaint (¶¶18-21); (iii) successfully opposing Defendants' motion to dismiss the Complaint through extensive briefing and argument (¶¶23-27); (iv) fully briefing Lead Plaintiffs' class certification motion and conducting related discovery, including taking or defending six depositions of Lead Plaintiffs' representatives or experts (¶¶48-52); (v) conducting substantial fact discovery, including preparing and serving initial disclosures, requests for production of documents, interrogatories, and third-party subpoenas, and obtaining and analyzing more than one million pages of documents produced by Defendants and third parties (¶¶30-47); (vi) consulting extensively with experts, including in the fields of damages, loss causation, accounting, and the trucking industry (¶¶20, 49, 52); and (vii) engaging in extensive settlement negotiations, including participating in two full-day mediation sessions and additional negotiations, under the auspices of an experienced and highly respected mediator, Jed D. Melnick (¶¶5, 54-60).

The Settlement achieved through counsel's efforts is a particularly favorable result considering the significant hurdles that Lead Plaintiffs would have had to overcome to prevail in this complex securities fraud litigation. As further detailed below and in the Rizio-Hamilton Declaration, counsel faced numerous substantial challenges in establishing liability, loss causation, and damages in the Action. Despite these risks, Plaintiffs' Counsel collectively worked over 15,000 hours over the course of the litigation to achieve the Settlement, all on a contingent-fee basis with no assurance of ever being paid.

As compensation for Plaintiffs' Counsel's considerable efforts on behalf of the Settlement Class and the risks of nonpayment they faced in prosecuting the Action on a contingent basis, Lead

Counsel seeks attorneys' fees in the amount of 25% of the Settlement Fund, net of Litigation Expenses awarded.  The requested 25% fee is consistent with the "benchmark" fee established for percentage fee awards in the Eleventh Circuit and is well within the range of fees that courts in this Circuit have awarded in securities class actions and other complex class actions with comparable recoveries on a percentage basis.  The requested fee also represents a multiplier of just 1.36 on Plaintiffs' Counsel's lodestar, which is well within the range of multipliers typically awarded in class actions with significant contingency risks such as this one.

In addition to the attorneys' fees, Lead Counsel seeks payment for $493,914.39 in expenses that it reasonably incurred in connection with the prosecution of the Action.

The application for fees and expenses has the support of Lead Plaintiffs.  *See* Declaration of Benjamin Hofmeister on behalf of the State of Alaska, Alaska Permanent Fund (Ex. 1) (the "Hofmeister Decl."), ¶¶ 7-8; Declaration of Nick Schiess on behalf of The City of Fort Lauderdale General Employees' Retirement System (Ex. 2) (the "Schiess Decl."), ¶¶ 7-8; and Declaration of Brian Kendall on behalf of The City of Plantation Police Officers Pension Fund (Ex. 3) (the "Kendall Decl."), ¶¶ 7-8.  Each of the Lead Plaintiffs is a sophisticated institutional investor that actively supervised the Action and has endorsed the requested fee as fair and reasonable in light of the result achieved in the Action, the quality of the work counsel performed, and the risks of the litigation.  *Id*.  Moreover, the fee request is based on the fee retainer agreements that Lead Plaintiffs entered into with Lead Counsel at the outset of the litigation.  *Id*.  In addition, while the deadline set by the Court for Settlement Class Members to object to the requested attorneys' fees and expenses has not yet passed, to date, no objections to the request for fees and expenses have been received.  Rizio-Hamilton Decl. ¶ 123.

For all the reasons discussed in this memorandum and in the Rizio-Hamilton Declaration, Lead Counsel respectfully submits that the requested attorneys' fees and expenses are fair and reasonable.

## II.   ARGUMENT

### A.   Under Eleventh Circuit Law, A Reasonable Percentage of the Recovery is the Appropriate Method for Awarding Attorneys' Fees

Courts have long recognized that attorneys who represent a class and achieve a benefit for class members are entitled to be compensated for their services, and that attorneys who obtain a recovery for a class in the form of a common fund are entitled to an award of fees and expenses from that fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991).  "The purpose of awarding fees is to compensate successful attorneys for benefits they have achieved for the class as a result of the attorneys' efforts, for the risks the attorneys have taken in prosecuting a long and complex case, and for the hours and expenses the attorney has invested in the case." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 353 (N.D. Ga. 1993).

In the Eleventh Circuit, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774; *accord Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2012); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999).

### B.   The Requested Fee of 25% is Fair and Reasonable

The Eleventh Circuit has established 25% of the settlement fund as a "benchmark" (and presumptively reasonable) fee award in common-fund cases. *See Faught*, 668 F.3d at 1243 ("25% is generally recognized as a reasonable fee award in common fund cases"); *Camden I*, 946 F.2d at 774-75 ("[t]he majority of common fund fee awards fall between 20% to 30% of the fund," and

district courts consider the middle of that range—25%—as a "benchmark" that "may be adjusted in accordance with the individual circumstances of each case"); *Flournoy v. Honeywell Int'l, Inc.*, 2007 WL 1087279, at *1 (S.D. Ga. Apr. 6, 2007) ("the appropriate standard for fee awards in common fund cases is a percentage of the fund . . . with the benchmark award being twenty-five percent").  Here, the requested fee, which is based on pre-litigation agreements with Lead Plaintiffs, is consistent with the 25% benchmark, even though, as discussed below, the circumstances in the case, including the substantial contingency risks in the Action, could support an upward adjustment.

Further, a review of percentage fee awards approved by Courts within this Circuit in complex common fund cases involving comparable recoveries confirms that the 25% fee sought is well within the range of percentage fees awarded in comparable cases.  *See, e.g.*, *Waters*, 190 F.3d at 1293-98 (affirming award of 33.3% of $40 million settlement); *City of Sunrise Gen. Emps.' Ret. Plan v. Fleetcor Techs. Inc.,* No. 1:17-cv-02207-LMM (N.D. Ga. Apr. 15, 2020), ECF No. 111 (awarding 25% of $50 million settlement); *In re Rayonier Inc. Sec. Litig.*, 2017 WL 4542852, at *3 (M.D. Fla. Oct. 5, 2017) (awarding 30% of $73 million settlement); *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *8-*9 (S.D. Fla. Oct. 14, 2016) (awarding 33.3% of $24 million settlement, noting that "[i]n recent orders awarding fees in securities class action settlements, courts have awarded attorneys' fees of 30% or 33% of the settlement fund," and finding that "30% is an appropriate benchmark here, given the complexity of this matter and the skill that is required"); *In re Walter Energy, Inc. Sec. Litig.*, 2016 WL 7230505, at *1 (N.D. Ala. May. 3, 2016) (awarding 33% of $25 million settlement); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540344, at *8 (N.D. Ga. Oct. 26, 2016) (awarding one-third of $75 million settlement); *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin.*

*Corp.*, 2015 WL 5626414, at *1 (N.D. Ala. Sept. 14, 2015) (awarding 30% of $90 million settlement); *In re Carter's, Inc. Sec. Litig.*, 2012 WL 12877943, at *1 (N.D. Ga. May 31, 2012) (awarding 28% of $20 million settlement); *In re BellSouth Corp. Sec. Litig.*, 2007 WL 9676400, at *2 (N.D. Ga. Apr. 9, 2007) (awarding 30% of $35 million settlement); *In re Terazosin Hydrochloride Antitrust Litig.*, 2005 WL 2451958, at *2 (S.D. Fla. July 8, 2005) (awarding 30% of $28.7 million settlement).

In addition, the 25% fee request is also consistent with the fees awarded by courts in other Circuits in similarly sized securities class action settlements. *See, e.g.*, *Klein v. Altria Grp., Inc.*, 2022 WL 16946243 (E.D. Va. Mar. 31, 2022) (awarding 30% of $90 million settlement); *In re Centurylink Sales Pracs. & Sec. Litig.*, 2021 WL 3080960, at *12 (D. Minn. July 21, 2021) (awarding 25% of $55 million settlement) *In re Silver Wheaton Corp. Sec. Litig.*, 2020 WL 4581642, at *4 (C.D. Cal. Aug. 6, 2020) (awarding 30% of $41.5 million settlement); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) (awarding 25% of $48 million settlement); *In re Groupon, Inc. Sec. Litig.*, 2016 WL 3896839, at *4 (N.D. Ill. July 13, 2016) (awarding 30% of $45 million settlement).

In sum, when judged against the Eleventh Circuit benchmark, and compared to fees awarded in class action settlements of similar magnitude, the requested 25% fee is fair and reasonable.

### C.     Lead Plaintiffs' Endorsement of the Requested Fee Supports Its Approval

Each of the Lead Plaintiffs is a sophisticated institutional investor that took an active role in the litigation and supervised the work of Lead Counsel. *See* Hofmeister Decl. ¶¶ 2-5; Schiess Decl. ¶¶ 2-5; Kendall Decl. ¶¶ 2-5. Lead Plaintiffs have authorized the fee request as fair and reasonable in light of the work performed, the recovery obtained for the Settlement Class, and the risks associated with continuing to litigate the Action. *See* Hofmeister Decl. ¶ 7, Schiess Decl.

¶ 7, Kendall Decl. ¶ 7.  Lead Plaintiffs' endorsement of the fee as reasonable supports approval of the fee.  *See City of St. Clair Shores Gen. Emps.' Ret. Sys. v. Lender Processing Servs., Inc.*, 2014 WL 12621611, at *2 (M.D. Fla. Mar. 4, 2014) (approving fee request that was "reviewed and approved as fair and reasonable by Lead Plaintiff, a sophisticated institutional investor that was directly involved in the prosecution and resolution of the claims and who has a substantial interest in ensuring that any fees paid to Lead Plaintiff's Counsel are duly earned and not excessive"); *Carter's*, 2012 WL 12877943, at *2 (same).

### D. The Relevant Factors Confirm That the Requested Fee is Fair and Reasonable

In *Camden I*, the Eleventh Circuit recommended that district courts consider several factors in determining whether a requested percentage fee award is reasonable, including:

> (1) the time and labor required; (2) the novelty and the difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

946 F.2d at 772 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).  A court may also properly consider "the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel . . . and the economics involved in prosecuting a class action." *Camden I*, 946 F.2d at 775.

Although the Eleventh Circuit has since stated that a full analysis of the *Johnson* and other factors is only necessary if the fee request exceeds 25%, *see Faught*, 668 F.3d at 1242, which it does not here, Lead Counsel submits that these factors, if considered, provide further support for approval of the 25% fee request.

### 1.      The Time and Labor Required

The time and diligent effort expended by Plaintiffs' Counsel to achieve the Settlement supports the requested fee.  Plaintiffs' Counsel committed extensive resources to developing Lead Plaintiffs' claims though investigation, litigation, and settlement negotiation.  As discussed in greater detail in the Rizio-Hamilton Declaration, Plaintiffs' Counsel, among other things: (i) conducted a comprehensive factual investigation of the claims at issue in the Action, which included a detailed review of public documents, and interviews with dozens of possible witnesses (¶¶ 18-20); (ii) prepared and filed a detailed consolidated complaint based on this investigation (¶¶ 21-22); (iii) successfully opposed Defendants' motion to dismiss through detailed briefing and oral argument (¶¶ 23-27); (iv) prepared and fully briefed Lead Plaintiffs' motion for class certification (¶¶ 48-53); (v) took or defended six depositions in connection with the class certification motion (¶¶ 50-52); (vi) conducted substantial fact discovery, including obtaining and reviewing more than one million pages of documents (¶¶ 30-47); (vii) consulted extensively with experts (¶¶20, 49, 52); and (viii) participated in extensive settlement negotiations overseen by an experienced mediator, including two full-day mediations session and extended follow-up discussions (¶¶ 54-60).

In total, Plaintiffs' Counsel expended 15,070.70 hours in this litigation with a resulting lodestar of $8,152,013.75.  ¶ 114.  The time and labor expended by Plaintiffs' Counsel amply support the requested fee.

While not required in the Eleventh Circuit, an analysis of the requested fee under the "lodestar/multiplier" approach further supports the reasonableness of a 25% award.  *See, e.g.*, *Waters*, 190 F.3d at 1298 ("[W]hile we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison.").  Here, based on the $45 million Settlement Fund, the requested 25% fee award net of Litigation Expenses would

come to $11,126,524.40, before interest.  Therefore, the requested fee represents a multiplier of approximately 1.36 on Plaintiffs' Counsel's total lodestar.[2]  Given that multipliers between 2 and 5 are commonly awarded in complex class actions with substantial contingency risks, the multiplier requested here confirms the reasonableness of the requested fee.  *See, e.g.*, *In re Equifax Inc. Customer Data Breach Litig.*, 2020 WL 256132, at *39 (N.D. Ga. Jan. 13, 2020) (awarding fee representing 2.62 multiplier and describing it as "consistent with multipliers approved in other cases"); *Columbus Drywall*, 2012 WL 12540344, at *5 & n.4 (noting that multiplier of 4 times lodestar is "well within" the accepted range); *Pinto v. Princess Cruise Lines, Ltd.,* 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (finding that lodestar multipliers "in large and complicated class actions" tend to range from 2.26 to 4.5) (citations omitted); *Ingram v. Coca-Cola Co.,* 200 F.R.D. 685, 694-96 (N.D. Ga. 2001) (awarding fee representing a multiplier between 2.5 and 4).

## 2.        The Novelty and Difficulty of the Issues

As courts have recognized, "multi-faceted and complex" issues are "endemic" to cases based on alleged violations of federal securities law, *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992), and "securities class action litigation is 'notably difficult and notoriously uncertain,'" *In re NetBank, Inc. Sec. Litig.*, 2011 WL 13353222, at * 3 (N.D. Ga. Nov. 9, 2011). This Action was no exception.

As further detailed in the Rizio-Hamilton Declaration, to which the Court is respectfully referred, Lead Plaintiff and Lead Counsel faced a number of substantial challenges to establishing liability and proving damages in this Action from the outset.  ¶¶ 66-84.  Defendants contested their liability on falsity and scienter grounds, and disputed loss causation and damages.

---

[2] The multiplier is calculated by dividing the $11,126,521.40 fee request by the $8,152,013.75 in total lodestar that Plaintiffs' Counsel incurred.

First, throughout the Action, Lead Plaintiffs faced significant risks in proving that Defendants' statements about the residual value and depreciation expense of Ryder's trucking fleet were actionably false statements of present facts. While Lead Plaintiffs had prevailed on this issue at the pleading stage, Defendants had substantial arguments that their statements concerning Ryder's residual-value estimates and related financial disclosures were factual and transparent, which would have been revisited anew on a full record at summary judgment or trial. Defendants asserted that Ryder accurately disclosed the methodology it used for calculating residual value and made contemporaneous disclosures of negative adjustments in residual values and depreciation expense during the Class Period that accurately reflected the decline in value of Ryder's used vehicles—which undermined the notion that they misled investors about the worsening market and its impact on Ryder. ¶ 70. Defendants could also have pointed to the fact that (1) neither the SEC nor any other regulatory body investigated the falsity of Defendants' public statements; (2) Ryder never restated its past financial statements; and (3) its auditor—PwC, one of the "Big Four" accounting firms—had signed off on its financial statements every single quarter. ¶ 71.

Lead Plaintiffs also faced challenges in proving that Defendants made the alleged false statements with scienter—that is, that Defendants acted with intent or severe recklessness—as required for these Exchange Act fraud claims. ¶¶ 73-75. For example, Defendants had argued and would have continued to argue that, in their essence, the claims concerned Defendants' failure to predict how much Ryder would be able to sell its used vehicles for at the end of their useful lives, which was at least five years in the future. ¶ 74. Defendants had colorable arguments that their failure to predict residual values years in advance, and in the face of a changing and moving market, was simply a mistake but was not fraudulent. ¶¶ 70, 74. Defendants also would have contended that any inference of scienter was undermined by the fact that they had accurately

disclosed Ryder's accounting methodology; repeatedly adjusted residual values and depreciation expense negatively during the Class Period; that PwC signed off on Ryder's financial statements; and no regulator has investigated them.  ¶ 74.

Even if Lead Plaintiffs established liability, they would have faced hurdles in proving loss causation—that the alleged misstatements were the cause of investors' losses—and in proving damages with respect to some of the alleged corrective disclosures. ¶¶ 76-80.  Had Defendants' arguments been accepted on these points, they would have severely reduced damages. For example, Defendants would have continued to argue that the Class Period should start years later than its current start date, which would have materially reduced damages.  Specifically, Defendants would have continued to argue that the used vehicle market did not begin to decline significantly until almost a year into the Class Period, and that the decline did not appear to be lasting (as opposed to cyclical) until long after it materialized.  ¶¶ 77-80.  Defendants also contended that the Class Period should end earlier—on October 29, 2019, the date that Ryder disclosed that it was decreasing residual value estimates by more than $840 million.  ¶¶ 78-80.  Defendants argued that the final alleged corrective disclosure on February 13, 2020, should be excluded from the Class Period because, on that date, the only new information released to the market was a modest $8 million adjustment to residual values.  Had this corrective disclosure been excluded (even in meaningful part), the negative impact on potential damages would have been highly material. ¶¶ 78, 80.

Moreover, Defendants would have argued that Lead Plaintiffs could not disentangle the effect of information unrelated to the alleged fraud that accompanied the alleged corrective disclosures.  ¶ 79.  For example, on the date of the first corrective disclosure on July 30, 2019, Ryder also disclosed higher overhead and increased debt, and at the time of the February 13, 2020

corrective disclosure, Ryder also disclosed costs related to strategic investments.  *Id.*  Defendants would likely argue that these non-fraud related factors caused some or all of the stock price declines at issue on those days.  *Id.*

In short, Lead Counsel faced multiple, significant obstacles in prosecuting the Action. Notwithstanding these obstacles, Lead Counsel achieved a favorable result for the Settlement Class.  Success in the face of these obstacles supports the requested fee award.

### 3.    The Skill, Experience, Reputation and Ability of the Attorneys

Under these factors, the court should consider "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one," *David v. Am. Suzuki Motor Corp.*, 2010 WL 1628362, at *8 n.15 (S.D. Fla. Apr. 15, 2010), and "the experience, reputation and ability of the attorneys" involved.  *Camden I*, 946 F.2d at 772 n.3; *see also Columbus Drywall*, 2012 WL 12540344, at *4 ("The appropriate fee should also reflect the degree of experience, competence, and effort required by the litigation.").

From the inception of the Action, Lead Counsel engaged in a skillful and concerted effort to obtain the maximum recovery for the Settlement Class.  As noted above, this case required an in-depth investigation, a thorough understanding of complicated issues, and the skill to respond to a host of legal and factual issues raised by Defendants during the litigation.  Lead Counsel practices extensively in the highly challenging field of complex class action litigation and is one of the nation's leading securities class action litigation firms.  *See* Ex. 6A-3.  Lead Counsel's skills and experience were an important factor in obtaining the favorable result achieved in this Settlement.

This Court should also consider "the quality of the opposition" the plaintiff's attorneys faced in awarding Lead Counsel a fee.  *See Columbus Drywall*, 2012 WL 12540344, at *4.  Here, Defendants were represented by experienced and extremely able counsel from Wachtell, Lipton, Rosen & Katz, who vigorously defended the Action.  ¶ 117.  Lead Counsel's ability to obtain a

favorable outcome for the Settlement Class despite this formidable legal opposition confirms the quality of the representation that Lead Counsel provided here.

### 4.    The Preclusion of Other Employment

The considerable amount of time spent prosecuting this case—over 15,000 hours (¶ 114)—was time that Plaintiffs' Counsel could not devote to other matters.  Moreover, Plaintiffs' Counsel expended this time and effort without any assurance that they would be successful or that they would ever be compensated for their hard work.  This factor also supports the requested fee.

### 5.    The Customary and Contingent Nature of the Fee

The "customary fee" in a class action lawsuit of this nature is a contingency fee because virtually no class member possesses a sufficiently large stake in the litigation to justify paying attorneys on an hourly basis.  *See Ressler*, 149 F.R.D. at 654.  The contingent nature of Plaintiffs' Counsel's fees should be given weight in assessing the requested fee award.  Courts have consistently recognized that the risk that class counsel could receive little or no recovery is a major factor in determining the award of attorneys' fees:

> A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee . . . and the fact that the risks of failure and nonpayment in a class action are extremely high.  Cases recognize that attorneys' risk is "perhaps the foremost factor" in determining an appropriate fee award.

*Pinto*, 513 F. Supp. 2d at 1339; *see also In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1364 (S.D. Fla. 2011) ("[T]he contingent fee risk is an important factor in determining the fee award."); *In re Friedman's, Inc. Sec. Litig.*, 2009 WL 1456698, at *3 (N.D. Ga May 22, 2009) ("The contingent nature of fees in this case should be given substantial weight in assessing the requested fee award.").  "A contingency fee arrangement often justifies an increase in the award of attorneys' fees," *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990), "because if the case is lost a lawyer realizes no return for

investing time and money in the case." *Equifax*, 2020 WL 256132, at *33; *see also Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981) ("Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result.").

Success in contingent litigation such as this is never assured.  In other cases, plaintiffs' counsel in shareholder litigation have suffered major defeats after years of litigation in which they expended millions of dollars of time and received no compensation at all.  Even a victory at trial is not a guarantee of success.  *See*, *e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (finding no loss causation and overturning $81 million jury verdict); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *1 (S.D. Fla. Apr. 25, 2011) (overturning jury verdict in favor of plaintiff class estimated at $42 million, and granting judgment as a matter of law in favor of defendants).

Moreover, the award of appropriate attorneys' fees is particularly important in federal securities cases to ensure that private enforcement of the federal securities laws remains an effective method of protecting investors:

> In a securities fraud action, a contingency fee arrangement has added significance. The federal securities laws are remedial in nature and, in order to effectuate their statutory purpose of protecting investors and consumers, private lawsuits should be encouraged.  If the ultimate effectiveness of these remedies is to be preserved, the efficacy of class actions and of contingency fee arrangements — often the only means of legal representation available given the incredible expense associated with these actions — must be promoted.

*Behrens*, 118 F.R.D at 548 (citations omitted).  The Supreme Court has emphasized that private securities actions, such as the instant Action, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).  If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for

14

the value of their efforts, taking into account the enormous risks they undertook." *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010).

### 6.    The Amount Involved and Results Achieved

"It is [also] well-settled that one of the primary determinants of the quality of the work performed is the result obtained." *Friedman's*, 2009 WL 1456698, at *3 (alteration in original); *see also Domestic Air*, 148 F.R.D. at 351 ("The most important element in determining the appropriate fee to be awarded class counsel out of a common fund is the result obtained for the class through the efforts of such counsel.").

As noted above, the excellent result obtained here was accomplished despite the substantial difficulties of proving liability for securities fraud and the risks of establishing loss causation and damages in this case.  The significant recovery obtained in this Action also supports approval of the requested fee.

### 7.    The Undesirability of the Case

In certain instances, the "undesirability" of a case can be a factor in justifying the award of a requested fee.  While Lead Counsel does not believe the case was undesirable, there are significant risks inherent in financing and prosecuting complex litigation of this type.  When Lead Counsel undertook representation of Lead Plaintiffs in this Action, it was with the knowledge that Lead Counsel would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts.  Apart from the risk of no recovery, deferring fees in an undertaking like this while at the same time advancing hundreds of thousands of dollars in expenses would deter many firms.

### 8.    Awards in Similar Cases

As discussed above in Section II.B, Lead Counsel's requested fee of 25% is consistent with the presumptively fair and reasonable benchmark fee awarded in class action cases in this Circuit.

*See Faught*, 668 F.3d at 1242; *Camden I*, 946 F.2d at 774-75.  Moreover, as also shown above, the request fee is well within the range of percentage fees awarded in comparable class action settlements.  *See* Section II.B, *supra*.  This factor strongly supports the reasonableness of the requested fee.

9.      **The Time Required to Reach Settlement**

The Settlement was achieved only after three years of litigation, which included an extensive investigation of the claims asserted, full briefing and argument on Defendants' motion to dismiss, substantial fact discovery, a fully briefed class certification motion, and extended settlement negotiations.  Thus, this factor further supports the requested fee award.

10.      **The Reaction of the Settlement Class**

As of August 8, 2024, more than 146,500 copies of the Notice had been mailed to potential Settlement Class Members and their nominees, and the Summary Notice was published in *Investor's Business Daily* and transmitted over the *PR Newswire*.  *See* Declaration of Luiggy Segura submitted by the Court-approved Claims Administrator, JND (Ex. 5), ¶¶ 2-10.  The Notice advised Settlement Class Members that Lead Counsel would apply for fees not to exceed 25% of the Settlement Fund, net of Litigation Expenses awarded.  While the deadline for filing objections to the fee application is not until September 11, 2024, to date, no objections to the requested fee have been filed.  ¶ 123.[3]

**E.      Lead Counsel's Request for Payment of Litigation Expenses is Fair and Reasonable**

Lead Counsel also requests payment of $493,914.39 for the Litigation Expenses it incurred in prosecuting the Action.  It is well-established that "class counsel's reasonable and necessary

---

[3] Should any objections be filed, they will be addressed in Lead Counsel's reply papers to be filed by October 16, 2024.

out-of-pocket expenses should be reimbursed." *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 587 F. Supp. 2d 1266, 1272 (N.D. Ga. 2008); *see also NetBank*, 2011 WL 13353222, at *4 ("It has long been held that 'plaintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action."') (citation omitted).

The expenses for which Lead Counsel seeks payment are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses include, among others, costs for experts, on-line research, mediation fees, telephone, photocopying, postage, and out-of-town travel. ¶¶ 127-131. The largest expense, in the amount of $329,281.00, or 67% of the total Litigation Expenses, was for retention of experts, which included experts in the fields of damages, loss causation, accounting, and the trucking industry. ¶ 128. The combined costs for on-line legal and factual research, in the amount of $78,113.41, represent 16% of the total amount of expenses. ¶ 129. In addition, Lead Counsel expended $33,171.19, or 7% of the total Litigation Expenses, for Mr. Melnick's mediation fees. ¶ 130. A complete breakdown by category of the expenses incurred by Lead Counsel is included as Exhibit 6A-2 to the Rizio-Hamilton Declaration. These expense items were charged separately by counsel, and such charges were not duplicated in the firms' hourly rates.

The Notice informed potential Settlement Class Members that Lead Counsel would apply for payment of Litigation Expenses in the amount of $494,914.39. *See* Notice ¶¶ 5, 54. The total amount of expenses requested by Lead Counsel is the same as that set forth in the Notice. To date, there has been no objection to the request for expenses. ¶ 123.

Because the Litigation Expenses incurred are reasonable and of the type for which payment is routinely ordered in common fund, the requested expenses should be approved. *See Equifax*, 2020 WL 256132, at *40 (awarding expenses "for such items as court reporter fees; document and

database reproduction and analysis; e-discovery costs; expert witness fees; travel for meetings and hearings; paying the mediator; and other customary expenditures" and finding that such expenses "are reasonable and were necessarily incurred on behalf of the class").

## III.    CONCLUSION

For the reasons discussed above and in the Rizio-Hamilton Declaration, Lead Counsel respectfully request that the Court award attorneys' fees to Plaintiffs' Counsel in the amount of 25% of the Settlement Fund, net of Litigation Expenses, or $11,126,521.40 plus interest earned at the same rate as earned by the Settlement Fund, and payment of $493,914.39 for the Litigation Expenses incurred by Lead Counsel.  A proposed Order granting the relief requested will be submitted with Lead Counsel's reply papers after the deadline for objecting to the motion has passed.

Dated: August 12, 2024                         Respectfully submitted,

*/s/ Robert D. Klausner*
Robert D. Klausner
**KLAUSNER KAUFMAN JENSEN**
  **& LEVINSON**
Florida Bar No. 244082
Stuart A. Kaufman
Florida Bar No. 979211
7080 NW 4th Street
Plantation, FL 33317
Tel: (954) 916-1202
Fax: (954) 916-1232
Email: bob@robertdklausner.com
Email: stu@robertdklausner.com

*Liaison Counsel for Lead Plaintiffs the State of Alaska, Alaska Permanent Fund; the City of Fort Lauderdale General Employees' Retirement System; and the City of Plantation Police Officers Pension Fund*

**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
John Rizio-Hamilton (admitted *pro hac vice*)
Adam Wierzbowski (admitted *pro hac vice*)
John Esmay (admitted *pro hac vice*)
Mathews R. de Carvalho (admitted *pro hac vice*)
Emily A. Tu (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
Email: johnr@blbglaw.com
Email: adam@blbglaw.com
Email: john.esmay@blbglaw.com
Email: mathews.decarvalho@blbglaw.com
Email: emily.tu@blbglaw.com

*Lead Counsel for Lead Plaintiffs and the
Settlement Class*