# Exhibit 6

**EXHIBIT 6**

*State of Alaska et al. v. Ryder System, Inc. et al.,*
Civil Action No. 1:20-cv-22109-JB (S.D. Fla.)

**SUMMARY OF PLAINTIFFS' COUNSEL'S
LODESTAR AND EXPENSES**

| Exhibit | FIRM | HOURS | LODESTAR | EXPENSES |
|---------|------|-------|----------|----------|
| 6A | Bernstein Litowitz Berger & Grossmann LLP | 14,900.00 | $8,023,988.75 | $493,914.39 |
| 6B | Klausner, Kaufman, Jensen & Levinson | 170.70 | $128,025.00 | --- |
| | **TOTALS:** | **15,070.70** | **$8,152,013.75** | **$493,914.39** |

# Exhibit 6A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| STATE OF ALASKA, ALASKA PERMANENT FUND, THE CITY OF FORT LAUDERDALE GENERAL EMPLOYEES' RETIREMENT SYSTEM, and THE CITY OF PLANTATION POLICE OFFICERS PENSION FUND, On Behalf of Themselves and All Others Similarly Situated,<br><br>     *Plaintiffs*,<br><br>     v.<br><br>RYDER SYSTEM, INC., ROBERT E. SANCHEZ, ART A. GARCIA, and DENNIS C. COOKE,<br><br>     *Defendants*. | Civil Action No. 1:20-cv-22109-JB |

**DECLARATION OF JOHN RIZIO-HAMILTON ON BEHALF OF BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP IN SUPPORT OF LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

I, JOHN RIZIO-HAMILTON, declare as follows:

1.     I am a partner in the law firm of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G"). I submit this declaration in support of Lead Counsel's motion for an award of attorneys' fees in the above-captioned action ("Action"), as well as for payment of Litigation Expenses incurred by my firm in connection with the Action.[1] Unless otherwise stated, I have personal knowledge of the facts set forth herein and, if called upon, could and would testify thereto.

---

[1] All capitalized terms that are not otherwise defined herein shall have the meanings set forth in the Stipulation and Agreement of Settlement dated May 19, 2023 (ECF No. 111-1).

2.      My firm, as Lead Counsel for Lead Plaintiffs and the Settlement Class, was involved in all aspects of the prosecution and resolution of the Action, as set forth in my Declaration in Support of (I) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses, filed herewith.

3.      The schedule attached hereto as Exhibit 1 is a detailed summary of the amount of time spent by each BLB&G attorney and professional support staff employee who devoted ten (10) or more hours to the Action from its inception through and including July 31, 2024, and the lodestar calculation for those individuals based on their current hourly rates.  For personnel who are no longer employed by my firm, the lodestar calculation is based upon the hourly rates for such personnel in their final year of employment with my firm.  The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by BLB&G.  All time expended in preparing this application for fees and expenses has been excluded.

4.      The number of hours expended by BLB&G in the Action, from inception through July 31, 2024, as reflected in Exhibit 1, is 14,900.00.  The lodestar for my firm, as reflected in Exhibit 1, is $8,023,988.75.

5.      The hourly rates for the BLB&G attorneys and professional support staff employees included in Exhibit 1 are their standard current rates and are the same as, or comparable to, the rates submitted by my firm and accepted by courts for lodestar cross-checks in other class action fee applications. *See, e.g.*, *In re James River Grp. Holdings Ltd. Sec. Litig.*, No. 3:21-cv-444 (DJN) (E.D. Va. May 24, 2024), D.I. 131 (approving fee based on lodestar cross-check using BLB&G's current rates); *In re Boston Scientific Corp. Sec. Litig.*, No. 1:20-cv-12225-ADB (D. Mass. April 23, 2024), D.I. 166 (same); *see also In re BioMarin Pharm. Inc.*

2

*Sec. Litig.*, No. 20-cv-06719-WHO (N.D. Cal. Nov. 14, 2023), D.I. 155 (approving fee based on lodestar cross-check using BLB&G's 2023 rates); *In re Kraft Heinz Sec. Litig.*, No. 1:19-cv-01339 (N.D. Ill. Sept. 19, 2023), D.I. 493 (same); *In re Wells Fargo & Co. Sec. Litig.*, No. 1:20-cv-04494- JLR-SN (S.D.N.Y. Sept. 8, 2023), D.I. 206 (same), *In re Synchrony Fin. Sec. Litig.*, 2023 WL 4992933, at *11 (D. Conn. Aug. 4, 2023) (same).

6.     My firm's rates are set based on periodic analysis of rates used by firms performing comparable work and that have been approved by courts.  Different timekeepers within the same employment category (e.g., Partners, Associates, Paralegals, etc.) may have different rates based on a variety of factors, including years of practice, years at the firm, year in the current position (e.g., years as a Partner), relevant experience, relative expertise, and the rates of similarly experienced peers at our firm or other firms.

7.     BLB&G reviewed its time and expense records to prepare this declaration.  The purpose of this review was to confirm both the accuracy of the time entries and expenses and the necessity for, and reasonableness of, the time and expenses committed to the litigation.  As a result of this review, reductions were made in the exercise of counsel's judgment.

8.     Following this review and the adjustments made, I believe that the time reflected in the firm's lodestar calculation and the expenses for which payment is sought as stated in this declaration are reasonable in amount and were necessary for the effective and efficient prosecution and resolution of the litigation.

9.     As set forth in Exhibit 2 hereto, BLB&G is seeking payment for $493,914.39 in expenses incurred in connection with the prosecution and resolution of the Action.  Expense items are reported separately and are not duplicated in my firm's hourly rates.  The following is additional information regarding certain of these expenses:

3

(a)     **Experts & Consultants** ($329,281.00).  Lead Counsel retained testifying and consulting experts to assist at various stages of the litigation.  The following expert expenses were incurred by Lead Counsel and included in BLB&G's expense application:

- **Michael Hartzmark** ($199,361.25).   Dr. Michael Hartzmark, Ph.D. was Lead Plaintiffs' principal expert on financial economics issues, including damages, loss causation, and market efficiency.  In connection with Lead Plaintiffs' motion for class certification, Dr. Hartzmark prepared an expert report concerning the efficiency of the market for Ryder common stock during the Class Period and the calculation of class-wide damages.  Dr. Hartzmark and his team also consulted with Lead Counsel in the preparation of the proposed Plan of Allocation for the Net Settlement Fund.

- **Marcum LLP / Friedman LLP** ($113,629.75).  Lead Plaintiffs consulted extensively with Harris L. Devor, CPA of Marcum LLP (and previously Friedman LLP), concerning accounting issues in the Action, including prior to the filing of the Complaint and during discovery.

- **James Lewis** ($8,500.00).   After discovery commenced, Lead Plaintiffs retained James Lewis, an expert consultant in the trucking industry.  Mr. Lewis consulted on trucking industry trends and residual values.

- **Global Economics Group LLC** ($7,790.00).  Lead Plaintiffs also worked with Chad W. Coffman, CFA, a financial economist, to analyze damages and loss causation issues at the outset of the case.

(b)     **Mediation Fees** ($33,171.19).  The Parties retained Jed D. Melnick, Esq. of JAMS, an experienced mediator of securities class actions and other complex

4

litigation, to assist with settlement negotiations in the Action, including the two formal mediation sessions on January 26, 2023 and March 28, 2023.  Lead Plaintiffs' share of the mediation costs paid to JAMS for the services of Mr. Melnick was $33,171.19.

(c)     **On-Line Legal & Factual Research** ($78,113.41).  The charges reflected are for out-of-pocket payments to vendors such as Westlaw, Lexis/Nexis, Court Alert, and PACER for research done in connection with this litigation.  These resources were used to obtain access to court filings, to conduct legal research and cite-checking of briefs, and to obtain factual information regarding the claims asserted.  These expenses represent the actual expenses incurred by BLB&G for use of these services in connection with this litigation.  There are no administrative charges included in these figures.  Online research is billed to each case based on actual usage at a charge set by the vendor.  When BLB&G utilizes online services provided by a vendor with a flat-rate contract, access to the service is by a billing code entered for the specific case being litigated.  At the end of each billing period, BLB&G's costs for such services are allocated to specific cases based on the percentage of use in connection with that specific case in the billing period.

(d)     **Document Management & Litigation Support** ($12,438.53).  This category represents the costs incurred by BLB&G associated with establishing and maintaining the internal document database that was used by Lead Counsel to process and review the documents produced by Defendants and non-parties in the Action.  BLB&G charges a rate of $4 per gigabyte of data per month and $17 per user to recover the costs associated with maintaining its document database management system, which includes the costs to BLB&G of necessary software licenses and hardware.  BLB&G has conducted a review of market rates charged for the similar services performed by third-

party document management vendors and found that its rate was at least 80% below the market rates charged by these vendors, resulting in a savings to the class.

(e)   **Out-of-Town Travel** ($5,435.38).   BLB&G seeks reimbursement of $5,435.38 in costs incurred in connection with travel in connection with the Action. Airfare is at coach rates, hotel charges are capped at $350 per night; and travel meals are capped at $20 per person for breakfast, $25 per person for lunch, and $50 per person for dinner.

(f)   **Working Meals** ($792.04).   Out of office working meals are capped at $25 per person for lunch and $50 per person for dinner; and in-office working meals are capped at $25 per person for lunch and $40 per person for dinner.

(g)   **Internal Copying & Printing** ($222.60).   BLB&G charges $0.10 per page for in-house copying and printing of documents.

(h)   **Independent Witness Counsel** ($4,159.50).   Lead Counsel incurred $4,159.50 in attorneys' fees for the retention of independent counsel, Hach Rose Schirripa & Cheverie LLP, to represent a former Ryder employee that Lead Counsel contacted during the course of its investigation and who wished to be represented by independent counsel.   Similar expenses have routinely been approved by courts.   *See, e.g., SEB Inv. Mgmt. AB v. Symantec Corp.*, No. C 18-02902-WHA, slip op. at 15 (N.D. Cal. Feb. 10, 2022) (awarding expenses reimbursing class counsel for the costs of paying for independent counsel for third-party witnesses); *In re Willis Towers Watson PLC Proxy Litig.*, No. 1:17-cv-1338-AJT-JFA, slip op. at 1-2-3 (E.D. Va. May 21, 2021), ECF No. 347 (same); *In re Impinj, Inc. Sec. Litig.*, No. 3:18-cv-05704-RSL, slip op. at 1 (W.D. Wash. Nov. 20, 2020), ECF No. 106 (same).

6

10.     The expenses incurred by BLB&G in the Action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records, and other source materials and are an accurate record of the expenses incurred.  I believe these expenses were reasonable and expended for the benefit of the Settlement Class in the Action.

11.     With respect to the standing of my firm, attached hereto as Exhibit 3 is a firm resume, which includes information about my firm and biographical information concerning the firm's attorneys.

I declare, under penalty of perjury, that the foregoing facts are true and correct.  Executed on August 12, 2024.

John Rizio-Hamilton

7

**EXHIBIT 1**

*State of Alaska et al. v. Ryder System, Inc. et al.*,
Civil Action No. 1:20-cv-22109-JB (S.D. Fla.)

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

**<u>TIME REPORT</u>**

From Inception Through July 31, 2024

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Partners** | | | |
| John Rizio-Hamilton | 580.25 | $1,250 | $725,312.50 |
| Hannah Ross | 193.00 | $1,250 | $241,250.00 |
| Adam Wierzbowski | 746.75 | $1,050 | $784,087.50 |
| | | | |
| **Senior Counsel** | | | |
| John Esmay | 773.75 | $875 | $677,031.25 |
| John Mills | 133.50 | $875 | $116,812.50 |
| | | | |
| **Associates** | | | |
| Girolamo Brunetto | 249.75 | $700 | $174,825.00 |
| Mathews de Carvalho | 594.25 | $525 | $311,981.25 |
| Brenna Nelinson | 151.75 | $550 | $83,462.50 |
| Matthew Traylor | 380.50 | $500 | $190,250.00 |
| Emily Tu | 394.00 | $525 | $206,850.00 |
| | | | |
| **Senior Staff Attorney** | | | |
| Stephen Imundo | 1,127.50 | $450 | $507,375.00 |
| | | | |
| **Staff Attorneys** | | | |
| Robert Blauvelt | 1,173.50 | $425 | $498,737.50 |
| Alexa Butler | 677.75 | $425 | $288,043.75 |
| Jodena Carbone | 518.25 | $410 | $212,482.50 |
| Christopher Clarkin | 716.25 | $425 | $304,406.25 |
| Michelle Collison | 460.00 | $425 | $195,500.00 |
| Giorgi Dogonadze | 1,269.50 | $375 | $476,062.50 |
| George Doumas | 741.75 | $425 | $315,243.75 |
| Barbara Klinger | 404.00 | $425 | $171,700.00 |
| Jed Koslow | 420.00 | $425 | $178,500.00 |

8

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| Palwasha Raqib | 807.25 | $425 | $343,081.25 |
| Renee Tamraz | 1,092.00 | $425 | $464,100.00 |
| | | | |
| **Director of Investor Services** | | | |
| Adam Weinschel | 68.00 | $625 | $42,500.00 |
| | | | |
| **Investigators** | | | |
| Amy Bitkower | 74.50 | $625 | $46,562.50 |
| John Deming | 79.50 | $450 | $35,775.00 |
| Joelle Sfeir | 236.25 | $525 | $124,031.25 |
| | | | |
| **Case Managers & Paralegals** | | | |
| Matthew Gluck | 98.00 | $375 | $36,750.00 |
| Jeffrie Hausman | 109.50 | $400 | $43,800.00 |
| Khristine De Leon | 62.25 | $400 | $24,900.00 |
| Matthew Mahady | 57.00 | $400 | $22,800.00 |
| Nathan Vickers | 337.50 | $325 | $109,687.50 |
| Stephanie Yu | 71.50 | $325 | $23,237.50 |
| | | | |
| **Litigation Support** | | | |
| Roberto Santamarina | 60.50 | $475 | $28,737.50 |
| | | | |
| **Managing Clerk** | | | |
| Mahiri Buffong | 40.25 | $450 | $18,112.50 |
| | | | |
| **TOTALS:** | **14,900.00** | | **$8,023,988.75** |

9

**EXHIBIT 2**

*State of Alaska et al. v. Ryder System, Inc. et al.,*
Civil Action No. 1:20-cv-22109-JB (S.D. Fla.)

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

<u>**EXPENSE REPORT**</u>

| CATEGORY | AMOUNT |
|---|---|
| Service of Process | $5,612.78 |
| PSLRA Notice Costs | $4,270.00 |
| On-Line Legal & Factual Research | $78,113.41 |
| Telephone | $785.10 |
| Postage, Express Mail & Hand Delivery | $925.42 |
| Local Transportation | $758.20 |
| Internal Copying & Printing | $222.60 |
| Outside Copying | $1,579.64 |
| Out-of-Town Travel | $5,435.38 |
| Working Meals | $792.04 |
| Court Reporting & Transcripts | $16,369.60 |
| Experts & Consultants | $329,281.00 |
| Independent Witness Counsel | $4,159.50 |
| Mediation Fees | $33,171.19 |
| Document Management & Litigation Support | $12,438.53 |
|  |  |
| **TOTAL:** | **$493,914.39** |

10

**EXHIBIT 3**

*State of Alaska et al. v. Ryder System, Inc. et al.,*
Civil Action No. 1:20-cv-22109-JB (S.D. Fla.)

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

**<u>FIRM RESUME</u>**



*Bernstein Litowitz Berger & Grossmann LLP*
*Attorneys at Law*

# Firm Resume

**Firm Resume**



# Table of Contents

Firm Overview ........................................................................................................................................... 3

    More Top Securities Recoveries Than Any Other Firm ........................................................................ 3

    Giving Shareholders a Voice and Changing Business Practices for the Better ..................................... 4

Practice Areas .......................................................................................................................................... 5

    Securities Fraud Litigation ................................................................................................................... 5

    Corporate Governance and Shareholder Rights .................................................................................. 5

    Distressed Debt and Bankruptcy ......................................................................................................... 6

    Commercial Litigation ......................................................................................................................... 6

    Alternative Dispute Resolution ........................................................................................................... 6

Feedback from the Courts ........................................................................................................................ 7

Significant Recoveries ............................................................................................................................. 8

    Securities Fraud Litigation ................................................................................................................... 8

    Corporate Governance and Shareholders' Rights ............................................................................. 17

Clients and Fees .................................................................................................................................... 21

In the Public Interest ............................................................................................................................. 22

    Bernstein Litowitz Berger & Grossmann Public Interest Law Fellows ............................................... 22

    Firm Sponsorship of Her Justice ........................................................................................................ 22

    Firm Sponsorship of City Year New York ........................................................................................... 22

    Max W. Berger Pre-Law Program ...................................................................................................... 22

Our Attorneys ........................................................................................................................................ 23

    Partners ............................................................................................................................................. 23

    Senior Counsel .................................................................................................................................. 29

    Associates ......................................................................................................................................... 29

    Senior Staff Attorneys ....................................................................................................................... 31

    Staff Attorneys .................................................................................................................................. 31



*Since our founding in 1983, Bernstein Litowitz Berger & Grossmann LLP has obtained more than $40 billion in recoveries on behalf of investors. The firm has obtained some of the largest settlements ever agreed to by public companies related to securities fraud, including six of the 15 largest in history. Working with our clients, we have also used the litigation process to achieve precedent-setting reforms that have increased market transparency, held wrongdoers accountable, and improved corporate business practices in groundbreaking ways.*

# Firm Overview

Bernstein Litowitz Berger & Grossmann LLP (BLB&G), a national law firm with offices located in New York, California, Delaware, Louisiana, and Illinois, prosecutes class and private actions on behalf of individual and institutional clients. The firm's litigation practice areas include securities class and direct actions in federal and state courts; corporate governance and shareholder rights litigation, including claims for breach of fiduciary duty and proxy violations; mergers and acquisitions and transactional litigation; alternative dispute resolution; and distressed debt and bankruptcy. We also handle, on behalf of major institutional clients and lenders, more general complex commercial litigation involving allegations of breach of contract, accountants' liability, breach of fiduciary duty, fraud, and negligence.

We are the nation's leading firm representing institutional investors in securities fraud class action litigation. The firm's institutional client base includes U.S. public pension funds the New York State Common Retirement Fund; the California Public Employees' Retirement System (CalPERS); the Los Angeles County Employees Retirement Association; the Chicago Municipal, Police and Labor Retirement Systems; the Teacher Retirement System of Texas; the Arkansas Teacher Retirement System; the Florida State Board of Administration; the Public Employees' Retirement System of Mississippi; the New York State Teachers' Retirement System; the Ohio Public Employees Retirement System; the State Teachers Retirement System of Ohio; the Oregon Public Employees Retirement System; the Virginia Retirement System; the Louisiana School, State, Teachers and Municipal Police Retirement Systems; the Public School Teachers' Pension and Retirement Fund of Chicago; the New Jersey Division of Investment of the Department of the Treasury; TIAA-CREF and other private institutions; as well as numerous other public and Taft-Hartley pension entities. Our European client base includes APG; Aegon AM; ATP; Blue Sky Group; Hermes IM; Robeco; SEB; Handelsbanken; Nykredit; PGB; and PGGM, among others.

## More Top Securities Recoveries Than Any Other Firm

Since its founding in 1983, BLB&G has prosecuted some of the most complex cases in history and obtained more than $40 billion on behalf of investors. The firm has negotiated and obtained many of the largest securities recoveries in history, including:

- *In re WorldCom, Inc. Securities Litigation – $6.19 billion recovery*

- *In re Cendant Corporation Securities Litigation – $3.3 billion recovery*

- *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation – $2.43 billion recovery*



- *In re Allianz Global Investors U.S. Litigation – More than $2 billion recovered in a series of direct actions*

- *In re Nortel Networks Corporation Securities Litigation (Nortel II) – $1.07 billion recovery*

- *In re Merck & Co., Inc. Securities Litigation – $1.06 billion recovery*

- *In re McKesson HBOC, Inc. Securities Litigation – $1.05 billion recovery*

- *In re Wells Fargo & Company Securities Litigation – $1.00 billion recovery*

Based on our record of success, BLB&G has been at the top of the rankings by ISS Securities Class Action Services (ISS-SCAS), a leading industry research publication that provides independent and objective third-party analysis and statistics on securities-litigation law firms, since its inception. In its most recent report, *Top 100 U.S. Class Action Settlements of All-Time*, ISS-SCAS once again ranked BLB&G as the top firm in the field for the 14th year in a row. BLB&G has served as lead or co-lead counsel in 38 of the ISS-SCAS's top 100 U.S. securities-fraud settlements—significantly more than any other firm—and recovered over $27 billion for investors in those cases, nearly $9 billion more than any other plaintiffs' securities firm.

# Giving Shareholders a Voice and Changing Business Practices for the Better

BLB&G was among the first law firms ever to obtain meaningful corporate governance reforms through litigation. In courts throughout the country, we prosecute shareholder class and derivative actions, asserting claims for breach of fiduciary duty and proxy violations wherever the conduct of corporate officers and/or directors, or M&A transactions, seeks to deprive shareholders of fair value, undermine shareholder voting rights, or allow management to profit at the expense of shareholders.

We have prosecuted seminal cases establishing precedent that has increased market transparency, held wrongdoers accountable, addressed issues in the boardroom and executive suite, challenged unfair deals, and improved corporate business practices in groundbreaking ways. We have confronted a variety of questionable, unethical, and proliferating corporate practices, setting new standards of director independence, restructuring board practices in the wake of persistent illegal conduct, challenging the improper use of defensive measures and deal protections for management's benefit, and confronting stock options backdating abuses and other self-dealing by executives.



# Practice Areas

## Securities Fraud Litigation

Securities fraud litigation is the cornerstone of the firm's litigation practice. Since its founding, the firm has had the distinction of having tried and prosecuted many of the most high-profile securities fraud class actions in history, recovering billions of dollars and obtaining unprecedented corporate governance reforms on behalf of our clients. BLB&G continues to play a leading role in major securities litigation pending in federal and state courts, and the firm remains one of the nation's leaders in representing institutional investors in securities fraud class litigation.

The firm also pursues direct actions in securities fraud cases, when appropriate. By selectively opting out of certain securities class actions, we seek to resolve our clients' claims efficiently and for substantial multiples of what they might otherwise recover from related class action settlements.

Our attorneys have extensive experience in the laws that regulate the securities markets and in the disclosure requirements of corporations that issue publicly traded securities. Many also have accounting backgrounds. The group has access to state-of-the-art, online financial wire services and databases, which enable it to instantaneously investigate any potential securities fraud action involving a public company's debt and equity securities. Biographies for our attorneys can be accessed on the firm's website by clicking here.

## Corporate Governance and Shareholder Rights

Our Corporate Governance and Shareholder Rights attorneys prosecute derivative actions, claims for breach of fiduciary duty, and proxy violations on behalf of individual and institutional investors in state and federal courts throughout the country. We have prosecuted actions challenging numerous highly publicized corporate transactions that violated fair process, fair price, and the applicability of the business judgment rule, and have also addressed issues of corporate waste, shareholder voting rights claims, and executive compensation.

Our attorneys have prosecuted numerous cases regarding the improper "backdating" of executive stock options that resulted in windfall undisclosed compensation to executives at the direct expense of shareholders—and returned hundreds of millions of dollars to company coffers. We also represent institutional clients in lawsuits seeking to enforce fiduciary obligations in connection with mergers and acquisitions and going-private transactions that deprive shareholders of fair value when participants buy companies from their public shareholders "on the cheap."  Although enough shareholders accept the consideration offered for the transaction to close, many sophisticated investors correctly recognize and ultimately enjoy the increased returns to be obtained by pursuing appraisal rights and demanding that courts assign a "true value" to the shares taken private in these transactions.

Our attorneys are well versed in changing SEC rules and regulations on corporate governance issues and have a comprehensive understanding of a wide variety of corporate law transactions and both substantive and courtroom expertise in the specific legal areas involved. As a result of the firm's high-profile and widely recognized capabilities, our attorneys are increasingly in demand with institutional investors who are exercising a more assertive voice with corporate boards regarding corporate governance issues and the boards' accountability to shareholders.



# Distressed Debt and Bankruptcy

BLB&G has obtained billions of dollars through litigation on behalf of bondholders and creditors of distressed and bankrupt companies, as well as through third-party litigation brought by bankruptcy trustees and creditors' committees against auditors, appraisers, lawyers, officers and directors, and other defendants who may have contributed to client losses. As counsel, we advise institutions and individuals nationwide in developing strategies and tactics to recover assets presumed lost as a result of bankruptcy. Our record in this practice area is characterized by extensive trial experience in addition to successful settlements.

# Commercial Litigation

BLB&G provides contingency fee representation in complex business litigation and has obtained substantial recoveries on behalf of investors, corporations, bankruptcy trustees, creditor committees, and other business entities. We have faced down the most powerful and well-funded law firms and defendants in the country—and consistently prevailed. For example, on behalf of the bankruptcy trustee, the firm prosecuted *BFA Liquidation Trust v. Arthur Andersen*, arising from the largest nonprofit bankruptcy in U.S. history. After two years of litigation and a week-long trial, the firm obtained a $217 million recovery from Andersen for the Trust. Combined with other recoveries, the total amounted to more than 70 percent of the Trust's losses.

Having obtained huge recoveries with nominal out-of-pocket expenses and fees of less than 20 percent, we have repeatedly demonstrated that valuable claims are best prosecuted by a first-rate litigation firm on a contingent basis at negotiated percentages. Legal representation need not compound the risk and high cost inherent in today's complex and competitive business environment. We are paid only if we (and our clients) win. The result: the highest quality legal representation at a fair price.

# Alternative Dispute Resolution

BLB&G offers clients an accomplished team and a creative venue in which to resolve conflicts outside of the litigation process. We have experience in U.S. and international disputes, and our attorneys have led complex business-to-business arbitrations and mediations domestically and abroad, representing clients before all the major arbitration tribunals, including the American Arbitration Association, FINRA, JAMS, International Chamber of Commerce, and the London Court of International Arbitration.

Our lawyers have successfully arbitrated cases that range from complex business-to-business disputes to individuals' grievances with employers. It is our experience that in some cases, a well-executed arbitration process can resolve disputes faster, with limited appeals and a higher level of confidentiality than public litigation.

In the wake of the credit crisis, for example, we successfully represented numerous former executives of a major financial institution in arbitrations relating to claims for compensation. We have also assisted clients with disputes involving failure to honor compensation commitments, disputes over the purchase of securities, businesses seeking compensation for uncompleted contracts, and unfulfilled financing commitments.



# Feedback from the Courts

Throughout the firm's history, many courts have recognized the professional excellence and diligence of the firm and its members. A few examples are set forth below.

### *In re WorldCom, Inc. Securities Litigation*

*- The Honorable Denise Cote of the United States District Court for the Southern District of New York*

"I have the utmost confidence in plaintiffs' counsel…they have been doing a superb job…The Class is extraordinarily well represented in this litigation."

"The magnitude of this settlement is attributable in significant part to Lead Counsel's advocacy and energy…The quality of the representation given by Lead Counsel…has been superb…and is unsurpassed in this Court's experience with plaintiffs' counsel in securities litigation."

"Lead Counsel has been energetic and creative…Its negotiations with the Citigroup Defendants have resulted in a settlement of historic proportions."

\*          \*          \*

### *In re Clarent Corporation Securities Litigation*

*- The Honorable Charles R. Breyer of the United States District Court for the Northern District of California*

"It was the best tried case I've witnessed in my years on the bench…."

"[A]n extraordinarily civilized way of presenting the issues to you [the jury]…We've all been treated to great civility and the highest professional ethics in the presentation of the case…"

"These trial lawyers are some of the best I've ever seen."

\*          \*          \*

### *Landry's Restaurants, Inc. Shareholder Litigation*

*- Vice Chancellor J. Travis Laster of the Delaware Court of Chancery*

"I do want to make a comment again about the excellent efforts…put into this case…This case, I think, shows precisely the type of benefits that you can achieve for stockholders and how representative litigation can be a very important part of our corporate governance system…you hold up this case as an example of what to do."

\*          \*          \*

### *McCall V. Scott (Columbia/HCA Derivative Litigation)*

*- The Honorable Thomas A. Higgins of the United States District Court for the Middle District of Tennessee*

"Counsel's excellent qualifications and reputations are well documented in the record, and they have litigated this complex case adeptly and tenaciously throughout the six years it has been pending. They assumed an enormous risk and have shown great patience by taking this case on a contingent basis, and despite an early setback they have persevered and brought about not only a large cash settlement but sweeping corporate reforms that may be invaluable to the beneficiaries."



# Significant Recoveries

BLB&G has successfully identified, investigated, and prosecuted many of the most significant securities and shareholder actions in history, recovering billions of dollars on behalf of defrauded investors and obtaining groundbreaking corporate-governance reforms. These resolutions include eight recoveries of over $1 billion, more than any other firm in our field. Examples of cases with our most significant recoveries include:

## Securities Fraud Litigation

**Case:**           *In re WorldCom, Inc. Securities Litigation*

**Court:**          United States District Court for the Southern District of New York

**Highlights:**     $6.19 billion securities fraud class action recovery—the second largest in history; unprecedented recoveries from Director Defendants.

**Case Summary:** Investors suffered massive losses in the wake of the financial fraud and subsequent bankruptcy of former telecom giant WorldCom. This litigation alleged that WorldCom and others disseminated false and misleading statements to the investing public regarding its earnings and financial condition in violation of the federal securities and other laws. It further alleged a nefarious relationship between Citigroup subsidiary Salomon Smith Barney and WorldCom, carried out primarily by Salomon employees involved in providing investment banking services to WorldCom, and by WorldCom's former CEO and CFO. As Court-appointed Co-Lead Counsel representing Lead Plaintiff the New York State Common Retirement Fund, we obtained unprecedented settlements totaling more than $6 billion from the Investment Bank Defendants who underwrote WorldCom bonds, including a $2.575 billion cash settlement to settle all claims against the Citigroup Defendants. On the eve of trial, the 13 remaining "Underwriter Defendants," including J.P. Morgan Chase, Deutsche Bank, and Bank of America, agreed to pay settlements totaling nearly $3.5 billion to resolve all claims against them. Additionally, the day before trial was scheduled to begin, the former WorldCom Director Defendants agreed to pay over $60 million to settle the claims against them. An unprecedented first for outside directors, $24.75 million of that amount came out of the pockets of the individuals—20% of their collective net worth. *The Wall Street Journal*, in its coverage, profiled the settlement as having "shaken Wall Street, the audit profession and corporate boardrooms." After four weeks of trial, Arthur Andersen, WorldCom's former auditor, settled for $65 million. Subsequent settlements were reached with the former executives of WorldCom, and then with Andersen, bringing the total obtained for the Class to over $6.19 billion.

**Case:**           *In re Cendant Corporation Securities Litigation*

**Court:**          United States District Court for the District of New Jersey

**Highlights:**     $3.3 billion securities fraud class action recovery—the third largest in history; significant corporate governance reforms obtained.



**Summary:**   The firm was Co-Lead Counsel in this class action against Cendant Corporation, its officers and directors and Ernst & Young (E&Y), its auditors, for their role in disseminating materially false and misleading financial statements concerning the company's revenues, earnings and expenses for its 1997 fiscal year. As a result of companywide accounting irregularities, Cendant restated its financial results for its 1995, 1996, and 1997 fiscal years and all fiscal quarters therein. Cendant agreed to settle the action for $2.8 billion and to adopt some of the most extensive corporate governance changes in history. E&Y settled for $335 million. These settlements remain the largest sums ever recovered from a public company and a public accounting firm through securities class action litigation. BLB&G represented Lead Plaintiffs CalPERS, the New York State Common Retirement Fund, and the New York City Pension Funds, the three largest public pension funds in America, in this action.

**Case:**   *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation*

**Court:**   United States District Court for the Southern District of New York

**Highlights:**   $2.425 billion in cash; significant corporate governance reforms to resolve all claims. This recovery is by far the largest shareholder recovery related to the subprime meltdown and credit crisis; the single largest securities class action settlement ever resolving a Section 14(a) claim—the federal securities provision designed to protect investors against misstatements in connection with a proxy solicitation; the largest ever funded by a single corporate defendant for violations of the federal securities laws; the single largest settlement of a securities class action in which there was neither a financial restatement involved nor a criminal conviction related to the alleged misconduct; and one of the 10 largest securities class action recoveries in history.

**Summary:**   The firm represented Co-Lead Plaintiffs the State Teachers Retirement System of Ohio, the Ohio Public Employees Retirement System, and the Teacher Retirement System of Texas in this securities class action filed on behalf of shareholders of Bank of America Corporation (BAC) arising from BAC's 2009 acquisition of Merrill Lynch & Co. The action alleges that BAC, Merrill Lynch, and certain of the companies' current and former officers and directors violated the federal securities laws by making a series of materially false statements and omissions in connection with the acquisition. These violations included the alleged failure to disclose information regarding billions of dollars of losses Merrill had suffered before the BAC shareholder vote on the proposed acquisition, as well as an undisclosed agreement allowing Merrill to pay billions in bonuses before the acquisition closed despite these losses. Not privy to these material facts, BAC shareholders voted to approve the acquisition.

**Case:**   *In re Allianz Global Investors U.S. Litigation*

**Court:**   Cases primarily filed in the United States District Court for the Southern District of New York

**Highlights:**   Over $2 billion dollars recovered for investors in a series of more than 20 direct actions.



**Summary**: BLB&G prosecuted claims on behalf of institutional investors that suffered losses in connection with investments in the Allianz Structured Alpha Funds—a suite of investment products developed and overseen by Allianz Global Investors U.S.—due to Allianz's breaches of fiduciary and contractual duties. BLB&G negotiated settlements that returned over $2 billion to investors. Our firm filed a series of direct actions, including the first complaint in this matter on behalf of Arkansas Teacher Retirement System, and subsequently served as liaison counsel in more than 20 related actions.

Allianz's representations concerning the Alpha Funds were also investigated by the SEC and the U.S. Department of Justice. Allianz ultimately set aside over $6 billion to deal with government investigations and lawsuits resulting from the collapse of the Structured Alpha Funds.

**Case**: *In re Nortel Networks Corporation Securities Litigation (Nortel II)*

**Court**: United States District Court for the Southern District of New York

**Highlights**: Over $1.07 billion in cash and common stock recovered for the class.

**Summary**: This securities fraud class action charged Nortel Networks Corporation and certain of its officers and directors with violations of the Securities Exchange Act of 1934, alleging that the Defendants knowingly or recklessly made false and misleading statements with respect to Nortel's financial results during the relevant period. BLB&G clients the Ontario Teachers' Pension Plan Board and the Treasury of the State of New Jersey and its Division of Investment were appointed as Co-Lead Plaintiffs for the Class in one of two related actions (Nortel II), and BLB&G was appointed Lead Counsel for the Class. In a historic settlement, Nortel agreed to pay $2.4 billion in cash and Nortel common stock to resolve both matters. Nortel later announced that its insurers had agreed to pay $228.5 million toward the settlement, bringing the total amount of the global settlement to approximately $2.7 billion, and the total amount of the Nortel II settlement to over $1.07 billion.

**Case**: *In re Merck & Co., Inc. Securities Litigation*

**Court**: United States District Court, District of New Jersey

**Highlights**: $1.06 billion recovery for the class.

**Summary**: This case arises out of misrepresentations and omissions concerning life-threatening risks posed by the "blockbuster" COX-2 painkiller Vioxx, which Merck withdrew from the market in 2004. In January 2016, BLB&G achieved a $1.062 billion settlement on the eve of trial after more than 12 years of hard-fought litigation that included a successful decision at the United States Supreme Court. This settlement is the second-largest recovery ever obtained in the Third Circuit and one of the top securities recoveries of all time. BLB&G represented Lead Plaintiff the Public Employees' Retirement System of Mississippi.

# Firm Resume



**Case:**          *In re McKesson HBOC, Inc. Securities Litigation*

**Court:**         United States District Court for the Northern District of California

**Highlights:**    $1.05 billion recovery for the class.

**Summary:**       This securities fraud litigation was filed on behalf of purchasers of HBOC, McKesson, and McKesson HBOC securities, alleging that Defendants misled the investing public concerning HBOC's and McKesson HBOC's financial results. On behalf of Lead Plaintiff the New York State Common Retirement Fund, BLB&G obtained a $960 million settlement from the company, $72.5 million in cash from Arthur Andersen, and, on the eve of trial, a $10 million settlement from Bear Stearns & Co., with total recoveries reaching more than $1 billion.

**Case:**          *In re Wells Fargo & Company Securities Litigation*

**Court:**         United States District Court for the Southern District of New York

**Highlights:**    $1 billion recovery for the class, the top U.S. securities class action settlement of 2023, among the top six in the past decade, and among the top 17 of all time.

**Summary:**       In 2018, Wells Fargo's regulators imposed unprecedented consent orders on Wells Fargo designed to halt the bank's decades-long, fraudulent banking practices and rectify the severely deficient corporate oversight that allowed those fraudulent practices to develop and endure (the "2018 Consent Orders"). In this action, lead plaintiffs, represented by BLB&G as co-lead counsel, alleged that Wells Fargo and certain of its senior executives issued false and misleading statements to investors regarding the status of Wells Fargo's compliance with the 2018 Consent Orders, claiming that the bank had regulator-approved "plans" and that it was "in compliance" with the Orders. In reality, Wells Fargo had yet to submit to regulators an acceptable plan or schedule for overhauling the bank's compliance and oversight practices and was nowhere near meeting the regulators' requirements that were a predicate to lifting the severe measures imposed on the bank. Wells Fargo investors were harmed after a series of disclosures, including damning congressional hearings and reports, revealed the truth to the market that the bank had blatantly disregarded the basic requirements set forth in the 2018 Consent Orders. The $1 billion settlement was reached after three years of hard-fought litigation and was achieved with the assistance of a respected mediator, former U.S. District Judge Layn R. Phillips.

**Case:**          *HealthSouth Corporation Bondholder Litigation*

**Court:**         United States District Court for the Northern District of Alabama

**Highlights:**    $804.5 million in total recoveries.

**Summary:**       In this litigation, BLB&G was the appointed Co-Lead Counsel for the bond holder class, representing Lead Plaintiff the Retirement Systems of Alabama. This action arose from allegations that Birmingham-based HealthSouth Corporation overstated its earnings at the direction of its founder and former CEO Richard Scrushy. Subsequent revelations disclosed that the overstatement exceeded



over $2.4 billion, virtually wiping out all of HealthSouth's reported profits for the prior five years. A total recovery of $804.5 million was obtained in this litigation through a series of settlements, including an approximately $445 million settlement for shareholders and bondholders, a $100 million in cash settlement from UBS AG, UBS Warburg LLC, and individual UBS Defendants, and $33.5 million in cash from the company's auditor. The total settlement for injured HealthSouth bond purchasers exceeded $230 million, recouping over a third of bond purchaser damages.

| | |
|---|---|
| ***Case:*** | *In re Washington Public Power Supply System Litigation* |
| ***Court:*** | United States District Court for the District of Arizona |
| ***Highlights:*** | Over $750 million—the largest securities fraud settlement ever achieved at the time. |
| ***Summary:*** | BLB&G was appointed Chair of the Executive Committee responsible for litigating on behalf of the class in this action. The case was litigated for over seven years and involved an estimated 200 million pages of documents produced in discovery; the depositions of 285 fact witnesses and 34 expert witnesses; more than 25,000 introduced exhibits; six published district court opinions; seven appeals or attempted appeals to the Ninth Circuit; and a three-month jury trial, which resulted in a settlement of over $750 million—then the largest securities fraud settlement ever achieved. |

| | |
|---|---|
| ***Case:*** | *In re Lehman Brothers Equity/Debt Securities Litigation* |
| ***Court:*** | United States District Court for the Southern District of New York |
| ***Highlights:*** | $735 million in total recoveries. |
| ***Summary:*** | Representing the Government of Guam Retirement Fund, BLB&G successfully prosecuted this securities class action arising from Lehman Brothers Holdings' issuance of billions of dollars in offerings of debt and equity securities that were sold using offering materials that contained untrue statements and missing material information. |
| | After four years of intense litigation, Lead Plaintiffs achieved a total of $735 million in recoveries consisting of a $426 million settlement with underwriters of Lehman securities offerings, a $90 million settlement with former Lehman directors and officers, a $99 million settlement that resolves claims against Ernst & Young, Lehman's former auditor (considered one of the top 10 auditor settlements ever achieved), and a $120 million settlement that resolves claims against UBS Financial Services. This recovery is remarkable not only because of the difficulty in recovering assets when the issuer defendant is bankrupt, but also because no financial results were restated, and the auditors never disavowed the statements. |

| | |
|---|---|
| ***Case:*** | *In re Citigroup, Inc. Bond Action Litigation* |
| ***Court:*** | United States District Court for the Southern District of New York |
| ***Highlights:*** | $730 million cash recovery, the second largest recovery in a litigation arising from the financial crisis. |



***Summary*:**  In the years prior to the collapse of the subprime mortgage market, Citigroup issued 48 offerings of preferred stock and bonds. This securities fraud class action was filed on behalf of purchasers of Citigroup bonds and preferred stock alleging that these offerings contained material misrepresentations and omissions regarding Citigroup's exposure to billions of dollars in mortgage-related assets, the loss reserves for its portfolio of high-risk residential mortgage loans, and the credit quality of the risky assets it held in off-balance sheet entities known as "structured investment vehicles." After protracted litigation lasting four years, we obtained a $730 million cash recovery—the second largest securities class action recovery in a litigation arising from the financial crisis, and the second largest recovery ever in a securities class action brought on behalf of purchasers of debt securities. As Lead Bond Counsel for the Class, BLB&G represented Lead Bond Plaintiffs Minneapolis Firefighters' Relief Association, Louisiana Municipal Police Employees' Retirement System, and Louisiana Sheriffs' Pension and Relief Fund.

***Case*:**  *In re Schering-Plough Corporation/Enhance Securities Litigation; In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation*

***Court*:**  United States District Court for the District of New Jersey

***Highlights*:**  $688 million in combined settlements (Schering-Plough settled for $473 million; Merck settled for $215 million) in this coordinated securities fraud litigations filed on behalf of investors in Merck and Schering-Plough.

***Summary*:**  After nearly five years of intense litigation, just days before trial, BLB&G resolved the two actions against Merck and Schering-Plough, which stemmed from claims that Merck and Schering artificially inflated their market value by concealing material information and making false and misleading statements regarding their blockbuster anti-cholesterol drugs Zetia and Vytorin. Specifically, we alleged that the companies knew that their "ENHANCE" clinical trial of Vytorin (a combination of Zetia and a generic) demonstrated that Vytorin was no more effective than the cheaper generic at reducing artery thickness. The companies nonetheless championed the "benefits" of their drugs, attracting billions of dollars of capital. When public pressure to release the results of the ENHANCE trial became too great, the companies reluctantly announced these negative results, which we alleged led to sharp declines in the value of the companies' securities, resulting in significant losses to investors. The combined $688 million in settlements (Schering-Plough settled for $473 million; Merck settled for $215 million) is the second largest securities recovery ever in the Third Circuit, among the top 25 settlements of all time, and among the 10 largest recoveries ever in a case where there was no financial restatement. BLB&G represented Lead Plaintiffs Arkansas Teacher Retirement System, the Public Employees' Retirement System of Mississippi, and the Louisiana Municipal Police Employees' Retirement System.

***Case*:**  *In re Lucent Technologies, Inc. Securities Litigation*

***Court*:**  United States District Court for the District of New Jersey



*Highlights:*   $667 million in total recoveries; the appointment of BLB&G as Co-Lead Counsel is especially noteworthy as it marked the first time since the 1995 passage of the Private Securities Litigation Reform Act that a court reopened the lead plaintiff or lead counsel selection process to account for changed circumstances, new issues, and possible conflicts between new and old allegations.

*Summary:*   BLB&G served as Co-Lead Counsel in this securities class action, representing Lead Plaintiffs the Parnassus Fund, Teamsters Locals 175 & 505 D&P Pension Trust, Anchorage Police and Fire Retirement System, and the Louisiana School Employees' Retirement System. The complaint accused Lucent of making false and misleading statements to the investing public concerning its publicly reported financial results and failing to disclose the serious problems in its optical networking business. When the truth was disclosed, Lucent admitted that it had improperly recognized revenue of nearly $679 million in fiscal 2000. The settlement obtained in this case is valued at approximately $667 million, and is composed of cash, stock, and warrants.

*Case:*   *In re Wachovia Preferred Securities and Bond/Notes Litigation*

*Court:*   United States District Court for the Southern District of New York

*Highlights:*   $627 million recovery—among the largest securities class action recoveries in history; third-largest recovery obtained in an action arising from the subprime mortgage crisis.

*Summary:*   This securities class action was filed on behalf of investors in certain Wachovia bonds and preferred securities against Wachovia Corp., certain former officers and directors, various underwriters, and its auditor, KPMG. The case alleged that Wachovia provided offering materials that misrepresented and omitted material facts concerning the nature and quality of Wachovia's multibillion-dollar option-ARM (adjustable rate mortgage) "Pick-A-Pay" mortgage loan portfolio, and that Wachovia's loan loss reserves were materially inadequate. According to the Complaint, these undisclosed problems threatened the viability of the financial institution, requiring it to be "bailed out" during the financial crisis before it was acquired by Wells Fargo. The combined $627 million recovery obtained in the action is among the 20 largest securities class action recoveries in history, the largest settlement ever in a class action case asserting only claims under the Securities Act of 1933, and one of a handful of securities class action recoveries obtained where there were no parallel civil or criminal actions brought by government authorities. The firm represented Co-Lead Plaintiffs Orange County Employees Retirement System and Louisiana Sheriffs' Pension and Relief Fund in this action.

*Case:*   *In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations*

*Court:*   United States District Court for the District of Columbia

*Highlights:*   $612.4 million jury award for Fannie Mae and Freddie Mac investors in a unanimous trial verdict.

*Summary:*   BLB&G secured a $612.4 million jury award for Fannie Mae and Freddie Mac investors in a unanimous trial verdict against the Federal Housing Finance Agency (FHFA). The action challenged FHFA's decision to sweep the entire net worth of Fannie Mae and Freddie Mac to the U.S. Treasury, depriving



shareholders of significant value. The award came after two trials and 10 years of intense litigation and negotiations. The court also recently approved our request for prejudgment interest, adding approximately $198 million to the recovery for investors (pending entry of judgment).

| | |
|---|---|
| *Case:* | *Bear Stearns Mortgage Pass-Through Litigation* |
| *Court:* | United States District Court for the Southern District of New York |
| *Highlights:* | $500 million recovery—the largest recovery ever on behalf of purchasers of residential mortgage-backed securities. |
| *Summary:* | BLB&G served as Co-Lead Counsel in this securities action, representing Lead Plaintiffs the Public Employees' Retirement System of Mississippi. The case alleged that Bear Stearns & Company sold mortgage pass-through certificates using false and misleading offering documents. The offering documents contained false and misleading statements related to, among other things, the underwriting guidelines used to originate the mortgage loans underlying the certificates and the accuracy of the appraisals for the properties underlying the certificates. After six years of hard-fought litigation and extensive arm's-length negotiations, the $500 million recovery is the largest settlement in a U.S. class action against a bank that packaged and sold mortgage securities at the center of the 2008 financial crisis. |

| | |
|---|---|
| *Case:* | *Gary Hefler et al. v. Wells Fargo & Company et al.* |
| *Court:* | United States District Court for the Northern District of California |
| *Highlights* | $480 million recovery—the fourth largest securities settlement ever achieved in the Ninth Circuit. |
| *Summary:* | BLB&G served as Lead Counsel for the Court-appointed Lead Plaintiff Union Asset Management Holding, AG in this action, which alleged that Wells Fargo and certain current and former officers and directors of Wells Fargo made a series of materially false statements and omissions in connection with Wells Fargo's secret creation of fake or unauthorized client accounts in order to hit performance-based compensation goals. After years of presenting a business driven by legitimate growth prospects, U.S. regulators revealed in September 2016 that Wells Fargo employees were secretly opening millions of potentially unauthorized accounts for existing Wells Fargo customers. The Complaint alleged that these accounts were opened in order to hit performance targets and inflate the "cross-sell" metrics that investors used to measure Wells Fargo's financial health and anticipated growth. When the market learned the truth about Wells Fargo's violation of its customers' trust and failure to disclose reliable information to its investors, the price of Wells Fargo's stock dropped, causing substantial investor losses. |

| | |
|---|---|
| *Case:* | *In re Kraft Heinz Securities Litigation* |
| *Court:* | United States District Court for the Northern District of Illinois |



*Highlights:*  $450 million in total recoveries.

*Summary*:  BLB&G litigated claims against Kraft Heinz arising from the defendants' misstatements regarding the company's financial position, including the carrying value of Kraft's assets, the sustainability of Kraft's margins, and the success of recent cost-cutting strategies by the company. After overcoming defendants' motions to dismiss and conducting discovery involving the production of over 14.7 million pages of documents, the parties engaged in mediation and reached a settlement that represented a recovery of $450 million for impacted investors.

*Case:*  *Ohio Public Employees Retirement System v. Freddie Mac*

*Court:*  United States District Court for the Southern District of Ohio

*Highlights:*  $410 million settlement.

*Summary*:  This securities fraud class action was filed on behalf of the Ohio Public Employees Retirement System and the State Teachers Retirement System of Ohio alleging that Freddie Mac and certain of its current and former officers issued false and misleading statements in connection with the company's previously reported financial results. Specifically, the Complaint alleged that the Defendants misrepresented the company's operations and financial results by engaging in numerous improper transactions and accounting machinations that violated fundamental GAAP precepts in order to artificially smooth the company's earnings and hide earnings volatility. In connection with these improprieties, Freddie Mac restated more than $5 billion in earnings. A settlement of $410 million was reached in the case just as deposition discovery had begun and document review was complete.

*Case:*  *In re Refco, Inc. Securities Litigation*

*Court:*  United States District Court for the Southern District of New York

*Highlights:*  Over $407 million in total recoveries.

*Summary*:  The lawsuit arises from the revelation that Refco, a once-prominent brokerage, had for years secreted hundreds of millions of dollars of uncollectible receivables with a related entity controlled by Phillip Bennett, the company's Chairman and Chief Executive Officer. This revelation caused the stunning collapse of the company a mere two months after its initial public offering of common stock. As a result, Refco filed one of the largest bankruptcies in U.S. history. Settlements have been obtained from multiple company and individual defendants, resulting in a total recovery for the class of over $407 million. BLB&G represented Co-Lead Plaintiff RH Capital Associates LLC.

*Case:*  *In re Allergan, Inc. Proxy Violation Securities Litigation*

*Court:*  United States District Court for the Central District of California

*Highlights:*  Recovered over $250 million for investors while challenging an unprecedented insider trading scheme by billionaire hedge fund manager Bill Ackman.



**Summary:**   As alleged in groundbreaking litigation, billionaire hedge fund manager Bill Ackman and his Pershing Square Capital Management fund secretly acquired a near 10% stake in pharmaceutical concern Allergan as part of an unprecedented insider trading scheme by Ackman and Valeant Pharmaceuticals International. What Ackman knew—but investors did not—was that in the ensuing weeks, Valeant would be launching a hostile bid to acquire Allergan shares at a far higher price. Ackman enjoyed a massive instantaneous profit upon public news of the proposed acquisition, and the scheme worked for both parties as he kicked back hundreds of millions of his insider-trading proceeds to Valeant after Allergan agreed to be bought by a rival bidder. After a ferocious three-year legal battle over this attempt to circumvent the spirit of the U.S. securities laws, BLB&G obtained a $250 million settlement for Allergan investors, and created precedent to prevent similar such schemes in the future. The Plaintiffs in this action were the State Teachers Retirement System of Ohio, the Iowa Public Employees Retirement System, and Patrick T. Johnson.

# Corporate Governance and Shareholders' Rights

**Case:**   *Tornetta v. Musk*

**Court:**   Delaware Court of Chancery

**Highlights:**   Achieved a historic ruling rescinding Elon Musk's $55 billion compensation package at Tesla—the largest such package in history.

**Summary:**   BLB&G led a headline-grabbing shareholder derivative action against Elon Musk and certain Tesla board members challenging the $55 billion compensation plan granted to Musk—the largest such compensation plan in history. BLB&G served as lead trial counsel in this case on behalf of a Tesla stockholder. The firm litigated for more than four years, examined eight of the most critical witnesses—including Elon Musk himself—and presented a strong factual record to the Court. On January 30, 2024, in a historic decision, the court nullified Musk's entire $55 billion compensation package, finding that Tesla's board of directors had breached their fiduciary duty in structuring Musk's multi-tranched compensation.

**Case:**   *City of Monroe Employees' Retirement System, Derivatively on Behalf of Twenty-First Century Fox, Inc. v. Rupert Murdoch, et al.*

**Court:**   Delaware Court of Chancery

**Highlights:**   Landmark derivative litigation established unprecedented, independent Board-level council to ensure employees are protected from workplace harassment while recouping $90 million for the company's coffers.

**Summary:**   Before the birth of the #metoo movement, BLB&G led the prosecution of an unprecedented shareholder derivative litigation against Fox News parent 21st Century Fox arising from the systemic sexual and workplace harassment at the embattled network. After nearly 18 months of litigation,

discovery and negotiation related to the shocking misconduct and the Board's extensive alleged governance failures, the parties unveil a landmark settlement with two key components: 1) the first ever Board-level watchdog of its kind—the "Fox News Workplace Professionalism and Inclusion Council" of experts (WPIC)—majority independent of the Murdochs, the Company and Board; and 2) one of the largest financial recoveries—$90 million—ever obtained in a pure corporate board oversight dispute. The WPIC serves as a model for public companies in all industries. The firm represented 21st Century Fox shareholder the City of Monroe (Michigan) Employees' Retirement System.

| | |
|---|---|
| *Case:* | *In re McKesson Corporation Derivative Litigation* |
| *Court:* | United States District Court, Northern District of California, Oakland Division and Delaware Chancery Court |
| *Highlights:* | Litigation recovered $175 million and achieved substantial corporate governance reforms. |
| *Summary:* | BLB&G represented the Police & Fire Retirement System City of Detroit and Amalgamated Bank in this derivative class action arising from the company's role in permitting and exacerbating America's ongoing opioid crisis. The complaint, initially filed in Delaware Chancery Court, alleged that defendants breached their fiduciary duties by failing to adequately oversee McKesson's compliance with provisions of the Controlled Substances Act and a series of settlements with the Drug Enforcement Administration intended to regulate the distribution and misuse of controlled substances such as opioids. Even after paying fines and settlements in the hundreds of millions of dollars, McKesson was sued in the National Opioid Multidistrict Litigation. In May 2018, our clients joined a substantially similar action being litigated in California federal court. Acting as co-lead counsel, BLB&G played a major role in litigating the case, opposing a motion to stay the action by a special litigation committee, and engaging in extensive pretrial discovery. Ultimately, $175 million was recovered for the benefit of McKesson's shareholders in a settlement that also created substantial corporate-governance reforms to prevent a recurrence of McKesson's inadequate legal compliance efforts. |

| | |
|---|---|
| *Case:* | *UnitedHealth Group, Inc. Shareholder Derivative Litigation* |
| *Court:* | United States District Court for the District of Minnesota |
| *Highlights:* | Recovered over $920 million in ill-gotten compensation directly from former officers for their roles in illegally backdating stock options, while the company agreed to far-reaching reforms aimed at curbing future executive compensation abuses. |
| *Summary:* | This shareholder derivative action filed against certain current and former executive officers and members of the Board of Directors of UnitedHealth Group alleged that the Defendants obtained, approved and/or acquiesced in the issuance of stock options to senior executives that were unlawfully backdated to provide the recipients with windfall compensation at the direct expense of UnitedHealth and its shareholders. The firm recovered over $920 million in ill-gotten compensation |

**Firm Resume**

directly from the former officer Defendants—the largest derivative recovery in history. As feature coverage in *The New York Times* indicated, "investors everywhere should applaud [the UnitedHealth settlement]….[T]he recovery sets a standard of behavior for other companies and boards when performance pay is later shown to have been based on ephemeral earnings."  The Plaintiffs in this action were the St. Paul Teachers' Retirement Fund Association, the Public Employees' Retirement System of Mississippi, the Jacksonville Police & Fire Pension Fund, the Louisiana Sheriffs' Pension & Relief Fund, the Louisiana Municipal Police Employees' Retirement System and Fire & Police Pension Association of Colorado.

| | |
|---|---|
| *Case:* | *Caremark Merger Litigation* |
| *Court:* | Delaware Court of Chancery – New Castle County |
| *Highlights:* | Landmark Court ruling ordered Caremark's board to disclose previously withheld information, enjoined a shareholder vote on the CVS merger offer, and granted statutory appraisal rights to Caremark shareholders. The litigation ultimately forced CVS to raise its offer by $7.50 per share, equal to more than $3.3 billion in additional consideration to Caremark shareholders. |
| *Summary:* | Commenced on behalf of the Louisiana Municipal Police Employees' Retirement System and other shareholders of Caremark RX, this shareholder class action accused the company's directors of violating their fiduciary duties by approving and endorsing a proposed merger with CVS Corporation, while refusing to fairly consider an alternative transaction proposed by another bidder. In a landmark decision, the Court ordered the Defendants to disclose material information that had previously been withheld, enjoined the shareholder vote on the CVS transaction until the additional disclosures occurred, and granted statutory appraisal rights to Caremark's shareholders—forcing CVS to increase the consideration offered to shareholders by $7.50 per share in cash (over $3 billion in total). |

| | |
|---|---|
| *Case:* | *In re Pfizer Inc. Shareholder Derivative Litigation* |
| *Court:* | United States District Court for the Southern District of New York |
| *Highlights:* | Landmark settlement in which Defendants agreed to create a new Regulatory and Compliance Committee of the Pfizer Board to be supported by a dedicated $75 million fund. |
| *Summary:* | In the wake of Pfizer's agreement to pay $2.3 billion as part of a settlement with the U.S. Department of Justice to resolve civil and criminal charges relating to the illegal marketing of at least 13 of the company's most important drugs (the largest such fine ever imposed), this shareholder derivative action was filed against Pfizer's senior management and Board alleging they breached their fiduciary duties to Pfizer by, among other things, allowing unlawful promotion of drugs to continue after receiving numerous "red flags" that Pfizer's improper drug marketing was systemic and widespread. The suit was brought by Court-appointed Lead Plaintiffs Louisiana Sheriffs' Pension and Relief Fund and Skandia Life Insurance Company, Ltd. In an unprecedented settlement reached by the parties, the Defendants agreed to create a new Regulatory and Compliance Committee of the Pfizer Board of Directors (the "Regulatory Committee") to oversee and monitor Pfizer's compliance and drug |


marketing practices and to review the compensation policies for Pfizer's drug sales related employees.

| | |
|---|---|
| *Case:* | *Miller et al. v. IAC/InterActiveCorp et al.* |
| *Court:* | Delaware Court of Chancery |
| *Highlights:* | This litigation shut down efforts by controlling shareholders to obtain "dynastic control" of the company through improper stock class issuances, setting valuable precedent and sending a strong message to boards and management in all sectors that such moves will not go unchallenged. |
| *Summary:* | BLB&G obtained this landmark victory for shareholder rights against IAC/InterActiveCorp and its controlling shareholder and chairman, Barry Diller. For decades, activist corporate founders and controllers sought ways to entrench their position atop the corporate hierarchy by granting themselves and other insiders "supervoting rights." Diller laid out a proposal to introduce a new class of non-voting stock to entrench "dynastic control" of IAC within the Diller family. BLB&G litigation on behalf of IAC shareholders ended in capitulation with the Defendants effectively conceding the case by abandoning the proposal. This became a critical corporate governance precedent, given the trend of public companies to introduce "low" and "no-vote" share classes, which diminish shareholder rights, insulate management from accountability, and can distort managerial incentives by providing controllers voting power out of line with their actual economic interests in public companies. |

| | |
|---|---|
| *Case:* | *In re News Corp. Shareholder Derivative Litigation* |
| *Court:* | Delaware Court of Chancery – Kent County |
| *Highlights:* | An unprecedented settlement in which News Corp. recouped $139 million and enacted significant corporate governance reforms that combat self-dealing in the boardroom. |
| *Summary:* | Following News Corp.'s 2011 acquisition of a company owned by News Corp. Chairman and CEO Rupert Murdoch's daughter, and the phone-hacking scandal within its British newspaper division, BLB&G filed a derivative litigation on behalf of the company because of institutional shareholder concern with the conduct of News Corp.'s management. BLB&G ultimately obtained an unprecedented settlement in which News Corp. recouped $139 million for the company coffers and agreed to enact corporate governance enhancements to strengthen its compliance structure, the independence and functioning of its board, and the compensation and clawback policies for management. |



# Clients and Fees

We are firm believers in the contingency fee as a socially useful, productive and satisfying basis of compensation for legal services, particularly in litigation. Wherever appropriate, even with our corporate clients, we encourage retentions in which our fee is contingent on the outcome of the litigation. This way, it is not the number of hours worked that will determine our fee, but rather the result achieved for our client. The firm generally negotiates with our clients a contingent fee schedule specific to each litigation, and all fee proposals are approved by the client prior to commencing litigation, and ultimately by the Court.

Our clients include many large and well-known financial and lending institutions and pension funds, as well as privately held companies that are attracted to our firm because of our reputation, expertise, and fee structure. Most of the firm's clients are referred by other clients, law firms and lawyers, bankers, investors, and accountants. A considerable number of clients have been referred to the firm by former adversaries. We have always maintained a high level of independence and discretion in the cases we decide to prosecute. As a result, the level of personal satisfaction and commitment to our work is high.



# In the Public Interest

Bernstein Litowitz Berger & Grossmann LLP is guided by two principles: excellence in legal work and a belief that the law should serve a socially useful and dynamic purpose. Attorneys at the firm are active in academic, community, and pro bono activities and regularly participate as speakers and contributors to professional organizations. In addition, the firm endows a public interest law fellowship and sponsors an academic scholarship at Columbia Law School. Highlights of our community contributions include:

### Bernstein Litowitz Berger & Grossmann Public Interest Law Fellows

BLB&G is committed to fighting discrimination and effecting positive social change. In support of this commitment, the firm donates funds to Columbia Law School to create the Bernstein Litowitz Berger & Grossmann Public Interest Law Fellowship. This fund at Columbia Law School provides Fellows with 100% of the funding needed to make payments on their law school tuition loans so long as such graduates remain in the public interest law field. BLB&G Fellows can begin their careers free of any school debt if they make a long-term commitment to public interest law.

### Firm Sponsorship of Her Justice

BLB&G is a sponsor of Her Justice, a not-for-profit organization in New York City dedicated to providing pro bono legal representation to indigent women, principally vulnerable women, in connection with the myriad legal problems they face. The organization trains and supports the efforts of New York lawyers who provide pro bono counsel to these women. Several members and associates of the firm volunteer their time to help women who need divorces from abusive spouses or representation on issues such as child support, custody, and visitation. To read more about Her Justice, visit the organization's website at http://www.herjustice.org/.

### Firm Sponsorship of City Year New York

BLB&G is an active supporter of City Year New York, a division of AmeriCorps. The program was founded in 1988 as a means of encouraging young people to devote time to public service and unites a diverse group of volunteers for a demanding year of full-time community service, leadership development, and civic engagement. Through their service, corps members experience a rite of passage that can inspire a lifetime of citizenship and build a stronger democracy.

### Max W. Berger Pre-Law Program

The Max W. Berger Pre-Law Program was established at Baruch College to encourage outstanding minority undergraduates to pursue a meaningful career in the legal profession. Providing workshops, seminars, counseling, and mentoring to Baruch students, the program facilitates and guides them through the law school research and application process, and places them in appropriate internships and other pre-law working environments.



# Our Attorneys

BLB&G employs a dedicated team of attorneys, including partners, counsel, associates, and senior staff attorneys. Biographies for each of our attorneys can be found on our website by clicking here. On a case-by-case basis, we also make use of a pool of staff attorneys to supplement our litigation teams. The BLB&G team also includes investigators, financial analysts, paralegals, electronic-discovery specialists, information-technology professionals, and administrative staff. Biographies for our investigative team are available on our website by clicking here, and biographies for the leaders of our administrative departments are viewable here.

## Partners

**Max Berger**, Founding Partner, has grown BLB&G from a partnership of four lawyers in 1983 into what the *Financial Times* described as "one of the most powerful securities class action law firms in the United States" by prosecuting seminal cases which have increased market transparency, held wrongdoers accountable, and improved corporate business practices in groundbreaking ways.

Described by sources quoted in leading industry publication *Chambers USA* as "the smartest, most strategic plaintiffs' lawyer [they have] ever encountered," Max has litigated many of the firm's most high-profile and significant cases and secured some of the largest recoveries ever achieved in securities fraud lawsuits, negotiating seven of the largest securities fraud settlements in history, each in excess of a billion dollars: *Cendant* ($3.3 billion), *Citigroup-WorldCom* ($2.575 billion), *Bank of America/Merrill Lynch* ($2.4 billion), *JPMorgan Chase-WorldCom* ($2 billion), *Nortel* ($1.07 billion), *Merck* ($1.06 billion), and *McKesson* ($1.05 billion). Max's prosecution of the *WorldCom* litigation, which resulted in unprecedented monetary contributions from WorldCom's outside directors (nearly $25 million out of their own pockets on top of their insurance coverage) "shook Wall Street, the audit profession and corporate boardrooms." (*The Wall Street Journal*)

Max's cases have resulted in sweeping corporate governance overhauls, including the creation of an independent task force to oversee and monitor diversity practices (*Texaco* discrimination litigation), establishing an industry-accepted definition of director independence, increasing a board's power and responsibility to oversee internal controls and financial reporting (*Columbia/HCA*), and creating a Healthcare Law Regulatory Committee with dedicated funding to improve the standard for regulatory compliance oversight by a public company board of directors (*Pfizer*). His cases have yielded results which have served as models for public companies going forward.

Most recently, before the #metoo movement came alive, on behalf of an institutional investor client, Max handled the prosecution of an unprecedented shareholder derivative litigation against Fox News parent 21st Century Fox, Inc. arising from the systemic sexual and workplace harassment at the embattled network. After nearly 18 months of litigation, discovery, and negotiation related to the shocking misconduct and the Board's extensive alleged governance failures, the parties unveiled a landmark settlement with two key components: 1) the first ever Board-level watchdog of its kind—the "Fox News Workplace Professionalism and Inclusion Council" of experts (WPIC)—majority independent of the Murdochs, the Company and Board; and 2) one of the largest financial recoveries—$90 million—ever obtained in a pure corporate board oversight dispute. The WPIC is expected to serve as a model for public companies in all industries.



Max's work has garnered him extensive media attention, and he has been the subject of feature articles in a variety of major media publications. *The New York Times* highlighted his remarkable track record in an October 2012 profile entitled "Investors' Billion-Dollar Fraud Fighter," which also discussed his role in the *Bank of America/Merrill Lynch Merger* litigation. In 2011, Max was twice profiled by *The American Lawyer* for his role in negotiating a $627 million recovery on behalf of investors in the *In re Wachovia Corp. Securities Litigation,* and a $516 million recovery in *In re Lehman Brothers Equity/Debt Securities Litigation.* For his outstanding efforts on behalf of WorldCom investors, he was featured in articles in *BusinessWeek* and *The American Lawyer*, and *The National Law Journal* profiled Max (one of only eleven attorneys selected nationwide) in its annual 2005 "Winning Attorneys" section. He was subsequently featured in a 2006 *New York Times* article, "A Class-Action Shuffle," which assessed the evolving landscape of the securities litigation arena.

**One of the "100 Most Influential Lawyers in America"**

Widely recognized as the "Dean" of the U.S. plaintiff securities bar for his remarkable career and his professional excellence, Max has a distinguished and unparalleled list of honors to his name.

- He was selected as one of the "100 Most Influential Lawyers in America" by *The National Law Journal* for being "front and center" in holding Wall Street banks accountable and obtaining over $5 billion in cases arising from the subprime meltdown, and for his work as a "master negotiator" in obtaining numerous multi-billion dollar recoveries for investors.

- Described as a "standard-bearer" for the profession in a career spanning nearly 50 years, he is the recipient of *Chambers USA's* award for Outstanding Contribution to the Legal Profession. In presenting this prestigious honor, *Chambers* recognized Max's "numerous headline-grabbing successes," as well as his unique stature among colleagues—"warmly lauded by his peers, who are nevertheless loath to find him on the other side of the table." Max has been recognized as a litigation "star" and leading lawyer in his field by *Chambers* since its inception.

- *Benchmark Litigation* recently inducted him into its exclusive "Hall of Fame" and named him a 2021 "Litigation Star" in recognition of his career achievements and impact on the field of securities litigation.

- Upon its tenth anniversary, *Lawdragon* named Max a "Lawdragon Legend" for his accomplishments. He was recently inducted into *Lawdragon's* "Hall of Fame." He is regularly included in the publication's "500 Leading Lawyers in America" and "100 Securities Litigators You Need to Know" lists.

- *Law360* published a special feature discussing his life and career as a "Titan of the Plaintiffs Bar," named him one of only six litigators selected nationally as a "Legal MVP," and selected him as one of "10 Legal Superstars" nationally for his work in securities litigation.

- Max has been regularly named a "leading lawyer" in the *Legal 500 US Guide* where he was also named to their "Hall of Fame" list, as well as *The Best Lawyers in America®* guide.

- Max was honored for his outstanding contribution to the public interest by Trial Lawyers for Public Justice, which named him a "Trial Lawyer of the Year" Finalist in 1997 for his work in *Roberts, et al. v. Texaco*, the celebrated race discrimination case, on behalf of Texaco's African-American employees.

Max has lectured extensively for many professional organizations, and is the author and co-author of numerous articles on developments in the securities laws and their implications for public policy. He was chosen, along with



several of his BLB&G partners, to author the first chapter—"Plaintiffs' Perspective"—of Lexis/Nexis's seminal industry guide *Litigating Securities Class Actions*. An esteemed voice on all sides of the legal and financial markets, in 2008 the SEC and Treasury called on Max to provide guidance on regulatory changes being considered as the accounting profession was experiencing tectonic shifts shortly before the financial crisis.

Max also serves the academic community in numerous capacities. A long-time member of the Board of Trustees of Baruch College, he served as the President of the Baruch College Fund from 2015-2019 and now serves as its Chairman. In May 2006, he was presented with the Distinguished Alumnus Award for his contributions to Baruch College, and in 2019, was awarded an honorary Doctor of Laws degree at Baruch's commencement, the highest honor Baruch College confers upon an individual for non-academic achievement. The award recognized his decades-long dedication to the mission and vision of the College, and in bestowing it, Baruch's President described Max as "one of the most influential individuals in the history of Baruch College." Max established the Max Berger Pre-Law Program at Baruch College in 2007.

A member of the Dean's Council to Columbia Law School as well as the Columbia Law School Public Interest/Public Service Council, Max has taught Profession of Law, an ethics course at Columbia Law School, and serves on the Advisory Board of Columbia Law School's Center on Corporate Governance. In February 2011, Max received Columbia Law School's most prestigious and highest honor, "The Medal for Excellence." This award is presented annually to Columbia Law School alumni who exemplify the qualities of character, intellect, and social and professional responsibility that the Law School seeks to instill in its students. As a recipient of this award, Max was profiled in the Fall 2011 issue of *Columbia Law School Magazine.* Max is a member of the American Law Institute and an Advisor to its Restatement Third: Economic Torts project. Max recently endowed the Max Berger '71 Public Interest/Public Service Fellows Program at Columbia Law School. The program provides support for law students interested in pursuing careers in public service. Max and his wife, Dale, previously endowed the Dale and Max Berger Public Interest Law Fellowship at Columbia Law School and, under Max's leadership, BLB&G also created the Bernstein Litowitz Berger & Grossmann Public Interest Law Fellowship at Columbia.

Among numerous charitable and volunteer works, Max is a significant and long-time contributor to Her Justice, a non-profit organization in New York City dedicated to providing *pro bono* legal representation to indigent women, principally survivors of intimate partner violence, in connection with the many legal problems they face. In recognition of their personal support of the organization, Max and his wife, Dale Berger, were awarded the "Above and Beyond Commitment to Justice Award" by Her Justice in 2021 for being steadfast advocates for women living in poverty in New York City. In addition to his personal support of Her Justice, Max has ensured BLB&G's long-time involvement with the organization. Max is also an active supporter of City Year New York, a division of AmeriCorps, dedicated to encouraging young people to devote time to public service. In July 2005, he was named City Year New York's "Idealist of the Year," for his commitment to, service for, and work in the community. A celebrated photographer, Max has held two successful photography shows that raised hundreds of thousands of dollars for City Year and Her Justice.

**Education:** Columbia Law School, 1971, J.D., Editor of the *Columbia Survey of Human Rights Law*; Baruch College-City University of New York, 1968, B.B.A., Accounting

**Bar Admissions:** New York; United States District Court for the Eastern District of New York; United States District Court for the Southern District of New York; United States Court of Appeals for the Second Circuit; United States



Court of Appeals for the Third Circuit; United States Court of Appeals for the Sixth Circuit; Supreme Court of the United States

**John Rizio-Hamilton** is Co-Head of BLB&G's Securities Litigation Department. One of America's top shareholder litigators, John has recovered billions of dollars for investors. Highlights of John's experience include the following: • Led the trial team that recovered $240 million in the Signet Jewelers Securities Litigation, a landmark case that marks the first successful resolution of a securities fraud class action based on allegations of sexual harassment. • Key part of the trial team that prosecuted the Bank of America Securities Litigation, which settled for $2.425 billion. This is the largest securities class action recovery related to the subprime meltdown, and one of the top securities litigation recoveries in history. • Served as counsel on behalf of the institutional investor plaintiffs in the Citigroup Bond Litigation, which settled for $730 million. This is the second largest recovery ever in a securities class action brought on behalf of purchasers of debt securities. • Member of the team that prosecuted the Wachovia Corp. Bond/Notes Litigation, in which the firm recovered $627 million, one of the 15 largest securities class action recoveries in history. • Key member of the team that recovered $150 million for investors in the JPMorgan Chase & Co. Securities Litigation, a securities fraud class action arising out of the trading activities of the so-called "London Whale." In addition to his direct litigation responsibilities, John is responsible for the firm's client outreach in Canada, where he advises institutional investor clients on potential securities fraud and investor claims. John also manages the firm's settlements and claims administration department, which is responsible for obtaining court approval of all settlements and distributing the proceeds to class members. For his remarkable accomplishments, John was named a "Litigation Trailblazer" by The National Law Journal. He has been recognized as a "Litigation Star" by Benchmark Litigation, and by Law360 as a "Rising Star," a "Legal MVP," and one of the country's "Top Attorneys Under 40." Before joining BLB&G, John clerked for the Honorable Chester J. Straub of the United States Court of Appeals for the Second Circuit, and the Honorable Sidney H. Stein of the United States District Court for the Southern District of New York.

**Education:** Brooklyn Law School, 2004, J.D., *summa cum laude*, Editor-in-Chief of the Brooklyn Law Review; first-place winner of the J. Braxton Craven Memorial Constitutional Law Moot Court Competition; Johns Hopkins University, 1997, B.A., with honors

**Bar Admissions:** New York; United States District Court for the Southern District of New York

**Hannah Ross** has over two decades of experience as a civil and criminal litigator. A former prosecutor, she has been a key member and leader of trial teams that have recovered billions of dollars for investors.

Hannah is widely recognized by industry observers for her professional achievements, including by the leading industry ranking guide *Chambers USA,* in which she was recognized as a "notable practitioner" in the Nationwide Securities Litigation Plaintiff category. Named a "Litigation Star," a "Top U.S. Woman Litigator" and one of the "Top 250 Women in Litigation" in the nation by *Benchmark Litigation*, she has earned praise as one of the elite in the field. Hannah has been recognized by *The National Law Journal* as a member of the "Elite Women of the Plaintiffs' Bar" list three times and as a "Litigation & Plaintiffs' Lawyer Trailblazer," named a New York "Super Lawyer" by Thomson Reuter's Super Lawyers magazine, honored as a "Titan of the Plaintiffs Bar" by legal newswire *Law360,* and named one of the top female litigators in the country (1 of 9 finalists for its "Best in Litigation" category) by *Euromoney/Legal Media Group*. She has also been named to an exclusive group of notable practitioners by *Legal 500* for her



achievements, and included on the lists of the "500 Leading Lawyers in America" and "500 Leading Plaintiff Financial Lawyers" compiled by leading industry publication *Lawdragon*.

Hannah is a member of the firm's Executive Committee. In addition to her direct litigation responsibilities, she is one of the senior partners at the firm responsible for client development and client relations. A significant part of her practice is dedicated to initial case evaluation and counseling the firm's institutional investor clients on potential claims. Hannah is also one of the partners who oversees the firm's Global Securities and Litigation Monitoring Team, which monitors global equities traded in non-U.S. jurisdictions on prospective and pending international securities matters.  In that capacity, she advises the firm's institutional investor clients on their options to recover losses incurred on securities purchased in non-U.S. markets. Hannah is the Chair of the firm's Diversity Committee and Co-Chair of the firm's Forum for Institutional Investors and Women's Forum. She serves on the Corporate Leadership Committee of the New York Women's Foundation and recently concluded a three-year term on the Council of Institutional Investors' Market Advisory Council.

Hannah led the BLB&G team that recovered nearly $2 billion for 35 institutions that invested in the Allianz Structured Alpha Funds. She was a senior member of the team that prosecuted *In re Bank of America Securities Litigation*, which resulted in a landmark settlement shortly before trial of $2.425 billion, one of the largest securities recoveries ever obtained, and by far the largest recovery achieved in a litigation arising from the financial crisis.  Most recently, she was the lead partner in the securities class action arising from the failure of major mid-Atlantic bank Wilmington Trust, which settled for $210 million.  Hannah was also a senior member of the trial team that prosecuted the litigation arising from the collapse of former leading brokerage MF Global, which recovered $234.3 million on behalf of investors. In addition, she led the prosecution against Washington Mutual and certain of its former officers and directors for alleged fraudulent conduct in the thrift's home lending operations, an action which settled for $216.75 million and represents one of the largest settlements achieved in a case related to the fallout of the subprime crisis and the largest recovery ever achieved in a securities class action in the Western District of Washington. Hannah was also a key member of the team prosecuting *In re The Mills Corporation Securities Litigation*, which settled for $202.75 million, one of the largest recovery ever achieved in a securities class action in Virginia and the Fourth Circuit.

She has been a member of the trial teams in numerous other major securities litigations resulting in recoveries for investors in excess of $6 billion.  These include securities class actions against Nortel Networks, New Century Financial Corporation, and the Federal Home Loan Mortgage Corporation ("Freddie Mac"), as well as *In re Altisource Portfolio Solutions S.A. Securities Litigation, In re DFC Global Corp. Securities Litigation, In re Tronox Securities Litigation, In re Delphi Corporation Securities Litigation, In re Affiliated Computer Services, Inc. Derivative Litigation, In re OM Group, Inc. Securities Litigation,* and *In re BioScrip, Inc. Securities Litigation.*

Hannah has also served as an adjunct faculty member in the trial advocacy program at the Dickinson School of Law of the Pennsylvania State University. Before joining BLB&G, Hannah was a prosecutor in the Massachusetts Attorney General's Office as well as an Assistant District Attorney in the Middlesex County (Massachusetts) District Attorney's Office.

**Education:** Penn State Dickinson School of Law, 1998, J.D., Woolsack Honor Society; Comments Editor, Dickinson Law Review; D. Arthur Magaziner Human Services Award; Cornell University, 1995, B.A., *cum laude*

**Bar Admissions:** New York; Massachusetts; United States District Court for the Southern District of New York; United States Court of Appeals for the Second Circuit



**Adam Wierzbowski** has represented shareholders in some of the most significant investor litigations throughout the United States. His work has included successes at the trial and appellate levels in several high-profile class actions. These include the following recoveries on behalf of investors: • Adam led the BLB&G trial team that recently achieved a $612 million jury verdict for investors in In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations. The case arose out of the federal government's decision in 2012 to sweep to the U.S. Treasury all of the net worth of Fannie Mae and Freddie Mac. • Adam was a senior member of the team that recovered over $1.06 billion on behalf of investors in In re Merck Vioxx Securities Litigation, which arose out of the Defendants' alleged misrepresentations about the cardiovascular safety of Merck's painkiller Vioxx. The case settled just months before trial and after a unanimous victory for investors at the U.S. Supreme Court. • In the UnitedHealth Derivative Litigation, which involved executives' illegal backdating of stock options, Adam helped recover in excess of $920 million from the individual Defendants. • Adam was also a senior member of the team that achieved total settlements of $688 million on behalf of investors in In re Schering-Plough Corp./ENHANCE Securities Litigation and In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation. The cases related to Schering and Merck's alleged misrepresentations about anti-cholesterol drugs Vytorin and Zetia. • In the securities class action against Wells Fargo & Co. related to its fake accounts scandal, Adam was a senior member of the team that obtained $480 million for investors. • Adam also represented investors in the $300 million securities litigation settlement against General Motors stemming from GM's delayed recall of vehicles with defective ignition switches. Adam also helped to obtain significant recoveries on behalf of investors in Minneapolis Firefighters' Relief Association v. Medtronic, Inc. et al. ($85 million recovery); In re Myriad Genetics, Inc. Securities Litigation ($77.5 million recovery pending final approval); and Key West Police & Fire Pension Fund v. Ryder System, Inc. ($45 million recovery pending preliminary approval). He is also currently a member of the teams prosecuting In re EQT Corporation Securities Litigation; Allegheny County Employees' Retirement System, et al. v. Energy Transfer LP, et al.; and In re Celgene Corporation Securities Litigation. © 2024 Bernstein Litowitz Berger & Grossmann LLP All Rights Reserved. - 2 - Adam has been recognized by various publications for his accomplishments in the field. He has been named multiple times over to Benchmark Litigation's "40 & Under Hot List," as one of the "500 Leading Plaintiff Financial Lawyers" by Lawdragon, and to Thomson Reuter's Super Lawyers New York Metro edition, including designations as a New York "Rising Star." No more than 2.5% of the lawyers in New York are selected to receive the "Rising Star" honor each year.

**Education:** George Washington University Law School, 2003, J.D., with honors, Notes Editor for The George Washington International Law Review; Member of the Moot Court Board; Dartmouth College, 2000, B.A., *magna cum laude*

**Bar Admissions:** New York; United States District Court for the Southern District of New York; United States District Court for the Eastern District of New York; United States District Court for the Eastern District of Michigan; United States Court of Appeals for the Second Circuit; United States Court of Appeals for the Third Circuit; United States Court of Appeals for the Fifth Circuit; United States Court of Appeals for the Sixth Circuit; United States Court of Appeals for the Seventh Circuit; United States Court of Appeals for the Eighth Circuit; United States Court of Appeals for the Ninth Circuit; Supreme Court of the United States



# Senior Counsel

**John Esmay** prosecutes securities fraud and shareholder rights litigation on behalf of the firm's institutional clients. John has worked on federal securities litigations that have returned more than $3 billion to defrauded investors. He has deep experience with complex litigation, and has prepared and participated in trials and hearings in federal and state courtrooms around the country from California to New York. He has also taken part in private arbitration proceedings as well as disciplinary hearings before securities regulatory organizations such as the SEC and FINRA. John graduated *magna cum laude* from Brooklyn Law School, where he served on the Journal of Law and Policy. He received his Bachelor of Science degree in physics from Pomona College. While attending Brooklyn Law School, John interned for the Honorable Edward R. Korman, and later clerked for the Honorable William H. Pauley III. Prior to attending law school, John worked as a securities broker at the investment banking subsidiary of a prominent bank.

**Education:** Brooklyn Law School, 2007, J.D., *magna cum laude*; Pomona College, 1998, B.A., Physics

**Bar Admissions**: New York; United States District Court for the Southern District of New York; United States District Court for the Eastern District of New York


**John MIlls'** practice focuses on negotiating, documenting, and obtaining court approval of the firm's securities, merger, and derivative settlements.

Over the past decade, John was actively involved in finalizing the following settlements, among others: *In re Wachovia Preferred Sec. and Bond/Notes Litig.* (S.D.N.Y.) ($627 million settlement); *In re Wilmington Trust Sec. Litig.* (D. Del.) ($210 million settlement); *In re Freeport-McMoRan Copper & Gold Inc. Derivative Litig.* (Del. Ch.) ($153.75 million settlement); *Medina, et al. v. Clovis Oncology, Inc., et al.* (D. Colo.) ($142 million settlement); *In re News Corp. S'holder Litig.* (Del. Ch.) ($139 million recovery and corporate governance enhancements); *In re Mut. Funds Invest. Litig. (MFS, Invesco, and Pilgrim Baxter Sub-Tracks)* (D. Md.) ($127.036 million total recovery); *Fresno County Employees' Ret. Ass'n, et al. v. comScore, Inc., et al.* (S.D.N.Y.) ($110 million settlement); *In re El Paso Corp. S'holder Litig.* (Del. Ch.) ($110 million settlement); *In re Starz Stockholder Litig.* (Del. Ch.) ($92.5 million settlement); *The Dep't of the Treasury of the State of New Jersey and its Div. of Invest. v. Cliffs Natural Res. Inc., et al.* (N.D. Ohio) ($85 million settlement).

**Education:** Brooklyn Law School, 2000, J.D., *cum laude*, Member of *The Brooklyn Journal of International Law*; Carswell Merit Scholar recipient; Duke University, 1997, B.A.

**Bar Admission:**  New York; United States District Court for the Southern District of New York; United States District Court for the Eastern District of New York


# Associates

**Jimmy Brunetto** practices out of the firm's New York office, prosecuting securities fraud, corporate governance, and shareholder rights litigation on behalf of the firm's institutional investor clients. He is a member of the firm's case development and client advisory group, in which he, as part of a team of attorneys, financial analysts, and investigators, counsels public pension funds and other institutional investors on potential legal claims. Prior to joining the firm, Jimmy investigated and prosecuted securities fraud with the New York State Office of the Attorney General's



Investor Protection Bureau, where he worked on a number of high-profile matters. While in law school, Jimmy was honored as a John Marshall Harlan Scholar and served as a Staff Editor for the New York Law School Law Review.

**Education:** New York Law School, 2011, J.D., *cum laude*, John Marshall Harlan Scholar; Staff Editor, New York Law School Law Review; University of Florida, 2007, B.A., *cum laude*, Political Science; University of Florida, 2007, B.S.B.A, Finance

**Bar Admissions:** New York

**Mathews de Carvalho** practices out of the firm's New York office and prosecutes securities fraud, corporate governance, and shareholder rights litigation on behalf of the firm's institutional investor clients. Prior to joining the firm, Mathews was a member of the securities litigation group at Weil, Gotshal & Manges LLP, focusing on securities class actions and corporate governance suits. He was also involved with several pro bono projects, including a criminal defense appeal and work with the Innocence Project. Mathews received his J.D. from New York University School of Law, where he served as Competitions Executive Editor of the Moot Court Board and was a member of the Order of Barristers. He received degrees in Political Science and Sociology from Fordham University. After graduating from law school, Mathews served as a law clerk for the Honorable Matthew W. Brann of the U.S. District Court for the Middle District of Pennsylvania.

**Education:** New York University School of Law, 2019, J.D.; Fordham University, 2013, B.A., Political Science; Sociology

**Bar Admissions:** New York; United States District Court for the Southern District of New York

**Brenna Nelinson** [Former Associate] focused her practice on securities fraud, corporate governance and shareholder rights litigation.

She was a member of the firm's teams prosecuting securities class actions against Virtus Investment Partners and Signet Jewelers.

Prior to joining the firm, Brenna was a Litigation Associate at Hogan Lovells US LLP. She represented a variety of defendants in all aspects of corporate litigation.

**Education:** American University Washington College of Law, J.D., *cum laude,* 2014; Note & Comment Editor, *American University International Law Review;* Moot Court Honor Society; New York University, B.A., 2011, Individualized Study – Psychology and Philosophy

**Bar Admission**: Maryland

**Matthew Traylor** [Former Associate] practiced out of the New York office prosecuting securities fraud, corporate governance, and shareholder rights litigation on behalf of the firm's institutional investor clients.

Prior to joining the firm, Matthew was an associate at Cahill Gordon & Reindel where he specialized in complex litigation and investigations, including: securities, antitrust and complex commercial litigation, as well as FCPA compliance and internal investigations.

While attending law school, Matthew served as Vice President of the Black Law Student Association. In addition, he was also a member of the Public Interest Law Union, and a 2L Representative for the American Constitutional Society.



**Education:** Cornell Law School, J.D., 2017, General Editor, *Cornell Journal of Law and Public Policy*; Binghamton University, B.A., 2014

**Bar Admissions:** New York, US Court of Appeals for the Second Circuit

**Emily Tu** practices out of the firm's New York office and prosecutes securities fraud, corporate governance, and shareholder rights litigation on behalf of the firm's institutional investor clients. Prior to her role at BLB&G, Emily worked as a Litigation Associate at Cahill Gordon & Reindel LLP, where she focused on securities, antitrust, and commercial litigation. She also maintained an active pro bono practice, including representation of indigent clients in domestic violence and federal criminal prosecution cases. Emily received her J.D. from Columbia Law School, where she served as Senior Editor of the Columbia Law Re

view and led the U-Visa Project. During this time, she also interned for various public interest and public service organizations, including the New Jersey Institute for Social Justice, the Legal Aid Society's Special Litigation & Law Reform Unit, and the New York City Law Department's Affirmative Litigation Division. Emily graduated summa *cum laude* from Princeton University with a B.A. in Comparative Literature.

**Education:** Columbia Law School, 2019, J.D.; Princeton University, 2016, B.A., *summa cum laude*, Comparative Literature

**Bar Admissions:** New York; United States District Court for the Southern District of New York

# Senior Staff Attorney

**Stephen Imundo** is a senior staff attorney in the New York office, and primarily provides electronic discovery assistance and support in litigation of securities fraud-related matters. He has led discovery teams of over 25 attorneys on multiple occasions and worked on some of the firm's most significant cases, including Citigroup and the General Motors litigation. Early in his legal career Stephen joined up with the firm Schoengold, Sporn, Laitman & Lometti where he focused on securities fraud class action litigations, and worked side by side with BLB&G attorneys on the Worldcom case. He graduated from Fordham University School of Law where he was a recipent of the Archibald R. Murray Public Service Award and was the associate editor of the Fordham Environmental Law Journal.

**Education:** Fordham University School of Law, 2002, J.D., Archibald R. Murray Public Service Award, Associate Editor Fordham Environmental Law Journal; Mercy College, 1996, B.S., *summa cum laude*

**Bar Admissions**: New York; Connecticut

# Staff Attorneys

**Robert Blauvelt** has worked on several matters at BLB&G, including *In re CenturyLink Sales Practices and Securities Litigation; Lehigh County Employees' Retirement System v. Novo Nordisk A/S et al.;* and *City of Sunrise General Employees' Retirement Plan v. FleetCor Technologies, Inc., et al.*



Prior to joining the firm, Rob was a contract attorney at Milberg LLP where he worked on several antitrust matters. Rob has also worked at Quinn Emanuel Urquhart & Sullivan LLP where he worked on complex litigations involving collateralized debt obligations and residential mortgage-backed securities.

**Education:** New England School of Law, J.D., 2005; Montclair State University, M.A., 2015

**Bar Admissions**: New York, New Jersey

**Alexa Butler** has worked on numerous matters at BLB&G, including *In re Bank of New York Mellon Corp. Forex Transactions Litigation; In re JPMorgan Chase & Co. Securities Litigation; In re Merck & Co., Inc. Securities Litigation (VIOXX-related); In re MBIA Inc. Securities Litigation; In re Washington Mutual, Inc. Securities Litigation; In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litigation (Bond Action); In re Refco, Inc. Securities Litigation;* and *Affiliated Computer Services, Inc. Shareholder Derivative Litigation*.

Prior to joining the firm in 2007, Alexa was a contract attorney at Whatley Drake & Kallas, LLC.

**Education:** St. John's University School of Law, J.D., 1997; Georgia Institute of Technology, B.S., 1993

**Bar Admission**: New York

**Jodena P. Carbone** [Former Staff Attorney] worked on *Key West Police & Fire Pension Fund v. Ryder System, Inc.*; and *In re Turquoise Hill Resources Ltd. Securities Litigation*.

Prior to joining the firm, Jodena worked as an e-discovery paralegal for several law firms including Ballard Spahr, Klehr Harrison and Pepper Hamilton.

**Education:** Rutgers School of Law, J.D., 2013; Holy Family University, M.A., 2009; Temple University, B.B.A., 1988

**Bar Admission:** Pennsylvania

**Christopher Clarkin** [Former Staff Attorney] worked on numerous matters at BLB&G, including *In re Signet Jewelers Limited Securities Litigation; In re SunEdison, Inc. Securities Litigation; Hefler et al. v. Wells Fargo & Company et al.; Fresno County Employees' Retirement Association v. comScore, Inc.; In re Wilmington Trust Securities Litigation; In re Salix Pharmaceuticals, Ltd. Securities Litigation; West Palm Beach Police Pension Fund v. DFC Global Corp.; In re NII Holdings, Inc. Securities Litigation; In re Facebook, Inc. IPO Securities and Derivative Litigation; In re Bank of New York Mellon Corp. Forex Transactions Litigation; SMART Technologies, Inc. Shareholder Litigation; In re Citigroup Inc. Bond Litigation; In re Pfizer Inc. Shareholder Derivative Litigation;* and *In Re Plantronics, Inc. Securities Litigation*.

Prior to joining the firm in 2010, Chris worked as a contract attorney on several large-scale litigations.

**Education**: New York Law School, J.D., 2006; Trinity College, B.A., 2000

**Bar Admissions**: New York; Connecticut

**Michelle Collison** [Former Staff Attorney] worked on *Key West Police & Fire Pension Fund v. Ryder System, Inc.*; and *In re The Boeing Company Aircraft Securities Litigation.*

Prior to joining the firm, Michelle worked as an e-discovery contract attorney for several law firms.



**Education:** Hugh Wooding Law School, Trinidad, Legal Education Certificate, 2000; University of Guyana, LL.B., 1998

**Bar Admission:** New York

**Giorgi Dogonadze** [Former Staff Attorney] joined the BLB&G Staff Attorney team in September 2022 and worked on *Key West Police & Fire Pension Fund v. Ryder System, Inc.*

Prior to joining the firm, Giorgi worked as an e-discovery contract attorney for several law firms.

**Education:** New York Law School, J.D., 2014; College of Staten Island, B.A., 2008

**Bar Admission:** New York

**George Doumas** has worked on numerous matters at BLB&G, including *City of Sunrise General Employees' Retirement Plan v. FleetCor Technologies, Inc., et al.; In re SCANA Corporation Securities Litigation; St. Paul Teachers' Retirement Fund Association v. HeartWare International, Inc.; Hefler et al. v. Wells Fargo & Company et al.; In re NII Holdings, Inc. Securities Litigation; General Motors Securities Litigation; In re Bank of New York Mellon Corp. Forex Transactions Litigation; JPMorgan Mortgage Pass-Through Litigation; In re Citigroup Inc. Bond Litigation; In re Huron Consulting Group, Inc. Securities Litigation;* and *In re Bristol-Myers Squibb Co. Securities Litigation*.

Prior to joining the firm in 2008, George was a contract attorney for several law firms, where he worked on investigations relating to subprime mortgages and collateralized debt obligations, and other complex litigation George began his career representing clients in civil and bankruptcy matters.

**Education:** Southern New England School of Law, J.D., 1997; St. John' s University, B.S., Accounting, 1994

**Bar Admissions:** Maryland; Massachusetts

**Barbara Klinger** joined the BLB&G Staff Attorney team in February 2023 and worked on *Key West Police & Fire Pension Fund v. Ryder System, Inc.*

Prior to joining the firm, Barbara was a Staff Attorney with Shearman & Sterling engaged in civil litigation. Previously, Barbara was a Compliance Consultant with UBS Financial Services focused on anti-money laundering due diligence.

**Education:** New York Law School, J.D., 2003; Oberlin College, East Asian Studies, B.A., 1984

**Bar Admission:** New York

**Jed Koslow** [Former Staff Attorney] worked on numerous matters at BLB&G, including *Lehigh County Employees' Retirement System v. Novo Nordisk A/S et al.; City of Sunrise General Employees' Retirement Plan v. FleetCor Technologies, Inc., et al.; General Motors Securities Litigation; In re Bank of New York Mellon Corp. Forex Transactions Litigation; JPMorgan Mortgage Pass-Through Litigation; In re Merck & Co., Inc. Securities Litigation (VIOXX-related); Dexia Holdings, Inc. v. JP Morgan; In re Schering-Plough Corp./ENHANCE Securities Litigation;* and *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation*.

Prior to joining the firm, Jed was Of Counsel at Lebowitz Law Office, LLC.

**Education:** Brooklyn Law School, J.D., 2006; Wesleyan University, B.A., 1999

**Firm Resume**



- 34 -

**Bar Admission:** New York

**Palwasha Raqib** joined the BLB&G Staff Attorney team in May 2022.

Prior to joining the firm, Palwasha was a Staff Attorney at Milbank, Tweed, Hadley & McCoy and Quinn Emanuel Urquhart & Sullivan working on commercial litigation matters. Previously, Palwasha was an e-discovery attorney with Sullivan and Cromwell working on intellectual property matters.

**Education**: Seton Hall University School of Law, J.D., 2006; Wheaton College, B.A., 2000

**Bar Admission**: New York

**Renee Tamraz** joined the BLB&G Staff Attorney team in September 2022 and worked on *Key West Police & Fire Pension Fund v. Ryder System, Inc.*

Prior to joining the firm, Renee worked as an e-discovery contract attorney for several law firms.

**Education:** University of California, Hastings College of Law, J.D., 2004; London School of Economics, UK, M.Sc., 2001; New York University, B.A., 1999

**Bar Admission:** California

# Exhibit 6B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| STATE OF ALASKA, ALASKA PERMANENT FUND, THE CITY OF FORT LAUDERDALE GENERAL EMPLOYEES' RETIREMENT SYSTEM, and THE CITY OF PLANTATION POLICE OFFICERS PENSION FUND, On Behalf of Themselves and All Others Similarly Situated, | Civil Action No. 1:20-cv-22109-JB |
| *Plaintiffs,* | |
| v. | |
| RYDER SYSTEM, INC., ROBERT E. SANCHEZ, ART A. GARCIA, and DENNIS C. COOKE, | |
| *Defendants.* | |

**DECLARATION OF ROBERT D. KLAUSNER ON BEHALF OF KLAUSNER, KAUFMAN, JENSEN & LEVINSON IN SUPPORT OF LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

I, ROBERT D. KLAUSNER, declare as follows:

1.      I am a principal of the law firm of Klausner, Kaufman, Jensen & Levinson ("Klausner Kaufman"). I submit this declaration in support of Lead Counsel's motion for an award of attorneys' fees and litigation expenses in the above-captioned action ("Action").[1]   Unless otherwise stated, I have personal knowledge of the facts set forth herein and, if called upon, could and would testify thereto.

2.      My firm acted as Liaison Counsel for Lead Plaintiffs and the Settlement Class in the Action. In that capacity, we worked with Lead Counsel on the litigation, including preparing

---

[1] All capitalized terms that are not otherwise defined herein shall have the meanings set forth in the Stipulation and Agreement of Settlement dated May 19, 2023 (ECF No. 111-1).

for and participating in court conferences; reviewing pleadings, briefs, and communications with the Court; preparing for and defending depositions; and preparing for and participating in the mediation process. We also advised Lead Counsel regarding local practice, procedures, and requirements, and served as the principal contact between Lead Plaintiffs and the Court.

3. The schedule attached hereto as Exhibit 1 is a detailed summary of the amount of time spent by each Klausner Kaufman attorney who devoted ten (10) or more hours to the Action from its inception through and including July 31, 2024, and the lodestar calculation for those individuals based on their current hourly rates. The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by Klausner Kaufman. All time expended in preparing this application for attorneys' fees has been excluded.

4. The number of hours expended by Klausner Kaufman in the Action, from inception through July 31, 2024, as reflected in Exhibit 1, is 170.7. The lodestar for my firm, as reflected in Exhibit 1, is $128,025.

5. The hourly rates for the personnel set forth in Exhibit 1 are the same as the regular rates for their services in securities litigation and certain non-contingency matters. My firm's hourly rates are largely based upon a combination of the title, the specific years of experience for each attorney and professional support staff employee, as well as market rates for practitioners in the field. These hourly rates are the same as, or comparable to, rates submitted by Klausner Kaufman and accepted by courts in other complex contingent class actions for purposes of "cross-checking" lodestar against a proposed fee based on the percentage-of-the-fund method, as well as determining a reasonable fee under the lodestar method.

2

6.      I believe that the number of hours expended and the services performed by the attorneys at Klausner Kaufman were reasonable and necessary for the effective and efficient prosecution and resolution of the Action.

7.      With respect to the standing of my firm, attached hereto as Exhibit 2 is a firm résumé, which includes information about my firm and biographical information concerning the firm's attorneys who worked on this matter.

I declare, under penalty of perjury, that the foregoing facts are true and correct. Executed on August __8__, 2024.

Robert D. Klausner

3

**EXHIBIT 1**

*State of Alaska et al. v. Ryder System, Inc. et al.,*
Civil Action No. 1:20-cv-22109-JB (S.D. Fla.)

**KLAUSNER, KAUFMAN, JENSEN & LEVINSON**

**TIME REPORT**

From Inception Through July 31, 2024

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Partners** | | | |
| Robert D. Klausner | 80.3 | $750 | $60,225 |
| Stuart A. Kaufman | 90.4 | $750 | $67,800 |
| | | | |
| **TOTALS:** | **170.7** | | **$128,025** |

4

## EXHIBIT 2

*State of Alaska et al. v. Ryder System, Inc. et al.*,
Civil Action No. 1:20-cv-22109-JB (S.D. Fla.)

### KLAUSNER, KAUFMAN, JENSEN & LEVINSON

### FIRM RESUME

The law firm of **Klausner, Kaufman, Jensen & Levinson** specializes exclusively in the representation of retirement and benefit systems and related labor and employment relations matters. The firm has provided legal services to nearly 300 state and local government retirement systems in more than 25 states and territories. The firm is composed of eight lawyers in South Florida and Robert E. Tarzca, Of Counsel (New Orleans). In addition, we have six clerical/paraprofessional employees, an administrator, and a deputy administrator/conference director.

As a result of our substantial involvement on a national level in public employee retirement matters, we have developed a unique level of knowledge and experience. By concentrating our practice in the area of public employee retirement and related employment issues, we are able to keep a focus on changing trends in the law that more general practitioners would consider a luxury.

The law firm of Klausner, Kaufman, Jensen & Levinson, among the most highly regarded in the country in the area of pension issues, is frequently called upon as an educational and fiduciary consultant by state and local governments throughout the United States on some of the newest and most sophisticated issues involving public retirement systems. The examples of those areas are:

### Plan Design

The firm provides services to dozens of public employee pension plans throughout the United States in the area of plan review, design, and legislative drafting. On both the state and local levels, statutes and ordinances are reviewed for the purposes of maintaining compliance with current and pending Internal Revenue Code Regulations affecting public plans, as well as compliance with provisions of the Americans With Disabilities Act, the Older Workers Protections Act, Veterans' re-employment laws, and the Pension Protection Act. When benefit changes occur we prepare all necessary legislative drafts and appear before the appropriate legislative body to answer questions concerning those drafts. We also offer creative solutions to plan design issues brought about by unexpected economic pressures and balancing those solutions against constitutional or statutory benefit guarantees.

### Fiduciary Education

The primary duty of a pension fund lawyer is to ensure that the trustees do the right thing. It is our practice to design and present a variety of educational materials and programs which explain the general principles of fiduciary responsibility, as well as more specific principles regarding voting conflicts, compliance with open meeting laws, conflict of interest laws, etc. We regularly apprise the boards of trustees and administrators through newsletters, memoranda and updates on

5

our website of changes in the law, both legislatively and judicially, which impact upon their duties. We also conduct training workshops to improve the trustees' skills in conducting disability and other benefit hearings. As a result of our regular participation and educational programs on a monthly basis, all of the materials prepared as speaker materials for those programs are distributed without additional charge to our clients. The firm serves as the primary fiduciary education provider for plans in Florida, Louisiana, Texas, Alaska, Rhode Island and Ohio as well as various pubic pension trade associations.

## Plan Policies, Rules, and Procedures

It has been our experience that boards of trustees find themselves in costly and unnecessary litigation because of inconsistency in the administration of the fund. Accordingly, we have worked with our trustee clients in developing policies, rules, and procedures for the administration of the trust fund. The development of these rules ensures uniformity of plan practices and guarantees the due process rights of persons appearing before the board. They also serve to help organize and highlight those situations in which the legislation creating the fund may be in need of revision. By utilizing rule making powers, the board of trustees can help give definition and more practical application to sometimes vague legislative language.

## Legal Counseling

In the course of its duties, the board of trustees and administrators will be called upon from time to time to interpret various provisions of the ordinance or statute which governs its conduct. The plan will also be presented with various factual situations which do not lend themselves to easy interpretation. As a result, counsel to the plan is responsible for issuing legal opinions to assist the trustees and staff in performing their function in managing the trust. It is our practice to maintain an orderly system of the issuance of legal opinions so that they can form part of the overall body of law that guides the retirement plan. As changes in the law occur, it is our practice to update those legal opinions to ensure that the subjects which they cover are in conformance with the current state of the law.

## Summary Plan Descriptions

Many state laws require that pension plans provide their members with a plain language explanation of their benefits and rights under the plan. Given the complexity of most pension laws, it is also good benefits administration practice. Part of the responsibilities of a fiduciary is to ensure that plan members understand their rights and the benefits which they have earned. We frequently draft plain language summary plan descriptions using a format which is easily updatable as plan provisions change. We are also advising plans on liability issues associated with electronic communication between funds and members as part of our continuing effort at efficient risk management.

## Litigation

Despite the best efforts and intentions of the trustees and staff, there will be times when the plan finds itself as either a plaintiff or defendant in a legal action. We have successfully defended

6

retirement plans in claims for benefits, actions regarding under-funding, constitutional questions, discrimination in plan design, and failure of plan fiduciaries to fulfill their responsibilities to the trust. The firm has substantial state and federal court trial and appellate experience, including the successful defense of a state retirement system in the Supreme Court of the United States. The firm also has a substantial role in monitoring securities litigation and regularly argues complex appellate matters on both the state and federal levels. We pride ourselves on the vigorous representation of our clients while maintaining close watch on the substantial costs that are often associated with litigation. We are often called upon to provide support in a variety of cases brought by others as expert witnesses or through appearance as an *amicus curiae* (Friend of the Court).

## ATTORNEY BIOGRAPHIES

### ROBERT D. KLAUSNER:

ROBERT D. KLAUSNER is the principal in the law firm of Klausner, Kaufman, Jensen & Levinson. For more than 40 years, he has been engaged in the practice of law, specializing in the representation of public employee pension funds. The firm represents state and local retirement systems in more than 20 states and territories.

As part of its practice of representing public employee pension funds, the firm has advised numerous clients in connection with their service as plaintiffs or class representatives in federal securities class actions. Among many others, Mr. Klausner represented the Louisiana Sheriffs Pension & Relief Fund in the *In re Wells Fargo & Co. Securities Litigation*, No. 1:20-cv-04494-GHW-SN (S.D.N.Y.), which settled for $1 billion in 2023; the Fort Worth Employees' Retirement Fund in the *In re Bank of America Corp. Securities Litigation*, No. 09 MDL 2058 (S.D.N.Y.), which settled for $2.425 billion in 2013; advised the Louisiana Firefighters' Retirement System in the *In re Citigroup Inc. Bond Action Litigation*, No. 08-cv-9522 (S.D.N.Y.), which settled for $730 million in 2013; and represented the Jacksonville Police & Fire Pension Fund in *Lloyd v. CVB Financial Corp.*, No. 10-cv-06256 (C.D. Cal.), which settled for $6.2 million in 2017.

Mr. Klausner has assisted in the drafting of many state and local laws on public employee retirement throughout the United States. Mr. Klausner is a frequent speaker on pension education programs and has also published numerous articles on fiduciary obligations of public employee pension trustees. He is co-author of the book State and Local Government Employment Liability, published by Thomson-West Publishers and is the author of the first comprehensive book on the law of public employee retirement systems, State and Local Government Retirement Law: A Guide for Lawyers, Trustees, and Plan Administrators, first published in April 2009 and an expanded version published in July 2024. In 2008, Mr. Klausner successfully represented the Commonwealth of Kentucky and the Kentucky Retirement Systems in the United States Supreme Court in *Kentucky Retirement Systems v. Equal Employment Opportunity Commission*, 554 U.S. 135 (2008).

EDUCATION:    University of Florida (B.A. with honors, 1974); University of Florida College of Law (J.D., 1977). Adjunct professor, Nova University Law School (1987 - 2005); adjunct professor, New York Institute of Technology,

School of Labor Relations(1999-2003); instructor, Florida State University Center for Professional Development and Public Service (1980 - present); instructor, International Foundation of Employee Benefit Plans (1986 - present); instructor, National Association of State Retirement Administrators Conference (1996 - present); instructor National PensionAssociation Benefit Conferences (1989 - present); instructor, Florida Division of Retirement Pension Trustees School (1980 - present); instructor, National Association of Police Organizations (2021-present)

BAR ADMISSIONS: Florida, Texas, Wisconsin, U.S. District Courts for the Southern District of Florida, Middle District of Florida, Northern District of Texas, Eastern District of Wisconsin; U.S. Courts of Appeals for the First, Second, Third, Fourth, Fifth, Sixth, Eighth, and Eleventh Circuits, U.S. Court of Claims, U.S. Supreme Court.

MEMBER:  The Florida Bar; Texas Bar; Wisconsin Bar; American Bar Association; Phi Beta Kappa; Phi Kappa Phi.

PUBLICATIONS:  Co-Author, State and Local Government Employment Liability, Thomson Reuters Publishing

Author, State and Local Government Retirement Law: A Guide for Lawyers, Trustees, and Plan Administrators,Thomson Reuters Publishing

**STUART A. KAUFMAN** is a partner in the law firm of Klausner, Kaufman, Jensen & Levinson. After graduation from the University of Miami School of Law in 1989, Mr. Kaufman returned to New York where he practiced in a small firm in New York City for three years as a general litigator. He returned to Florida in 1993 and joined the law firm as an associate specializing in different facets of labor and employment law, including the representation of public employee pension funds.

In 1997, Mr. Kaufman was retained as General Counsel for the Professional Law Enforcement Association of Dade County, an employee organization dedicated to protecting the rights of law enforcement officers, where he served until January 2001. Mr. Kaufman was also a sole practitioner at the time operating a general civil practice with an emphasis on employment related matters. Additionally, he volunteered and served as General Counsel for Cops for Kids, Inc., a charitable organization operated by police officers which benefits underprivileged children in South Florida. He has represented several hundred police officers throughout Dade and Broward Counties in all matters related to their employment, including disciplinary appeals, grievances, and at shooting scenes.

Since rejoining Klausner, Kaufman, Jensen & Levinson in February 2001, Mr. Kaufman has been solely dedicated to representing public employee pension funds.

8

EDUCATION:   State University of New York at Binghamton, B.A., Political Science, 1986; University of Miami School of Law, J.D., 1989.

BAR ADMISSIONS:  New York, Florida, U.S. District Court for the Southern District of Florida, U.S. Court of Appeals for the Eleventh Circuit.